# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

PHIGENIX, INC.; MUSC
FOUNDATION FOR RESEARCH
DEVELOPMENT,

      Plaintiffs,

v.

GENENTECH, INC.,

      Defendant.

Civil Action No. 1:14-cv-00287-RWS

## GENENTECH'S BRIEF IN SUPPORT OF
## MOTION TO DISMISS

Frank M. Lowrey – Ga. Bar No. 410310
Randi E. Schnell – Ga. Bar No. 248592
Tiana S. Mykkeltvedt – Ga. Bar No. 533512
BONDURANT MIXSON
& ELMORE, LLP
1201 W. Peachtree St., NW, Suite 3900
Atlanta, GA 30309-3417
Telephone: (404) 881-4100
Fax: (404) 881-4111

Michael A. Jacobs (*pro hac vice*)
Matthew I. Kreeger (*pro hac vice*)
John K. Blake, Jr. (*pro hac vice*)
Xiang Li (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

*Attorneys for Defendant Genentech, Inc.*

## <u>**TABLE OF CONTENTS**</u>

I.      INTRODUCTION .........................................................................................1

II.     FACTUAL BACKGROUND.......................................................................3

        A.     Genentech .........................................................................................3

        B.     Plaintiffs and the Patent-in-Suit .............................................3

        C.     The Present Action ..................................................................4

        D.     Pre-Filing Communications ...................................................5

III.    LEGAL STANDARD .................................................................................8

IV.     ARGUMENT.............................................................................................9

        A.     The Court Should Dismiss the Complaint for Failure to State a
               Facially Plausible Direct Infringement Claim. ...................................9

        B.     The Court Should Also Dismiss Plaintiffs' Indirect Infringement
               Claim Because the Complaint Fails to Allege Plausibly that
               Genentech Intended to Induce Infringement.....................................12

               1.     A Patent Is Anticipated and Therefore Invalid When Each
                      Limitation Is Expressly or Inherently Disclosed in a Single
                      Prior Art Reference. ...............................................................14

               2.     The Complaint and Referenced Materials Reveal that the '534
                      Patent Claims Are Invalid under Plaintiffs' Own Theory of
                      Infringement. ........................................................................14

               3.     Genentech Demonstrated that the '244 Patent Application
                      Invalidates Plaintiffs' Patent Claims Under Plaintiffs' Theory of
                      Infringement. ........................................................................18

               4.     Phigenix's Response Was Legally Incorrect. ..........................19

a.    The '244 Patent Application Need Not Expressly Disclose PAX2 Inhibition or DEFB1 Expression to Inherently Anticipate the '534 Patent Claims. ...............20

b.    Recognition of PAX2 Inhibition or DEFB1 Expression Is Not Required for the '244 Application to Inherently Anticipate the '534 Patent Claims. .................................21

5.    The Complaint's Pleading of Intent Is Not Facially Plausible in View of Genentech's Demonstration of Invalidity.................24

V.    CONCLUSION..............................................................................................25

1238606.1

## TABLE OF AUTHORITIES

### Cases:

*Abbott Labs. v. Baxter Pharm. Prods., Inc.* ...........................................................22
471 F.3d 1363 (Fed. Cir. 2006)

*Ashcroft v. Iqbal* ..............................................................................................8
556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly* ...................................................................................8
550 U.S. 544 (2007)

*Brooks v. Blue Cross & Blue Shield of Florida, Inc.* ............................................8, 9
116 F.3d 1364 (11th Cir. 1997)

*Coca-Cola Co. v. Pepsico, Inc.* ..........................................................................21
No. 102-CV-2887-RWS, 2004 WL 4910334 (N.D. Ga. Sept. 29, 2004)

*Commil USA, LLC v. Cisco Sys., Inc.* ..............................................................13, 25
720 F.3d 1361 (Fed. Cir. 2013), *reh'g denied* (Oct. 25, 2013),
*petition for cert. filed,* (Jan. 28, 2014) (No. 13-896)

*E.I. Du Pont De Nemours & Co. v. Heraeus Holding GMBH* ...............................13
No. 11-773-SLR, 2012 WL 4511258 (D. Del. Sept. 28, 2012)

*E.I. du Pont de Nemours & Co. v. Heraeus Precious Metals North Am.
    Conshohocken LLC* ......................................................................................13
No. 11-773-SLR, 2013 U.S. Dist. LEXIS 111745 (D. Del. Aug. 8, 2013)

*EMI Grp. N. Am., Inc. v. Cypress Semiconductor Corp.* ......................................22
268 F.3d 1342 (Fed. Cir. 2001)

*Evans Cooling Sys., Inc. v. General Motors Corp.* .............................................15, 16
125 F.3d 1448 (Fed. Cir. 1997)

*Global-Tech Appliances, Inc. v. SEB S.A.* ......................................................12, 14
131 S. Ct. 2060 (2011)

*Grobler v. Sony Comp. Entm't Am. LLC* ...............................................13
No. 5:12-CV-01526-LHK, 2013 WL 308937 (N.D. Cal. Jan. 25, 2013)

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*.........................13
681 F.3d 1323 (Fed. Cir. 2012)

*In re Omeprazole Patent Litig.* ..............................................21
483 F.3d 1364 (Fed. Cir. 2007)

*In re Theragenics Corp. Sec. Litig.* .........................................9
105 F. Supp. 2d 1342 (N.D. Ga. 2000)

*King Pharm., Inc. v. Eon Labs, Inc.*........................................22
616 F.3d 1267 (Fed. Cir. 2010)

