IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

PHIGENIX, INC.                    )
                                  )
        Plaintiff,                )
                                  )        CIVIL ACTION FILE
v.                                )
                                  )        NO. 1:14-CV-287-MHC
GENENTECH, INC.                   )
                                  )
        Defendant.                )

## ORDER

Before the Court are Defendant Genentech, Inc.'s Motion to Dismiss [Doc. 37] and Motion to Transfer [Doc. 38].

## I.      Factual and Procedural Background

Plaintiff Phigenix, Inc. ("Phigenix") is a Georgia corporation with its principal place of business in Atlanta.  See First Amended Complaint [Doc. 21] ("Am. Compl.") at ¶ 1.  Phigenix is a pharmaceutical and biomedical research company focusing on the use of novel molecular therapeutics that target aberrant cell signaling for cancers.  Id.  On January 31, 2014, Phigenix filed the original complaint in this action, alleging that Genentech infringes U.S. Patent No. 8,080,534B2 (the "'534 Patent").  Complaint [Doc. 1] ("Compl.").  The complaint alleged direct infringement through Genentech's sale of the drug ado-trastuzumab

emtansine under the trade name KADCYLA®, and indirect infringement by inducing healthcare professionals to administer KADCYLA® to breast cancer patients. Id. at ¶¶ 4, 11. On June 16, 2014, Phigenix filed an amended complaint joined by Medical University of South Carolina Foundation for Research Development ("MUSC FRD")[1] as a plaintiff; the amended complaint asserts MUSC FRD is the owner of the '534 Patent, and Phigenix is the exclusive licensee. Am. Compl. at ¶ 10. On September 19, 2014, MUSC FRD filed a motion to dismiss its claims against Genentech, stating that, on September 8, MUSC FRD assigned all its interests in the patent to Phigenix. [Doc. 49.] The Court granted its motion [Doc. 55] and, thus, Phigenix is the only remaining plaintiff.

On July 21, Genentech filed both a motion to dismiss under Fed. R. Civ. P. 12(b)(6) [Doc. 37] and a motion to transfer venue to the Northern District of California [Doc. 38].[2]

---

[1] Plaintiff MUSC FRD is a South Carolina not-for-profit corporation with its principal place of business in Charleston. Am. Compl. at ¶ 2.
[2] At the time Phigenix responded, it was joined by MUSC FRD. However, as MUSC FRD is no longer a party, the Court will refer simply to "Phigenix" when discussing the responses in opposition to Genentech's motions.

## II.   Motion to Dismiss

### A.   Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Although this pleading standard does not require "detailed factual allegations," mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("Nor does a complaint suffice if it tenders 'naked assertions[s]' devoid of 'further factual enhancement'") (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id.

When considering a Rule 12(b)(6) motion to dismiss, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Investor Group v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999)). However, the court does not "accept as true

a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

## B.     Direct Infringement

Genentech argues the Amended Complaint fails to state a facially-plausible claim for direct infringement. See Genentech's Brief in Support of Motion to Dismiss [Doc. 37-1] ("Genentech's MTD") at 9-12. Whether a complaint "adequately plead[s] direct infringement is to be measured by the specificity required by Form 18" of the Appendix of Forms to the Federal Rules of Civil Procedure. In re Bill of Lading Transmission & Processing Sys. Patent Litig., 681 F.3d 1323, 1334 (Fed. Cir. 2012). Fed. R. Civ. P. 84 states that "the forms in the Appendix suffice under these rules and illustrate the simplicity and brevity that these rules contemplate." Form 18 requires:

> (1) an allegation of jurisdiction; (2) a statement that the plaintiff owns the patent; (3) a statement that defendant has been infringing the patent by making, selling, and using [the device] embodying the patent; (4) a statement that the plaintiff has given defendant notice of its infringement; and (5) a demand for an injunction and damages.

In re Bill of Lading, 681 F.3d at 1334 (internal quotations and citation omitted).

