UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIGENIX, INC., <br><br> Plaintiff, <br><br> v. <br><br> GENENTECH INC, <br><br> Defendant. | Case No. 15-cv-01238-BLF <br><br> **ORDER CONSTRUING CLAIMS IN U.S. PATENT NO. 8,080,534** <br><br> [Re: ECF 162] |

Plaintiff Phigenix, Inc. ("Phigenix") brings this patent infringement lawsuit against Defendant Genentech, Inc. ("Genentech") alleging infringement of U.S. Patent No. 8,080,534B2 ("the '534 Patent"). The Court held a tutorial on July 1, 2016, and a *Markman* hearing on July 8, 2016, for the purpose of construing four disputed terms in the '534 Patent.

I.   **BACKGROUND ON THE '534 PATENT**

The '534 Patent is titled "Targeting PAX2 for the Treatment of Breast Cancer." It describes and claims methods of prevention and/or treatment of breast cancer and other breast conditions by administering compositions to inhibit the expression or activity of PAX2 and/or enhance the expression of DEFB1 proteins within a cancer cell. '534 Patent at Abstract.

Paired box genes ("PAX") are a family of nine developmental control genes coding for

specific transcription factors. *Id*. at 6:23-26. Beta-defensins, ("DEFB") are peptides with broad-spectrum antimicrobial activity. *Id*. at 7:17-18. As of the date the '534 patent issued, five beta-defensin genes had been identified in humans, including DEFB1. *Id*. at 7:24-25. DEF1B forms part of "an innate immune system involved in tumor immunity." *Id*. at 30:11-13. Previous studies reported that "PAX2 suppresses DEFB1 expression by binding to the DEFB1 promoter." *Id*. at 6:47-49.

The Specification teaches that DEFB1 can be toxic to prostate cancer cells but not to normal prostate cells. *Id*. at 30:10-17. However, certain cancerous and precancerous prostate cells exhibit an overexpression of PAX2, which in turn inhibits DEFB1 expression. Id. at 33:57-60, 36:32-33, 42:54-56. As a result, inhibiting PAX2 expression in prostate cancer cells can enhance the expression of DEFB1 and kill the cancerous prostate cells. *Id*. at 30:10-23. The '534 Patent describes prophetic examples that predict this phenomenon also occurs in breast cancer cells. *Id*. at 53:61-54:49.

Phigenix asserts Genentech infringes claims 1, 2, and 8 of the '534 Patent. Claims 1 and 8 are independent claims, and claim 2 is dependent on claim 1. All three claims are reproduced below:

> 1. A method for treating a breast condition in a subject, comprising administering to a breast tissue of the subject, a composition that (1) inhibits PAX2 expression or PAX2 activity, (2) expresses DEFB1 or (3) inhibits PAX2 expression or PAX2 activity and expresses DEFB1.
>
> 2. The method of claim 1, wherein the breast condition is breast cancer or mammary intraepithelial neoplasia (MIN).
>
> 8. A method of treating breast cancer or MIN in a subject, comprising enhancing expression DEFB1 in a breast cancer tissue or MIN tissue in the subject.

*Id*. at 109:2-8, 26-28.

## II. LEGAL STANDARD

Claim construction is a matter of law. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 387 (1996). "It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude," *Phillips v. AWH Corp.*, 415 F.3d

2

1303, 1312 (Fed. Cir. 2005) (en banc) (internal citation omitted), and, as such, "[t]he appropriate starting point . . . is always with the language of the asserted claim itself," *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998).

Claim terms "are generally given their ordinary and customary meaning," defined as "the meaning . . . the term would have to a person of ordinary skill in the art in question . . . as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1313 (internal citation omitted). The court reads claims in light of the specification, which is "the single best guide to the meaning of a disputed term." *Id.* at 1315; *see also Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1284-85 (Fed. Cir. 2014) (en banc). Furthermore, "the interpretation to be given a term can only be determined and confirmed with a full understanding of what the inventors actually invented and intended to envelop with the claim." *Phillips*, 415 F.3d at 1316 (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)). The words of the claims must therefore be understood as the inventor used them, as such understanding is revealed by the patent and prosecution history. *Id.* The claim language, written description, and patent prosecution history thus form the intrinsic record that is most significant when determining the proper meaning of a disputed claim limitation. *Id.* at 1315-17; *see also Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Evidence external to the patent is less significant than the intrinsic record, but the court may also consider such extrinsic evidence as expert and inventor testimony, dictionaries, and learned treatises "if the court deems it helpful in determining 'the true meaning of language used in the patent claims.'" *Philips,* 415 F.3d at 1318 (quoting *Markman*, 52 F.3d at 980). However, extrinsic evidence may not be used to contradict or change the meaning of claims "in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Id.* at 1319 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995)).

## III. CONSTRUCTION OF DISPUTED TERMS[1]

### A. Treating Terms

| Term | Phigenix's Proposal[2] | Genentech's Proposal | Court's Construction |
|---|---|---|---|
| Claim 1: "method for treating a breast condition in a subject" | No construction necessary. | This limitation does not require any particular level of therapeutic effectiveness; no further construction is necessary | No construction necessary |
| Claim 8: "method of treating breast cancer or MIN in a subject" | No construction necessary. | This limitation does not require any particular level of therapeutic effectiveness; no further construction is necessary | No construction necessary |

Phigenix argues that no further construction is necessary for the phrases "method for treating" and "method of treating" as they are easily understood by lay people and skilled artisans. Mot. 8, ECF 162. Genentech, concerned that Phigenix may take a shifting sands approach to infringement and validity, argues that the Court should clarify the terms do not require any particular level of therapeutic effectiveness. Opp. 8-11, ECF 173.