*K-Tech Telecomms., Inc.* ......................................................10
714 F.3d 1277 (Fed. Cir. 2013)
*cert. denied*, 134 S. Ct. 1026, 188 L. Ed. 2d 139 (2014)

*Muniauction, Inc. v. Thomson Corp.* .............................................10, 11
532 F.3d 1318 (Fed. Cir. 2008)

*Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc.* .........................21
195 F. App'x 947 (Fed. Cir. 2006)

*Research Found. of State Univ. of New York v. Mylan Pharm. Inc.* ......................24
809 F. Supp. 2d 296 (D. Del. 2011)
*aff'd in part, vacated in part, remanded,* 531 F. App'x 1008 (Fed. Cir. 2013)

*Schering Corp. v. Geneva Pharm., Inc.* .................................................. 14, 18, 20-22
339 F.3d 1373 (Fed. Cir. 2003)

*SmithKline Beecham Corp. v. Apotex Corp.*........................................22
403 F.3d 1331 (Fed. Cir. 2005)

*Superior Indus., LLC v. Thor Global Enters. Ltd.* ....................................12
700 F.3d 1287 (Fed. Cir. 2013)

1238606.1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*...........................................................8
551 U.S. 308 (2007)

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.* ....................................................15, 21
412 F.3d 1319 (Fed. Cir. 2005)

*Vanmoor v. Wal-Mart Stores, Inc.* ..................................................................15, 16
201 F.3d 1363 (Fed. Cir. 2000)

*Ware v. Circuit City Stores, Inc.* .............................................................................9
No. 4:05-CV-0156-RL, 2010 WL 767094 (N.D. Ga. Jan. 5, 2010)

## **Statutes:**

Fed. R. Civ. P. 12(b)(6)..........................................................................................1, 8

## I.      INTRODUCTION

Genentech, Inc. moves to dismiss Phigenix, Inc. and Medical University of South Carolina Foundation for Research Development's ("plaintiffs'") claims for patent infringement under Federal Rule of Civil Procedure 12(b)(6).  Even accepting as true plaintiffs' allegations and drawing reasonable inferences in plaintiffs' favor, the complaint fails to state a claim for infringement under applicable legal standards and should be dismissed in its entirety.

The claim of *direct* infringement fails because the patent-in-suit contains method claims, which require a showing that Genentech infringes by treating breast conditions such as breast cancer.  But Genentech is drug manufacturer, not a physician or hospital.  Plaintiffs have not alleged—nor can they allege—that Genentech carries out the claimed methods of treatment.  The complaint neither puts Genentech on notice of how it directly infringes nor plausibly alleges direct infringement.

The claim of *indirect* infringement fails to allege plausibly that Genentech intended to induce infringement, as indirect infringement law requires.  In pre-filing correspondence referenced in the complaint, Genentech demonstrated that the patent-in-suit's claims are invalid under plaintiffs' own theory of infringement. Plaintiffs' purported invention is the discovery of the mechanism by which some

drugs may disrupt the growth of breast cancer cells.  In this case, plaintiffs contend that administration of anti-HER2-maytansinoid conjugates—such as Kadcyla—results in the inhibition of a particular protein and therefore infringes their patent. Even assuming that plaintiffs are correct about the mechanism of action, Genentech demonstrated in pre-filing materials referenced in the complaint that plaintiffs' asserted patent claims are invalid because that mechanism of action is an inherent result of practicing a method of administering anti-HER2-maytansinoid conjugates already described in a published Genentech patent application.  Because Genentech's good-faith belief of invalidity negates intent, the complaint fails to allege plausibly that Genentech had the requisite intent to induce infringement—a key element to plaintiffs' indirect infringement claim.

The pleading rules are designed to ensure that a patentee has sufficient factual grounds to support its infringement theories at the outset of a case and to ensure that the accused infringer has notice of those facts.  Plaintiffs' deficient complaint wastes judicial and party resources, and the Court should dismiss it.[1]

---

[1] In a separate motion, Genentech requests transfer of this action.  Should the Court deny Genentech's motion to dismiss, Genentech requests that the Court transfer this case to the Northern District of California, where Genentech, its key witnesses, documents, and third-party witnesses are located.

## II.     FACTUAL BACKGROUND

### A.     Genentech

Genentech is a leading biotechnology company dedicated to the discovery and development of medicines that treat patients with serious or life-threatening medical conditions.  (Decl. of Timothy R. Schwartz in Support of Genentech's Mot. to Dismiss ("Schwartz Decl.") ¶ 2.)  Kadcyla®, Genentech's recent contribution to the battle against breast cancer, is a powerful medication that has been shown in clinical trials to significantly extend the median survival of women with advanced-stage breast cancer.  (Decl. of Xiang Li in Support of Genentech's Mot. to Dismiss ("Li Decl.") ¶ 2, Ex. A.)

Kadcyla is an antibody-drug conjugate.  (*See* First Am. Compl. ¶¶ 11-12, ECF No. 21.)  The conjugate combines a monoclonal antibody (trastuzumab) with a chemotherapy drug (cytotoxic maytansinoid).  (*See id.*)  Kadcyla targets and kills breast cancer cells that have on their surface large numbers of a protein known as HER2.  Such cells are known as "HER2-positive" and hence Kadcyla is referred to as an "anti-HER2" treatment.  (*See id.*)

### B.     Plaintiffs and the Patent-in-Suit

According to the amended complaint, Medical University of South Carolina Foundation for Research Development ("MUSC FRD") is a South Carolina not-

for-profit corporation with its principal place of business in Charleston.  (*Id.* ¶ 2.)
Phigenix is a Georgia corporation with its principal place of business in Atlanta.
(First Am. Compl. ¶ 1.)  Carlton Donald, Phigenix's founder, is the named inventor
on United States Patent No. 8,080,534B2 (the "'534 patent").  (*Id.* ¶ 1 and Ex. A.)