The Amended Complaint includes statements: (1) of jurisdiction (Am. Compl. ¶¶ 4-5); (2) that MUSC FRD owns the '534 Patent and Plaintiff is its

4

exclusive licensee (Id. ¶ 10); (3) that Genentech infringes the patent by using

methods claimed by the '534 Patent, stating that Genentech

> manufactures, uses, sells and/or markets KADCYLA® throughout the
> United States . . . has infringed and is continuing to infringe the '534
> patent, directly and/or indirectly, through conduct that includes at
> least actively inducing healthcare professionals to prescribe and
> administer KADCYLA® to treat patients . . . [and] by continuing to
> make, sell, induce and/or contribute to the infringement of the '534
> patent.

(Id. ¶¶ 12-13); (4) providing Genentech notice of its infringement (Id. ¶ 6); and (5)

demanding an injunction and damages (Id. ¶¶ 16-19).

The Federal Circuit has held that an asserted claim of direct infringement

that follows the dictates of Form 18 suffices under the Rules.  In re Bill of Lading,

681 F.3d at 1334.  The court there specifically held as follows:

> The sample complaint in the Appendix of Forms is relevant because
> Federal Rule of Civil Procedure 84 states that "the forms in the
> Appendix suffice under these rules and illustrate the simplicity and
> brevity that these rules contemplate."  FED. R. CIV. P. 84.   The
> Advisory Committee Notes to the 1946 amendment of Rule 84 states
> [sic] that "[t]he amendment serves to emphasize that the forms
> contained in the Appendix of Forms are sufficient to withstand attack
> under the rules under which they are drawn, and that the practitioner
> using them may rely on them to that extent."   Id. The language of
> Rule 84 and the Advisory Committee Notes make "clear that a
> pleading, motion, or other paper that follows one of the Official
> Forms cannot be successfully attacked."  12 Charles Alan Wright,
> Arthur R. Miller & Richard L. Marcus, Federal Practice and
> Procedure § 3162 (2d ed. 1997).

Id. Any changes to the Federal Rules of Civil Procedure "must be obtained by the

process of amending the Federal Rules, and not by judicial interpretation."

Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S.

163, 168 (1993); see also Twombly, 550 U.S. at 569 n.14.  Thus, as the Federal

Circuit determined, the Forms control over any potential conflict with Twombly

and its progeny, and whether a complaint adequately pleads direct infringement

should be measured by the specificity required by Form 18.  In re Bill of Lading,

681 F.3d at 1334 (citing McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1360 (Fed.

Cir. 2007) (Dyk, J., concurring-in-part and dissenting-in-part) (acknowledging that,

while the bare allegations contemplated by Form 18 appear deficient under

Twombly, we are "required to find that a bare allegation of literal infringement in

accordance with Form [18] would be sufficient under Rule 8 to state a claim.")).

Genentech does not contend that the Amended Complaint fails to satisfy

Form 18.  Instead, Genentech argues that "plausibly alleging a method patent claim

requires more than copying the form."  Genentech's Reply Brief in Support of

Motion to Dismiss [Doc. 46] at 3 (citing Andrulis Pharm. Corp. v. Celgene Corp.,

No. CV 13-1644-RGA, 2014 WL 1572906, at *1 (D. Del. Apr. 10, 2014)

("[C]omplying with Form 18 is the appropriate inquiry, [but] the analysis is not

limited to whether the form was simply parroted.")).

6

The court in <u>Andrulis</u> determined the undivided direct-infringement theory

failed to state a claim because it "failed to provide notice or facial plausibility."

2014 WL 1572906, at *1.  In fact, the defendant was unaware that the plaintiff had

accused it of practicing the patented method until receipt of the defendant's

answering brief.  <u>Id.</u>  The court stated,

> "The touchstones of an appropriate analysis under Form 18 are notice
> and facial plausibility.  While these requirements serve as a bar
> against frivolous pleading, it is not an extraordinarily high one.  The
> adequacy of the facts pled depends on the breadth and complexity of
> both the asserted patent and the accused product or system and on the
> nature of the defendant's business activities."

<u>Id.</u> (quoting <u>K-Tech Telecomm., Inc. v. Time Warner Cable, Inc.</u>, 714 F.3d 1277,

1286 (Fed. Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1026 (2014)).[3]  However, the court

determined the joint direct infringement claim survived the motion to dismiss

because the plaintiff had "pled more than enough factual allegations describing the

relationship between prescribing doctors and [the defendant]," and concluded,

"there is a plausible inference that [plaintiff] 'directs or controls' doctors'

performance of the claimed method." <u>Id.</u> at *2.