The Court agrees with Phigenix that when read in light of the specification, a skilled artisan would readily understand the meaning of the treating terms. Based on Genentech's concerns raised in the briefing, at the *Markman* hearing, the Court proposed adopting Phigenix's proposal of "no construction necessary" and ordering that neither party could argue the treating terms require any particular level of therapeutic effectiveness. *Markman* Tr. 5:2-13, ECF 228. Both parties were agreeable to this approach. *Markman* Tr. 10:16-17; 33:23-24, ECF 228. Accordingly, "method for treating a breast condition in a subject" and "method of treating breast cancer or MIN in a subject" are to be given their plain and ordinary meaning and neither party may argue that these terms require any particular level of therapeutic effectiveness. *See, e.g.*,

---

[1] The parties disagree over the appropriate definition of a skilled artisan. Mot. 5-7, ECF 162; Opp. 7, ECF 173. However, they both agree that the proper construction of the claims is the same under either of their definitions. *Id*. As a result, the Court need not resolve this issue at this juncture.
[2] Phigenix offered alternative constructions during its meet and confers with Genentech. Mot. 8 n.5, ECF 162. For completeness, Phigenix included these alternative constructions in its claim construction briefing but in that briefing, only advocates for and discusses why its "no construction necessary" construction is appropriate. Thus, the Court does not discuss Phigenix's alternative proposals.

*Cellular Commc'n Equip. LLC v. LG Elec., Inc.*, Case No. 14-cv-982, 2016 WL 2808887, at *13 (E.D. Tex. May 13, 2016) (construing term according to its plain and ordinary meaning but also clarifying what parties may argue); *Juniper Networks, Inc. v. Palo Alto Networks, Inc.*, 15 F. Supp. 3d 499, 522 (D. Del. 2014) (same); *Regents of Univ. of Cal. v. Dako N. Am., Inc.*, Case No. 05-03955-MHP, 2006 WL 1867618, at *12 (N.D. Cal. July 5, 2006) (same).[3]

## B. Inhibit/Enhancing Terms

| Term | Phigenix's Proposal | Genentech's Proposal | Court's Construction |
|---|---|---|---|
| Claim 1: "inhibit PAX2 expression or PAX2 activity" | No construction necessary. | This limitation does not exclude indirect inhibition of PAX2 expression or PAX2 activity; no further construction is necessary | No construction necessary |
| Claim 8: "enhancing expression of DEFB1" | No construction necessary. | This limitation does not exclude indirect enhancement of expression of DEFB1; no further construction is necessary | No construction necessary |

Phigenix argues that no further construction is necessary for the terms "inhibit PAX2 expression or PAX2 activity" and "enhancing expression of DEFB1" because the meanings of "inhibit" and "enhancing" are understood by a skilled artisan. Mot. 11-14, ECF 162. Here too, Genentech seeks construction of these terms to prevent Phigenix from taking different positions regarding infringement and invalidity. Opp. 8-11, ECF 173.

The Court agrees with Phigenix that when read in light of the specification, a skilled artisan would easily understand the meaning of these terms. In light of Genentech's concerns, at the *Markman* hearing, the Court also proposed adopting Phigenix's proposal of "no construction necessary" and ordering that neither party could argue the term "inhibit PAX2 expression or PAX2 activity" excludes indirect inhibition of PAX2 expression or PAX2 activity and that neither party could argue that the term "enhancing expression of DEFB1" excludes indirect enhancement

---

[3] At this juncture, the Court is not planning on informing the jury about the Court's additional directive to the parties regarding the terms. However, should the need arise at trial either party may request an appropriate instruction. *See, e.g., Juniper,* Case No. 11-1258-SLR (D. Del.), Trial Tr. 618:14-619:17, ECF 335.

of expression of DEFB1. *Markman* Tr. 5:2-13, ECF 228. Phigenix and Genentech agreed to this approach. *Markman* Tr. 10:16-17; 33:23-24, ECF 228. Thus, "inhibit PAX2 expression or PAX2 activity" is to be given its plain and ordinary meaning and the Court clarifies that this term does not exclude indirect inhibition of PAX2 expression or PAX2 activity. The term "enhancing expression of DEFB1" is also to be given its plain and ordinary meaning and the Court clarifies that this limitation does not exclude indirect enhancement of expression of DEFB1.[4]

## IV.  ORDER

For the foregoing set forth above, the Court construes the disputed terms as follows:

| Claim Term | Court's Construction |
| --- | --- |
| Claim 1: "method for treating a breast condition in a subject" | No construction necessary |
| Claim 8: "method of treating breast cancer or MIN in a subject" | No construction necessary |
| Claim 1: "inhibit PAX2 expression or PAX2 activity" | No construction necessary |
| Claim 8: "enhancing expression of DEFB1" | No construction necessary |

**IT IS SO ORDERED.**

Dated: August 8, 2016

_____
BETH LABSON FREEMAN
United States District Judge

---

[4] *See supra* 5 n.3.