The '534 patent purports to provide methods of treating breast cancer and
other breast conditions by affecting the expression of certain proteins inside a cell.
Specifically, the '534 patent describes treating breast conditions by administering
any agent that inhibits the expression of a protein called paired box homeotic gene
2 ("PAX2") or enhances the expression of a protein called beta-defensin-1
("DEFB1").  (*Id.* Ex. A at 1:51-55, 2:21-23, 3:1-2.)  The '534 patent's earliest
claimed priority date is October 14, 2005.  (*Id.* at [60].)  Claims 1 and 8 do not
mention any particular agent or type of agent used to affect PAX2 or DEFB1, and
are not limited to antibodies, antibody-drug conjugates, or drugs of any kind.

### C.    The Present Action

On January 31, 2014, Phigenix filed the original complaint in this action,
alleging that Phigenix is the owner of the '534 patent and that Genentech infringes
at least claims 1 and 8 of the patent.  (ECF No. 1.)

On May 29, 2014, four days before the deadline to serve the complaint,
Phigenix effected service on Genentech.  (ECF No. 6.)

On June 11, 2014, this Court granted the parties' stipulation to extend time for Genentech to answer, move, or otherwise respond to the complaint through July 21, 2014.  (ECF No. 14.)

On June 16, 2014, Phigenix, joined now by MUSC FRD, filed an amended complaint.  (ECF No. 21.)  According to the amended complaint, MUSC FRD is the owner and Phigenix is the exclusive licensee of the '534 patent.  (*Id.* ¶ 10.)  At least claims 1 and 8 remain asserted in this case.  (*Id.* ¶ 14.)  The amended complaint alleges that Genentech infringes the '534 patent through its manufacture, offer to sell, marketing, sale, and use of Kadcyla.  (*See id.* ¶¶ 5, 12, 15.)

### D.     Pre-Filing Communications

The amended complaint alleges that Genentech had "pre-filing knowledge" of its infringement

> by virtue of: correspondence dated June 10, 2013 from Dr. Donald of PHIGENIX to Dr. Jennifer Cygan, Director of Business Development of GENENTECH, and correspondence to Dr. Michael Penn, Director of Business Development of GENENTECH; correspondence dated June 17, 2013 from Dr. Donald to Mr. Jeffrey Butler, Associate General Counsel and Senior Director - Patent Litigation of GENENTECH; and subsequent numerous telephone and written communications through September 2013, and thereafter, with Dr. Timothy Schwartz, Associate General Counsel of GENENTECH, and others.

(*Id.* ¶ 6.)

1238606.1

The declaration of Dr. Timothy R. Schwartz, submitted with this motion, attaches the correspondence to which the complaint refers.[2]  Far from showing Genentech's pre-filing knowledge of infringement, the correspondence evinces the opposite: Genentech demonstrated that the asserted claims of the '534 patent are invalid under Phigenix's theory of infringement.  Therefore, Genentech reasonably believes it is not infringing valid patent claims.  Here is the sequence:

On June 10, 2013, Phigenix contacted Genentech to offer "patent protection that . . . may currently be lacking for KADCYLA."  (Schwartz Decl. Ex. A.)

On June 17, 2013, Phigenix sent Genentech another letter, attaching a diagram that Phigenix believes illustrates how, through biochemical effects at the cellular level, anti-HER2-maytansinoid drug conjugates are effective in treating breast cancer.[3]  (Schwartz Decl. Ex. B.)  (This diagram is reproduced on page 17 of this brief.)  The diagram purports to illustrate the mechanism of action for such conjugates in treating breast conditions and shows that administration of the conjugates ultimately inhibits PAX2.  (*Id.*)

---

[2] To date, Genentech has not been able to locate the correspondence addressed to Dr. Michael Penn of Genentech as alleged in the complaint.  (Schwartz Decl. ¶ 11.)
[3] In this brief, the term "ErbB2" is used interchangeably with the term "HER2," which the parties used in some pre-filing communications.  HER2 is the name for ErbB2 receptors in humans.  (Schwartz Decl. Ex. C.)

After evaluating Phigenix's portfolio, Genentech declined Phigenix's offer on September 13, 2013.  Genentech explained that "[o]ne factor in this decision is PCT publication WO 01/00244," which discloses anti-HER2-maytansinoid conjugates for the treatment of breast cancer and was published four years before the priority date of Phigenix's earliest-filed application.  (Schwartz Decl. Ex. D.)

Phigenix counsel responded the next day, reiterating that the patent covers mechanisms through which anti-HER2-maytansinoid conjugates such as Kadcyla treat cancer.  (Schwartz Decl. Ex. E.)  Phigenix's counsel also argued that the "'244 publication neither mentions anything about targeting PAX2 nor describes utilizing DEFB1 as a therapy for breast cancer.  Therefore, the '244 publication clearly does not anticipate Phigenix's patent claims."  (*Id.*)

Genentech replied on November 20, 2013, emphasizing that Phigenix's patent claims are anticipated, expressly or inherently.  Genentech noted that while it did not necessarily agree with Phigenix's characterization of the mechanisms of action of anti-HER2-maytansinoid conjugates such as Kadcyla, if Phigenix is correct, then the claims of the '534 patent are necessarily anticipated by the '244 application. (*Id.*)  Genentech explained that if Phigenix's theory of infringement—that administering anti-HER2-maytansinoid conjugates inhibits PAX2 and expresses DEFB1 by operation of natural cellular processes—is correct, then the

description of administering such compounds to treat breast cancer in the '244 application necessarily invalidates those claims because those mechanisms are inherently present in that administration.  (Schwartz Decl. Ex. F.)