Here, by Genentech's detailed and factually-specific briefing on the present

motion to dismiss, it is beyond question that Genentech is aware of what Plaintiff

---

[3] The Court notes that, although plaintiff there argued its complaint complied with
Form 18, nowhere in <u>Andrulis</u> does the court state the complaint does, in fact,
satisfy the requirements of Form 18.

is alleging to be the infringing activities.  Further, accepting the factual allegations contained in the complaint as true for the purposes of deciding the motion to dismiss, the Court concludes they result in a facially-plausible claim.

Genentech also attempts to use K-Tech to support its proposition, quoting the court's statement that "Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device is being accused of infringement." Genentech's MTD at 9-10 (quoting K-Tech, 714 F.3d at 1284).  In fact, the Federal Circuit ultimately stated that Form 18 was the authority on pleading for direct infringement claims:

> Any criticism we may have regarding the sufficiency of the forms themselves is strictly proscribed by Supreme Court precedent.  And, as we made clear in [In re Bill of Lading], to the extent any conflict exists between Twombly (and its progeny) and the Forms regarding pleadings requirements, the Forms control.

> That Form 18 would control in the event of a conflict between the form and Twombly and Iqbal does not suggest, however, that we should seek to create conflict where none exists.  A complaint containing just enough information to satisfy a governing form may well be sufficient under Twombly and Iqbal. . . .

> Form 18 in no way relaxes the clear principle of Rule 8, that a potential infringer be placed on notice of what activity or device of infringement.

714 F.3d at 1283-84 (internal citations, footnote, and quotations omitted). Thus, the Court interprets the Federal Circuit's statement to mean that Form 18 does, in fact, govern, and that it is designed to satisfy the requirements of Rule 8.

The other cases cited by Genentech do not lead the Court to a different conclusion. In Selex Commc'ns, Inc. v. Google Inc., No. 1:09-CV-2927-TWT, 2012 WL 1681824, at *4 (N.D. Ga. May 11, 2012), the court held that "Form 18 sets forth a sufficient complaint alleging direct patent infringement. It does not attempt to address pleading joint infringement. For these reasons, Selex must plead facts supporting its theory of joint infringement." In Ziptronix, Inc. v. Omnivision Technologies, Inc., No. C 10-5525 SBA, 2011 WL 5416187, at *3-4 (N.D. Cal. Nov. 8, 2011), the court found the plaintiff had not satisfied the elements of Form 18.

Here, the complaint meets the requirements of Form 18. Further, the Court does not deem this to be one of the seemingly-rare cases in which a complaint satisfies the requirements of Form 18, but not those of Fed. R. Civ. P. 8. The Court finds the direct-infringement allegations in the complaint satisfy the pleading requirements in Fed. R. Civ. P. 8, and sufficiently have placed Genentech on notice of what activity is alleged to be direct infringement.

## C.   Indirect Infringement

Genentech also alleges Phigenix has failed to plead indirect infringement. Genentech's MTD at 12-25.  Specifically, Genentech argues that pre-filing correspondence with Phigenix establishes Genentech's good-faith belief that the '534 Patent was invalid.  Id.

To plead a claim for induced infringement, a plaintiff must allege: (1) a direct infringement of the patent; (2) the party accused of inducement knowingly engaged in acts that induced the infringement by the direct infringer; (3) the party accused of inducement knew of the patent at issue; and (4) the party accused of inducement acted with intent to cause a patent infringement.  See In re Bill of Lading, 681 F.3d at 1333, 1339; see also Global-Tech Appliances, Inc. v. SEB S.A., 131 S. Ct. 2060, 2068 (2011); DSU Med. Corp. v. JMS Co., Ltd., 471 F.3d 1293, 1306 (Fed. Cir. 2006).  The plaintiff need not prove these elements at the pleading phase; it need only plausibly allege them.  See In re Bill of Lading, 681 F.3d at 1339.