Genentech further stated that "We assume that no further elaboration on this point is needed, but we can do so, for example by telephone, if you wish."  (*Id*.)  Phigenix did not reply to Genentech's November 20 letter.  (Schwartz Decl. ¶ 10.)  Instead, it sued and the complaint in this action followed.

## III.   LEGAL STANDARD

A motion to dismiss should be granted where a complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).  Although reasonable inferences are drawn in plaintiffs' favor, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough.  *Iqbal*, 556 U.S. at 678.  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* (citation omitted).

In deciding a Rule 12(b)(6) motion, the Court may consider allegations in the complaint as well as documents incorporated by reference.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *see Brooks v. Blue Cross*

*& Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (finding that courts may consider documents referenced in the complaint that are central to plaintiff's claims without converting a motion to dismiss into a motion for summary judgment); *In re Theragenics Corp. Sec. Litig.*, 105 F. Supp. 2d 1342, 1348 (N.D. Ga. 2000) (permitting consideration of press releases and call records for motion to dismiss when the complaint had placed "great emphasis" on the documents and defendant had attached them as exhibits to its motion to dismiss).

## IV.  ARGUMENT

### A.  The Court Should Dismiss the Complaint for Failure to State a Facially Plausible Direct Infringement Claim.

Direct infringement of the asserted method claims requires that Genentech practice the claimed method of treating breast conditions.  Plaintiffs fail to state a claim for direct infringement because the complaint is devoid of facts supporting a reasonable inference that Genentech carries out the claimed methods of treatment.

Complaints alleging direct infringement "must identify how the defendants have allegedly infringed a patent" by, at a minimum, giving "notice of what the defendants have done to infringe the patent in question."  *Ware v. Circuit City Stores, Inc.*, No. 4:05-CV-0156-RL, 2010 WL 767094, at *2 (N.D. Ga. Jan. 5, 2010).  Model Form 18, published in the Appendix of the Federal Rules of Civil Procedure, provides an exemplary pleading of direct infringement.  Fed. R. Civ. P.

App. Form 18.  But "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement."  *K-Tech Telecomms., Inc.*, 714 F.3d 1277, 1284 (Fed. Cir. 2013), *cert. denied*, 134 S. Ct. 1026, 188 L. Ed. 2d 139 (2014).

Here, plaintiffs allege direct infringement of at least claims 1 and 8 in the '534 patent, which require treating breast conditions.  (First Am. Compl., Ex. A at 2:54, 109:1-6, 109:26-28.)  Claims 1 and 8 are method claims.  Specifically, claim 1 recites: "A method for treating a breast condition in a subject, comprising administering to a breast tissue of the subject, a composition that (1) inhibits PAX2 expression or PAX2 activity, (2) expresses DEFB1 or (3) inhibits PAX2 expression or PAX2 activity and expresses DEFB1."  (*Id.* at 109:2-6.)  Similarly, claim 8 recites: "A method of treating breast cancer or MIN in a subject, comprising enhancing expression of DEFB1 in a breast cancer tissue or MIN tissue in the subject."  (*Id.* at 109:26-28.)

To infringe a method claim directly, a defendant must (1) carry out all the steps of the claimed method, or (2) direct or control others who perform them such that every step is attributable to the controlling party.  *Muniauction, Inc. v. Thomson Corp.*, 532 F.3d 1318, 1329 (Fed. Cir. 2008).

There are no allegations in the complaint that Genentech practices the claimed method of treating breast conditions.  Plaintiffs neither allege that Genentech is a treating entity[4] nor do plaintiffs allege that Genentech sufficiently directs or controls the administration of Kadcyla for such administration to be attributed to it.  Rather, in plaintiffs' brief reference to direct infringement, plaintiffs allege only that Genentech directly infringes through its manufacture, marketing, offer to sell, sale, and use of Kadcyla.  (First Am. Compl. ¶¶ 5, 12, 15.)

Plaintiffs' allegations are insufficient and fall short of alleging how Genentech "perform[s] every step of the claimed method."  *Muniauction, Inc.*, 532 F.3d at 1329.  Genentech is not a provider of medical treatment to patients.  The complaint is devoid of any supporting facts that would link Genentech's purported manufacture, marketing, offer to sell, sale, and use of Kadcyla to Genentech practicing the claimed method of treating breast cancer or breast conditions.

---

[4] Moreover, materials cited in the complaint confirm that Genentech is a drug manufacturer, not a treating entity.  The complaint cites to Kadcyla's prescription information (First Am. Compl. ¶ 12(a)), which specifically identifies Genentech as the *manufacturer* of Kadcyla.  (Li Decl. Ex. A.)  The complaint also points to Genentech's webpage regarding Kadcyla distribution (First Am. Compl. ¶ 12(b)), but the webpage advises customers of Genentech's specialty distributors and wholesale channels.  (Li Decl. Ex. B.)  The list identifies distributors for hospitals, physician offices, and specialty pharmacies, but none is a Genentech facility that could possibly administer Kadcyla.  (*Id.*)

1238606.1

Absent specific allegations to support a reasonable inference that Genentech performs each step of the claimed treatment methods, plaintiffs fail to allege plausibly that Genentech directly infringes.  Nothing in the complaint alerts Genentech to the activity plaintiffs contend represents direct infringement.