In the Amended Complaint, Phigenix states that: (1) health care providers directly infringe the '534 Patent (Am. Compl. ¶¶ 12, 13); (2) Genentech knowingly engaged in acts that induced the infringement by the direct infringer (Id. ¶ 13); (3) Genentech knew of the '534 Patent (Id. ¶ 6); and (4) Genentech acted with intent to

infringe the '534 Patent, or was willfully blind as to whether it was causing patent infringement (Id. ¶ 13).

Rather than stating the Complaint fails to satisfy the necessary elements, Genentech states that "the complaint fails to allege facts – supporting a reasonable inference in plaintiffs' favor – that overcome Defendant's showing of its good faith belief in invalidity." Genentech's MTD at 13. At this stage of the litigation, there is no burden on a plaintiff in its pleading to overcome a factually-dependent defense asserted by a defendant. For purposes of rebutting a motion to dismiss, all factual allegations in the pleading are to be read in favor of the non-movant. See Iqbal, 556 U.S. at 696; In re Bill of Lading, 681 F.3d at 1340. The defense asserted by Genentech, an assertion of a good-faith belief in invalidity, is a factual issue, rather than an issue to warrant dismissal of a complaint. See Commil USA, LLC v. Cisco Sys., Inc., 720 F.3d 1361, 1368-69 (Fed. Cir. 2013) (stating that "evidence of an accused inducer's good-faith belief of invalidity may negate the requisite intent for induced infringement. This is, of course, not to say that such evidence precludes a finding of induced infringement. Rather, it is evidence that should be considered by the fact-finder in determining whether an accused party knew that the induced acts constitute patent infringement.") (internal quotation marks, footnote, and citation omitted). To hold otherwise would permit a

defendant to obtain the dismissal of a well-pleaded infringement complaint merely by maintaining that the defendant had a good faith belief in the invalidity of the patent at issue.  See Clouding IP, LLC, v. Rackspace Hosting, Inc., No. 12-675-LPS, 2014 WL 495752, at *3 (D. Del. Feb. 6, 2014) ("Commil concerned whether the district court erred in preventing Cisco from presenting evidence during the second trial of its good-faith belief of invalidity to rebut Commil's allegations of induced infringement. . . .  There is no basis to expand Commil into a pleading requirement.") (internal quotations and citation omitted); BRK Brands, Inc. v. Nest Labs, Inc., No. 13 C 7900, 2014 WL 1225324, at *2 (N.D. Ill. March 19, 2014) (stating that "if the patent is valid and therefore infringed, it seems odd that the erroneous belief of the inducer that it was invalid should be a defense" and that "the Supreme Court has held that what is required for induced infringement is knowledge of the patent and that it was infringed, not knowledge or belief that it was a valid patent.  In any event, the issue is insufficiently developed . . . to dismiss the claim at this juncture.") (internal citations omitted).

Here, Phigenix sets out sufficient allegations that, if taken as true, suffice to state a claim under Fed. R. Civ. P. 8.  The Court will not analyze Genentech's factual defense at the pleadings stage.  Thus, Genentech's Motion to Dismiss [Doc. 37] is **DENIED**.

### III.   Motion to Transfer Under 28 U.S.C. § 1404(a)

#### A.   Legal Standard

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); see Van Dusen v. Barrack, 376 U.S. 612, 616 (1964) (stating that the purpose of § 1404(a) is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense" (internal citations and quotations omitted)).   The decision to transfer a case under § 1404(a) rests within the Court's sound discretion.  See Ross v. Buckeye Cellulose Corp., 980 F.2d 648, 654-55 (11th Cir. 1993).  The parties do not appear to dispute that the Northern District of California is a district in which this action "might have been brought."  First, there is federal subject matter jurisdiction over this lawsuit, as there is complete diversity between Phigenix and Genentech, and the amount in controversy exceeds $75,000. 28 U.S.C. §§ 1332(a), 1441(b).  See Compl.; Am. Compl.  Genentech agrees Phigenix could have brought this action in the Northern District of California. Genentech's Brief in Support of Motion to Transfer [Doc. 38-1] ("Genentech's MTT") at 6 (citing 28 U.S.C. §§ 1338, 1400(b)).  Phigenix does not dispute that they could have brought this action in the Northern District of California.  See

generally Phigenix's Response to Defendant's Motion to Transfer [Doc. 39] ("Phigenix's Resp."). Instead, Phigenix argues there is not personal jurisdiction over it in the Northern District of California. Id. at 1. However, whether there is personal jurisdiction over the plaintiffs in the potential transferee district is not part of the Court's analysis in determining whether a transfer of venue is proper. See, e.g., In re Genentech, Inc., 566 F.3d 1338, 1346 (Fed. Cir. 2009) ("There is no requirement under § 1404(a) that a transferee court have jurisdiction over the plaintiff or that there be sufficient minimum contacts with the plaintiff; there is only a requirement that the transferee court have jurisdiction over the defendants in the transferred complaint.").