Plaintiffs' direct infringement claims should therefore be dismissed.

### B.      The Court Should Also Dismiss Plaintiffs' Indirect Infringement Claim Because the Complaint Fails to Allege Plausibly that Genentech Intended to Induce Infringement.

The complaint cites to the parties' pre-filing correspondence in which Genentech demonstrated the invalidity of the '534 patent claims.  Because a good-faith belief of invalidity can negate the requisite intent to induce infringement, the complaint pleads no facts that overcome Genentech's demonstration of invalidity and thus fails to allege plausibly Genentech's intent to induce infringement.

The plausibility requirements of *Twombly* and *Iqbal* apply to claims of indirect infringement.  *See Superior Indus., LLC v. Thor Global Enters. Ltd*., 700 F.3d 1287, 1295-96 (Fed. Cir. 2013).  Indirect infringement requires specific intent to induce infringement.  *Global-Tech Appliances, Inc. v. SEB S.A*., 131 S. Ct. 2060, 2068 (2011).  Therefore, to survive a motion to dismiss, indirect infringement claims must contain facts alleging plausibly that the accused infringer (1) specifically intended to induce certain acts by a third party, and (2) knew that the

induced acts constituted infringement.  *In re Bill of Lading Transmission &*
*Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).  But a good-
faith belief of patent invalidity negates intent to induce infringement.  *See Commil*
*USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367-68 (Fed. Cir. 2013), *reh'g*
*denied* (Oct. 25, 2013), *petition for cert. filed*, (Jan. 28, 2014) (No. 13-896).

Complaints that fail to allege plausibly intent to induce infringement should
be dismissed.  *See Grobler v. Sony Comp. Entm't Am. LLC*, No. 5:12-CV-01526-
LHK, 2013 WL 308937, at *3 (N.D. Cal. Jan. 25, 2013); *E.I. Du Pont De Nemours*
*& Co. v. Heraeus Holding GMBH*, No. 11-773-SLR, 2012 WL 4511258, at *7-8
(D. Del. Sept. 28, 2012), *adopted by E.I. du Pont de Nemours & Co. v. Heraeus*
*Precious Metals North Am. Conshohocken LLC*, 2013 U.S. Dist. LEXIS 111745.

Here, the complaint fails to allege facts—supporting a reasonable inference
in plaintiffs' favor—that overcome Genentech's showing of its good faith belief of
invalidity.  The complaint cites the parties' pre-filing correspondence to support
allegations of Genentech's intent.  But far from plausibly alleging that Genentech
possesses the requisite intent, the correspondence reveals that (1) Genentech
demonstrated that the '534 patent claims are invalid through inherent anticipation,

and (2) Phigenix had no valid response to that showing.[5]  Genentech's good-faith

belief of invalidity negates intent to induce infringement, and the complaint thus

fails to allege plausibly that Genentech had the requisite intent.

> **1. A Patent Is Anticipated and Therefore Invalid When Each Limitation Is Expressly or Inherently Disclosed in a Single Prior Art Reference.**

A patent is invalid if a single prior art reference anticipates the claimed

invention.  *Schering Corp. v. Geneva Pharm., Inc.*, 339 F.3d 1373, 1377 (Fed. Cir.

2003).  A prior art reference anticipates the claimed invention if it discloses each

and every element of the claim.  *Id.*  The reference, however, need not expressly

disclose each element as long as the "missing characteristic is necessarily present,

or inherent, in the single anticipating reference."  *Id.*

> **2. The Complaint and Referenced Materials Reveal that the '534 Patent Claims Are Invalid under Plaintiffs' Own Theory of Infringement.**

Under plaintiffs' theory of infringement, the asserted claims of the '534

patent are invalid under the doctrine of inherent anticipation.  This follows from

---

[5] The complaint is directed at Genentech's alleged induced infringement (First Am. Compl. ¶ 12(a)), but the complaint also vaguely asserts that Genentech contributes to infringement of the '534 patent.  (*Id.* ¶ 13.)  As with induced infringement, contributory infringement requires knowledge and intent to infringe.  *See Global-Tech Appliances, Inc.*, 131 S. Ct. at 2068.  Even if the Court were to read the complaint to include a contributory infringement claim, this claim should similarly be dismissed because the complaint fails to make a plausible showing of intent to overcome Genentech's demonstration of invalidity.

the well-established rule:  that which infringes a patent if later in time, anticipates that patent if earlier in time.  *E.g.*, *Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005).