Section 1404 requires the court to consider three factors: (1) the convenience of the parties; (2) the convenience of the witnesses; and (3) the interests of justice. Moore v. McKibbon Bros., Inc., 41 F. Supp. 2d 1350, 1356 (N.D. Ga. 1998). The Eleventh Circuit has expanded upon the Section 1404 factors to include: "(1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight

accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of circumstances." Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

In weighing these factors, the Court employs a "strong presumption against disturbing plaintiff's initial forum choice," SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100 (11th Cir. 2004) (quoting La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983). "The most important factor . . . is the convenience of witnesses." Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa., 842 F. Supp. 2d 1360, 1366 (N.D. Ga. 2012) (quoting Elec. Transaction Network v. Katz, 734 F. Supp. 492, 501-02 (N.D. Ga. 1989)). But that factor supports transfer only if the movant goes beyond generalities and "make[s] a specific showing of inconvenience to the witnesses." Id.

Ultimately, the movant bears the burden of showing that transfer is appropriate. In re Ricoh Corp., 870 F.2d 570, 573 (11th Cir. 1989). And that burden is not light; if the movant merely shows that transfer would "shift inconvenience from one party to the other" or that "the balance of all factors is but slightly in favor of the movant, plaintiff's choice of forum should not be disturbed and transfer should be denied." Bell v. K-Mart Corp., 848 F. Supp. 996, 998 (N.D.

Ga. 1994) (quoting Grey v. Cont'l Mktg. Assocs., Inc., 315 F. Supp. 826, 831

(N.D. Ga. 1970)).  However, the proof a movant offers in support of a motion to

transfer "need not be overwhelming, it being necessary only that he show a balance

of interests favoring the transfer." A. C. Samford, Inc. v. United States, 226 F.

Supp. 72, 77 (M.D. Ga. 1963).

### B.    Analysis

#### 1.    Phigenix's Choice of Forum

Federal courts traditionally accord a plaintiff's choice of forum considerable

deference.  In re Ricoh Corp., 870 F.2d at 573.  However, "[e]ven when the

plaintiff sues in its home forum, that fact is not by itself controlling and the weight

of that factor depends on the nexus tying the case to the forum." Gebr. Brasseler

GmbH & Co. KG. v. Abrasive Tech., Inc., No. 1:08cv1246 (GBL/TCB), 2009 WL

874513, at *2 (E.D. Va. Mar. 27, 2009); cf. Silong v. United States, No. 5:05-cv-

55-OC-10GRJ, 2006 WL 948048, at *1 (M.D. Fla. Apr. 12, 2006) (stating that a

plaintiff's choice of forum is "accorded lesser weight where the choice of forum

lacks any significant connection with the underlying claim").

Phigenix is a Georgia corporation, with its place of business in Atlanta.  Am.

Compl. at ¶ 1.  Thus, the Northern District of Georgia is Phigenix's home forum.

Phigenix alleges that Genentech's induced infringement has occurred throughout the United States, including Georgia and Fulton County. Id. at ¶ 5.

Here, although Phigenix's choice of forum weighs somewhat against transfer, and is entitled to some consideration, the Court finds it is not of itself controlling and, here, it is outweighed by consideration of other factors.

2.    Convenience of the Witnesses

"The most important factor under § 1404(a) is the convenience of witnesses, and the moving party must make a specific showing of inconvenience to witnesses." Elec. Transaction Network, 734 F. Supp. at 501-02. The focus of the court should be on the convenience of "key witnesses." McNair v. Monsanto Co., 279 F. Supp. 2d 1290, 1311 (M.D. Ga. 2003). Specifically, the court must determine whether the witnesses "have actual knowledge about the issues in the case, where they are located, and whether it will be more convenient for them" if the action is in Georgia or California. Cellularvision Tech. & Telecomm., L.P. v. Alltel Corp., 508 F. Supp. 2d 1186, 1190 (S.D. Fla. 2007).