As noted above, plaintiffs allege that Kadcyla is an anti-HER2-maytansinoid drug conjugate comprised of an anti-HER2 antibody and a chemotherapy drug. (*See* First Am. Compl. ¶ 11.)  Plaintiffs further allege that the act of administering Kadcyla to patients infringes claims 1 and 8, the only two claims mentioned in the complaint.  (*Id.* ¶ 14.)  Claim 1 covers methods to treat "a breast condition" by administering compositions that inhibit PAX2 and/or express DEFB1.  (First Am. Compl., Ex. A at 2:54, 109:1-6.)  Claim 8 covers methods to treat breast cancer or mammary intraepithelial neoplasia ("MIN") by "enhanc[ing] DEFB1 expression." (*Id.* at 109:26-28.) [6]

As Genentech notified Phigenix, however, there is invalidating prior art in the form of Genentech's '244 patent application published January 2001—more than four years before the '534 patent's earliest claimed priority date.  (First Am. Compl. ¶ 6 and Ex. A; Schwartz Decl. Exs. C-D.)  The '244 application publicly

---

[6] Genentech does not agree that Kadcyla's use infringes the asserted claims.  For purposes of this motion to dismiss, however, Genentech assumes plaintiffs' infringement theory to demonstrate inherent anticipation.  This assumption does not prejudice Genentech's later ability to contest infringement.  *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000); *Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997).

discloses the general method of using anti-HER2-maytansinoid conjugates to treat breast cancer.  (Schwartz Decl. Ex. C. at 4:5-30.)

Plaintiffs do not dispute that Genentech's '244 application is prior art published more than four years before Phigenix filed for a patent.  Plaintiffs also do not and cannot dispute that the '244 application describes administering anti-HER2-maytansinoid conjugates to treat breast cancer.  Plaintiffs' entire case is based on their theory that administering such compounds leads to infringement of their patent claims by the natural and inevitable processes of a cell.[7]  If that is true, then the disclosure of treating breast cancer with such compounds necessarily includes within it a disclosure of such an inherent result.  And plaintiffs can point to nothing in their complaint that would controvert Genentech's showing that, if administration of Kadcyla infringes the '534 patent by treating breast conditions, then the '244 application's anti-HER2-maytansinoid conjugates used to treat breast conditions must anticipate the '534 patent.

The diagram below, a replica of the diagram Phigenix sent to Genentech, illustrates plaintiffs' purported infringement theory.  (Schwartz Decl. Ex. B.)

---

[7] Genentech does not agree that Kadcyla's use infringes the asserted claims.  For purposes of this motion to dismiss, however, Genentech assumes plaintiffs' infringement theory to demonstrate inherent anticipation.  This assumption does not prejudice Genentech's later ability to contest infringement.  *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363 (Fed. Cir. 2000); *Evans Cooling Sys., Inc. v. General Motors Corp.*, 125 F.3d 1448 (Fed. Cir. 1997).

According to plaintiffs, "an antibody-drug conjugate" that consists of a "maytansinoid" joined to an "anti-HER2 antibody" will necessarily have the claimed effect of PAX2 inhibition and thereby infringe the '534 patent.  (*Id.*) Specifically, Phigenix asserts that the diagram shows the cellular processes that occur after administration of an anti-HER2-maytansinoid conjugate, leading to PAX2 inhibition (and therefore DEFB1 expression) as claimed in the patent.[8]  (*Id.*)

**Phigenix's "PAX2 Signaling Diagram"**



_____

[8] According to the '534 patent, an inverse relationship exists between PAX2 and DEFB1 such that PAX2 inhibition leads to enhanced DEFB1 expression.  (First Am. Compl., Ex. A at 12:51-53.)  Thus, under the mechanism of action theorized in Phigenix's diagram, DEFB1 expression naturally results from the illustrated PAX2 inhibition.

1238606.1

17

Under plaintiffs' infringement theory as illustrated in the Phigenix diagram, administration of anti-HER2-maytansinoid conjugates leads to PAX2 inhibition (and therefore DEFB1 expression).  (*See* Schwartz Decl. Ex. B.)  But the '244 application was published before the '534 patent's priority date and already disclosed the use of anti-HER2-maytansinoid conjugates to treat breast cancer.

Thus, accepting as true plaintiffs' infringement theory, the '244 application inherently anticipates the '534 patent claims whether the inherent results of PAX2 inhibition and DEFB1 expression are expressly disclosed or not.  *See Schering*, 339 F.3d at 1379 ("[A] limitation or the entire invention is inherent and in the public domain if it is the 'natural result flowing from' the explicit disclosure of the prior art." (citation omitted)).

### 3.    Genentech Demonstrated that the '244 Patent Application Invalidates Plaintiffs' Patent Claims Under Plaintiffs' Theory of Infringement.

In pre-filing correspondence, Genentech demonstrated that plaintiffs' infringement theory and invalidity of the '534 patent claims rise and fall together.

In its September 13 letter, Genentech pointed out that "[the '244] publication describes anti-HER2-maytansinoid conjugates . . . for the treatment of breast cancer" and was published "over four years before the priority date of the earliest-filed application in the Phigenix portfolio."  (Schwartz Decl. Ex. D.)

In its November 20, 2013 letter, Genentech further explained why the '534

patent claims are invalid under plaintiffs' own theory of infringement:

> As noted previously, PCT publication WO 01/00244 . . .
> describes, inter alia, anti-HER2-maytansinoid conjugates for
> the treatment of breast cancer.  Accordingly, the 244
> publication is material prior art to the patent applications and
> patents in the Phigenix portfolio.  That publication's
> specification, including one or more examples, describes,
> among other things, the administration of anti-HER2-
> maytansinoid conjugates to a mammal to treat breast
> cancer . . . . [I]f what [Phigenix counsel] states is correct, then
> Phigenix's patent claims are anticipated, expressly, inherently
> or otherwise, by the prior art 244 publication, and are, at a
> minimum, unpatentable or invalid.

(Schwartz Decl. Ex. F.)

Accordingly, in the pre-filing correspondence, Genentech demonstrated that

the '244 application inherently anticipates and renders the '534 patent invalid

under plaintiffs' own infringement theory.