The weight accorded to party witnesses is limited. See Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1327 (M.D. Fla. 2010) ("[This factor's] significance is diminished when the witnesses,

although in another district, are employees of a party and their presence at trial can

be obtained by that party."). This is because "those closely aligned with a party

. . . are presumed to be more willing to testify in a different forum." Ramsey v.

Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004). The

Court therefore considers the primary focus of this factor to be the convenience of

the non-party witnesses. See id. ("[T]he convenience of the non-party witnesses

weighs most heavily on the Court in deciding on a motion to transfer venue");

Kolodziej v. Mason, No. 1:10-CV-2012-JEC, 2011 WL 2009467, at *7 (N.D. Ga.

May 20, 2011) ("The convenience of nonparty witnesses holds more weight than

that of party witnesses in evaluating the convenience of the forum."); see also

Rigby v. Flue-Cured Tobacco Co-op Stabilization Corp., No. 7:05-cv-122 (HL),

2006 WL 1312412, at *4 (M.D. Ga. May 11, 2006).

Here, Genentech states "at least sixteen potential trial witnesses are located"

in South San Francisco, where it maintains its research and development facilities.

Genentech's MTT at 7. It mentions at least five Genentech employees who could

testify about the development of KADCYLA® and at least eleven employees who

could testify about the sales, marketing, distribution, and/or regulatory planning for

KADCYLA®, who live in San Francisco. Id. at 7-8. All these witnesses,

however, are party witnesses.

Phigenix identifies only one witness: Dr. Carlton Donald, the inventor of the '534 Patent. Phigenix's Resp. at 10-11. Phigenix then attacks Genentech's list of witnesses, stating all sixteen are, in fact, party witnesses, and questioning whether all sixteen are key witnesses. Id. at 11-12. Regardless of how many of these potential witnesses are, indeed, key witnesses, the Court agrees that party witnesses are less significant for the purposes of analyzing the convenience of witnesses than are non-party witnesses.

In the portion of its brief discussing the availability of process, however, Genentech discusses several non-party witnesses who likely will be relevant. Genentech's MTT at 11-12. Specifically, Genentech discusses Barbara Klencke, a former employee who helped develop KADCYLA®; Timothy Schwartz, a former employee who corresponded with Phigenix in pre-filing communications, and who has knowledge of Genentech's lack of specific intent to induce infringement; Robert Cohen, a former employee who worked on research leading to KADCYLA®; and Daniel V. Santi and Hillel David Friedland, authors of prior art concerning the validity of the '534 Patent. Id. at 12. All these potential non-party witnesses appear to reside in the Northern District of California. Id.

Phigenix focuses on an additional potential non-party witness for Genentech: ImmunoGen, Inc., headquartered in Massachusetts, from whom Genentech

licenses technology; Phigenix states KADCYLA ®was jointly developed by both companies. Phigenix's Resp. at 8-9. In attempting to convince the Court that the Northern District of Georgia is a more convenient forum, Phigenix exaggerates the difference between distance from Massachusetts to California and that from Massachusetts to Georgia. Id. at 8. Phigenix then examines Genentech's other identified potential non-party witnesses and either states there is no evidence that the witnesses would be unwilling to testify and thereby require process, or that the witnesses potentially are not relevant. Id. at 9-10. Willingness to testify is not the focus to the Court's analysis of convenience to witnesses. Further, even if the two potential witnesses Phigenix attacks as potentially irrelevant were, in fact, not to be used as witnesses, Genentech still has identified three non-party witnesses, which is three more non-party witnesses than Phigenix has identified.

Because, in addition to its party witnesses, Genentech has identified five potential non-party witnesses located in the Northern District of California, and Phigenix has identified no non-party witnesses located in the Northern District of Georgia, the Court determines this factor weighs in favor of transfer.