### 4.     Phigenix's Response Was Legally Incorrect.

In response, Phigenix did not dispute that the '244 application is prior art to

the '534 patent; nor did it contest that the '244 application discloses anti-HER2-

maytansinoid conjugates and their use for treating breast cancer.  (Schwartz Decl.

Ex. E.)  Rather, Phigenix argued that (1) the '244 application does not expressly

disclose that the drug conjugate works by inhibiting PAX2 and expressing DEFB1,

and (2) persons of ordinary skill at the time of the '244 application would not have

recognized that fact.  (*Id.*)  But this is flatly inconsistent with well-established law and cannot save plaintiffs' deficient complaint.

> **a.   The '244 Patent Application Need Not Expressly Disclose PAX2 Inhibition or DEFB1 Expression to Inherently Anticipate the '534 Patent Claims.**

Contrary to Phigenix's response, the '244 application need not expressly disclose that the drug conjugate inhibits PAX2 and/or increases DEFB1 expression.  As noted above, under the doctrine of inherent anticipation, the '244 application anticipates if PAX2 inhibition and DEFB1 expression are natural results flowing from the practice of its disclosures and thus inherently disclosed. *See Schering*, 339 F.3d at 1379.  According to plaintiffs, PAX2 inhibition and DEFB1 expression naturally result from the administration of the drug conjugate. There is no legal requirement that the '244 application expressly disclose PAX2 inhibition or DEFB1 expression to invalidate the '534 patent's asserted claims as long as that mechanism of action is inherent in the method of treatment disclosed in the '244 application.

Plaintiffs' complaint does not plead specific facts that would controvert Genentech's showing that, if Kadcyla (an anti-HER2-maytansinoid conjugate) infringes by inhibiting PAX2 or expressing DEFB1, then the anti-HER2-maytansinod drug conjugates disclosed in the '244 application for use in treating

breast cancer would inherently have the same effect and thereby anticipate the '534 patent claims. *See, e.g.*, *Upsher-Smith Labs., Inc.*, 412 F.3d at 1322. In fact, as noted above, far from controverting Genentech's showing, Phigenix's own diagram (1) illustrates the purported mechanism of action for anti-HER2-maytansinoid conjugates as inhibiting PAX2, and (2) confirms that the '244 application would anticipate the '534 patent's asserted claims.

> **b.    Recognition of PAX2 Inhibition or DEFB1 Expression Is Not Required for the '244 Application to Inherently Anticipate the '534 Patent Claims.**

Phigenix's second rebuttal—the claim that persons of ordinary skill at the time of the '244 application would not have recognized that administration of the disclosed drug conjugates inhibits PAX2—is based on a fundamental misreading of the law on inherent anticipation. In *Schering,* the Federal Circuit "reject[ed] the contention that inherent anticipation requires recognition in the prior art." 339 F.3d at 1377; *see In re Omeprazole Patent Litig*., 483 F.3d 1364, 1373 (Fed. Cir. 2007); *Nichols Inst. Diagnostics, Inc. v. Scantibodies Clinical Lab., Inc.*, 195 F. App'x 947, 952 (Fed. Cir. 2006). This Court has acknowledged that "inherent anticipation does not require recognition of the disclosure in the prior art by those skilled in that art." *Coca-Cola Co. v. Pepsico, Inc.*, No. 102-CV-2887-RWS, 2004 WL 4910334, at *6 (N.D. Ga. Sept. 29, 2004).

Furthermore, the Federal Circuit has been unequivocal that recognition of a "'natural result flowing from' the explicit disclosure of the prior art" is not required for inherent anticipation.  *See, e.g.*, *Schering*, 339 F.3d at 1379-80 (no need to recognize that prior art disclosed DCL metabolite, which was a natural result of administration of drug compound disclosed in prior art) (citation omitted); *SmithKline Beecham Corp. v. Apotex Corp.*, 403 F.3d 1331 (Fed. Cir. 2005) (no need to recognize prior art production of PHC anhydrate naturally results in production of PHC hemihydrate); *Abbott Labs. v. Baxter Pharm. Prods., Inc.*, 471 F.3d 1363 (Fed. Cir. 2006) (no need to recognize prior art composition naturally results in inhibiting Lewis acid degradation); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267 (Fed. Cir. 2010) (no need to recognize prior art disclosure of taking metaxalone with food naturally increases bioavailability of metaxalone).

For example, the first person to discover the importance of oxygen could not have obtained a valid patent for "a method of making a fire by lighting a flame in the presence of oxygen" given that humans lit fire for thousands of years before realizing the necessity of oxygen to create and maintain a flame.  *EMI Grp. N. Am., Inc. v. Cypress Semiconductor Corp.*, 268 F.3d 1342, 1351 (Fed. Cir. 2001).  "Even if prior art on lighting fires did not disclose the importance of oxygen and one of ordinary skill in the art did not know about the importance of

oxygen, understanding this law of nature would not give the discoverer a right to exclude others from practicing the prior art of making fires." *Id.*

Plaintiffs' purported invention is the discovery that PAX2 inhibition is the supposed mechanism by which certain drugs disrupt the growth of breast cancer cells. Plaintiffs contend in this case that anti-HER2-maytansinoid conjugates including Kadcyla are such drugs. Even assuming that plaintiffs are correct about the mechanism of action, plaintiffs' patent claims are invalid because that mechanism of action is an inherent result of practicing the method of treatment already described in the '244 application. Plaintiffs cannot capture with the patent a treatment method already in the public domain by ascribing to the method a certain mechanism of action.