### 3. Location of Relevant Documents and Relative Ease of Access to Sources of Proof

Genentech argues the large number of documents located in California causes this factor heavily to favor transfer. Genentech's MTT at 10-11. As the

accused infringer, Genentech's evidence is important. <u>In re Genentech</u>, 566 F.3d at 1345 ("In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location."). Phigenix argues in response that this is, essentially, a non-factor, and that Genentech's parent company, Roche Group, based in Switzerland, may be relevant. Phigenix's Resp. at 13-16.

District courts in this circuit have found that the location of physical documents does not play a substantial role in the venue analysis due to the electronic storage and transmission of information. <u>See</u>, <u>e.g.</u>, <u>Wi-LAN USA, Inc. v. Apple Inc.</u>, No. 12-cv-24318-KKM, 2013 WL 1343535, at *3 (S.D. Fla. Apr. 2, 2013); <u>Carroll v. Tex. Instruments</u>, No. 2:11-cv-1037-MHT, 2012 WL 1533785, at *7 (M.D. Ala. May 1, 2012); <u>Microspherix LLC v. Biocompatibles, Inc.</u>, No. 9:11-cv-80813, 2012 WL 243764, at *3 (S.D. Fla. Jan. 25, 2012); <u>Polyform A.G.P. Inc. v. Airlite Plastics Co.</u>, 4:10-cv-43-CDL, 2010 WL 4068603, at *4 (M.D. Ga. Oct. 15, 2010). As the court in <u>Microspherix</u> explained,

> In a world with fax machines, copy machines, email, overnight shipping, and mobile phones that can scan and send documents, the physical location of documents is irrelevant. In light of the burden a party moving for transfer bears, absent a showing by the moving party to the contrary, this Court considers the location of relevant

documents and the relative ease of access to sources of proof a non-factor.

2012 WL 243764, at *3. See also ESPN, Inc. v. Quiksilver, Inc., 581 F. Supp. 2d 542, 548 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly.").

Further, the Court determines that, even if Phigenix were to determine that discovery from Roche, located in Europe, were to be necessary, production of documents in Georgia would not be significantly more convenient to this potentially-relevant non-party than in California. Here, the Court agrees this factor will be of little importance, and finds it is neutral in the transfer analysis or, at most, weighs slightly in favor of transfer.

4.    Convenience of the Parties

"Where a transfer merely shifts the burden of inconvenience from one party and its witnesses to another party and its witnesses, courts will not disturb a plaintiff's choice of forum." Zurich Am. Ins. Co. v. Renasant Ins. Co., No. 8:10-cv-1769-t-17EAJ, 2011 WL 722972, at *7 (M.D. Fla. Feb. 23, 2011).

The Court "places little weight on the 'domicile of corporate defendants and their place of incorporation . . . .'" Am. Safety Casualty Ins. Co. v. Bio-Tech Solutions, Inc., No. 1:05-CV-3152-JEC, 2007 WL 951529, at *4 (N.D. Ga. Mar.

22

26, 2007) (quoting <u>Grey v. Cont'l Marketing Assocs., Inc.</u>, 315 F. Supp. 826, 831-32 (N.D. Ga. 1970)).

Here, where Phigenix resides in Georgia, while Genentech resides in California, it appears obvious that it is more convenient for Phigenix to remain in the Northern District of Georgia, and more convenient for Genentech to transfer to the Northern District of California. Thus, this factor is neutral.

        5.    Locus of Operative Facts

Genentech states that that the operative facts are located in South San Francisco. Genentech's MTT at 10-11. Specifically, it states that its "primary research and development facilities are located in South San Francisco, where the research and development of Kadcyla took place." <u>Id.</u> at 11. Genentech further states that its "sales, marketing, distribution, and regulatory planning for Kadcyla also primarily take place in South San Francisco." <u>Id.</u>

Phigenix argues in response that, because the invention underlying the '534 Patent was conceived and reduced to practice in Georgia and South Carolina, while the allegedly infringing product was "purportedly partly designed and developed in Massachusetts by the licensor ImmunoGen and partly in California," this factor should be considered neutral or slightly against transfer. Phigenix's Resp. at 16 (citing <u>Children's Network, LLC v. Pixfusion LLC</u>, 722 F. Supp. 2d 404, 413

(S.D.N.Y. 2010) ("In patent cases, the locus of operative facts usually lies where either the patent-in-suit or the allegedly infringing product was designed, developed, and produced.")). Phigenix also states that there is no evidence of where or by whom the allegedly-infringing product currently is manufactured, that it appears manufacturing will be conducted in Switzerland, and that Genentech's allegedly-infringing activities have occurred nationwide, including in Georgia. Id.