Just as recognition of the necessity of oxygen to create a flame is not required, recognition of PAX2 inhibition and DEFB1 expression is not required for the prior art to inherently anticipate the '534 patent claims. As illustrated by plaintiffs' theorized mechanism of action for anti-HER2-maytansinoid conjugates, PAX2 inhibition and DEFB1 expression are natural results of administering the drug conjugates disclosed in the '244 application. Under plaintiffs' theory, the drug would have caused PAX2 inhibition and DEFB1 expression even if a person of ordinary skill did not understand the underlying mechanism of action that made

it effective.  This purported lack of recognition does not preclude a finding of inherent anticipation.  *See Research Found. of State Univ. of New York v. Mylan Pharm. Inc.*, 809 F. Supp. 2d 296, 329 (D. Del. 2011) *aff'd in part, vacated in part, remanded*, 531 F. App'x 1008 (Fed. Cir. 2013) (finding that the prior art disclosure of administering large doses of tetracycline would inherently anticipate even absent recognition of its mechanism of action through affecting NO production and iNOS inhibition).

Thus, contrary to plaintiffs' assertion, recognition of PAX2 inhibition and DEFB1 expression as natural results of administering anti-HER2-maytansinoid conjugates is not required, and the pre-filing correspondence shows that plaintiffs' response to Genentech's demonstration of invalidity is legally erroneous.

### 5. The Complaint's Pleading of Intent Is Not Facially Plausible in View of Genentech's Demonstration of Invalidity.

Plaintiffs fail to allege facts sufficient to make plausible Genentech's specific intent to induce infringement.  The complaint cites to the correspondence record but fails to plead facts to overcome Genentech's demonstration of inherent anticipation within that same record.

Because the pre-filing correspondence demonstrates Genentech's reasonable position that the '534 patent claims are invalid under plaintiffs' own theory of

infringement, plaintiffs fail to plead facts sufficient to allege plausibly that Genentech possesses the requisite intent.  *See Commil USA*, 720 F.3d at 1367-68. And plaintiffs plead no facts in the complaint that overcome Genentech's invalidity demonstration.  Because Genentech's good-faith belief of the '534 patent's invalidity negates intent, the complaint fails to allege plausibly that Genentech had the requisite intent to induce infringement—a key element to plaintiffs' indirect infringement claim.  The Court should therefore dismiss the complaint for failure to state an indirect infringement claim.

## V.     CONCLUSION

For the reasons stated above, Genentech requests that the Court dismiss plaintiffs' complaint for failure to state a claim.

Respectfully submitted, this 21st day of July, 2014.


SIGNATURES ON FOLLOWING PAGE

*/s/ Frank M. Lowrey*
Frank M. Lowrey
Georgia Bar No. 410310
Randi E. Schnell
Georgia Bar No. 248592
Tiana S. Mykkeltvedt
Georgia Bar No. 533512

BONDURANT MIXSON & ELMORE, LLP
1201 West Peachtree Street, NW, Suite 3900
Atlanta, GA 30309-3417
Telephone: (404) 881-4100
Fax: (404) 881-4111
Email: lowrey@bmelaw.com
Email: schnell@bmelaw.com
Email: mykkeltvedt@bmelaw.com

Michael A. Jacobs (*pro hac vice*)
Matthew I. Kreeger (*pro hac vice*)
John K. Blake, Jr. (*pro hac vice*)
Xiang Li (*pro hac vice*)

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522
Email: MJacobs@mofo.com
Email: MKreeger@mofo.com
Email: JBlake@mofo.com
Email: XLi@mofo.com

*Attorneys for Defendant Genentech, Inc.*

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this brief and the accompanying declarations comply with Local Rule 7.1(D) and 5.1(B).  The font and point size used in preparing the foregoing documents are Times New Roman 14-point.

This 21st day of July, 2014.

> */s/ Frank M. Lowrey*
> Frank M. Lowrey
> Georgia Bar No. 410310
>
> BONDURANT MIXSON & ELMORE, LLP
> 1201 West Peachtree Street, NW, Suite 3900
> Atlanta, GA 30309-3417
> Telephone: (404) 881-4100
> Fax: (404) 881-4111
> Email: lowrey@bmelaw.com

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on July 21, 2014, I electronically filed Genentech's

Brief in Support of Its Motion to Dismiss with the Clerk of Court using the

CM/ECF system which will automatically send email notification of such filing to

the following attorneys of record:

Aldo Noto
John Murray
Robert Alan Gutkin
Andrews Kurth, LLP
1350 I Street, NW, Suite 1100
Washington, DC 20005
Email: aldonoto@andrewskurth.com
Email: robertgutkin@andrewskurth.com

David Christopher Hanson
Paul E. Weathington
Weathington Smith, P.C.
191 Peachtree Street, NE, Suite 3900
Atlanta, GA 30303
Email: dhanson@weathingtonsmith.com
Email: pweathington@weathingtonfirm.com

Gregory L. Porter
Andrews Kurth, LLP
Suite 4200
600 Travis
Houston, GA 77002
Email: gregporter@andrewskurth.com

1238606.1

*/s/ Frank M. Lowrey*
Frank M. Lowrey
Georgia Bar No. 410310

BONDURANT MIXSON & ELMORE, LLP
1201 West Peachtree Street, NW, Suite 3900
Atlanta, GA 30309-3417
Telephone: (404) 881-4100
Fax: (404) 881-4111
Email: lowrey@bmelaw.com