Here, although relevant activities have occurred in many locations, the Court agrees that, where Genentech's research and development of the allegedly-infringing product occurred in the Northern District of California, and its sales, marketing, distribution, and regulatory planning for the product also occurred primarily in the Northern District of California, this factor supports transfer.

      6.     Availability of Process to Compel Attendance of Unwilling Witnesses

Although Genentech includes a section purportedly describing the availability of process to compel the attendance of unwilling witnesses, the section actually only describes the non-party witnesses it anticipates being relevant. Genentech's MTT at 11-13. Nowhere does Genentech assert that any of these non-party witnesses are unwilling to testify in the Northern District of Georgia. Id. The Court recognizes the importance of the convenience of non-party witnesses,

and has considered this in analyzing the (entirely-separate) factor of convenience to witnesses. See pp. 17-20 of this Order.

Although Phigenix points out Genentech's failure to allege unwillingness to testify, it also fails to allege any witnesses who would be unwilling to testify if this Court were to transfer the action to the Northern District of California. Phigenix's Resp. at 11. Because neither side specifically has identified the need for process to compel unwilling witnesses, the Court determines this factor to be neutral.

       7.     Relative Means of the Parties

Genentech asserts the relative means of the parties are similar, so that this is a neutral factor. Genentech's MTT at 13. Phigenix opposes, providing information of Genentech's revenue and success. Phigenix's Resp. at 7. Though Phigenix purports to "properly analyze" this factor, its only comparison to Phigenix is to state that "Dr. Donald, founder, President, and CEO of Phigenix, lives and works in Georgia, as do the other Phigenix employees." Ultimately, each side only describes the successes of the other. Without any specific comparison, the Court must conclude this factor to be neutral.

Case 5:15-cv-01238-BLF   Document 66   Filed 03/12/15   Page 26 of 27

       8.     This Court's Familiarity with the Governing Law

Because this Court and the Northern District of California are well-versed in patent law, the parties agree this factor is neutral.  Genentech's MTT at 13; Phigenix's Resp. at 18.

       9.     Trial Efficiency and Interests of Justice

Genentech asserts this factor favors transfer, stating that the Northern District of California has a "strong interest in resolving this dispute" because the facts and witnesses are primarily located in that district.  Genentech's MTT at 15.

Phigenix counters that this factor actually weighs against transfer or, at the least, is neutral.  Phigenix's Resp. at 16-18.  Specifically, it asserts that, because Phigenix is in Georgia, where it conducts business, along with research and development, Georgia has a strong interest in resolving this case.  Id. at 16-17.  It also stresses the lack of connection between Phigenix and the Northern District of California.  Id. at 17-18.  Thus, it states the local interest in resolving the dispute actually is in Georgia.  Id. at 18.  Phigenix also argues that trial efficiency weighs against transferring the case, because the Northern District of Georgia is faster to trial than the Northern District of California by nearly four months.  Id.

The Court finds that each district has an interest in the dispute, and the efficiency in resolving this dispute (not accounting for the difference in patent and non-patent cases) are not determinative; thus, this factor is neutral.

Although most factors are neutral, there are important factors, particularly the convenience of witnesses (non-party as well as party witnesses) and the locus of operative facts, which weigh strongly in favor of transfer. The Court finds that, for the convenience of parties and witnesses and in the interest of justice, this action should be transferred to the Northern District of California. Thus, Genentech's Motion to Transfer [Doc. 38] is **GRANTED**.

## IV.   Conclusion

Accordingly, for the above reasons, Defendant Genentech, Inc.'s Motion to Dismiss [Doc. 37] is **DENIED** and Defendant Genentech, Inc.'s Motion to Transfer [Doc. 38] is **GRANTED**. The Clerk is directed to **TRANSFER** the entire action to the Northern District of California.

**IT IS SO ORDERED** this 12th day of March, 2015.

MARK H. COHEN
United States District Judge