1 | MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
2 | GEORGE C. HARRIS (CA SBN 111074)
GHarris@mofo.com
3 | MATTHEW I. KREEGER (CA SBN 153793)
MKreeger@mofo.com
4 | MORRISON & FOERSTER LLP
425 Market Street
5 | San Francisco, California  94105-2482
Telephone: 415.268.7000
6 | Facsimile: 415.268.7522

7 | Attorneys for Defendant
GENENTECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| PHIGENIX, INC., | Case No.  C 15-01238 BLF |
|---|---|
| Plaintiff, | **GENENTECH'S MOTION FOR SUMMARY JUDGMENT OF INVALIDITY BASED ON INADEQUATE WRITTEN DESCRIPTION AND ANTICIPATION** |
| v. | |
| GENENTECH, INC., | |
| Defendant. | Date: January 5, 2017<br>Time: 9:00 am<br>Ctrm: Courtroom 3 – 5th Floor |

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................................ ii

NOTICE OF MOTION ........................................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITES ....................................................................... 1

I.     INTRODUCTION ................................................................................................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ..................................................................... 2

III.   STATEMENT OF RELEVANT FACTS ............................................................................... 2

IV.    LEGAL STANDARD ............................................................................................................. 5

V.     ARGUMENT .......................................................................................................................... 6

    A.     The Asserted Claims are Invalid Because They Lack Written Description Support in the '534 Patent's Specification ........................................... 6

    B.     The Asserted Claims are Anticipated by Public Uses of Kadcyla Because They Lack Written Description Support in the 2005 Priority Application ................................................................................................. 8

        1.     The 2005 application does not describe any methods for treating breast conditions. ........................................................................ 8

        2.     Publicly disclosed uses of Kadcyla as a breast cancer treatment inherently anticipate the asserted claims of the '534 patent ....................................................................................................... 11

VI.    CONCLUSION ..................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*AbbVie Deutschland GmbH & Co. v. Jansen Biotech, Inc*,
  759 F.3d 1285 (Fed. Cir. 2014) .................................................................................... 5, 6, 7

*Ariad Pharms., Inc. v. Eli Lilly & Co.*,
  598 F.3d 1336 (Fed. Cir. 2010) (en banc) ..................................................................... *passim*

*Augustine Med., Inc. v. Gaymar Indus., Inc.*,
  181 F.3d 1291 (Fed. Cir. 1999) .................................................................................. 8, 10, 12

*Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*,
  541 F.3d 1115 (Fed. Cir. 2008) ............................................................................................ 5

*Centocor Ortho Biotech, Inc. v. Abbott Labs.*,
  636 F.3d 1341 (Fed. Cir. 2011) ..................................................................................... 5, 10

*CreAgri, Inc. v. Pinnaclife, Inc.*,
  No. 11-CV-6635-LHK, 2013 WL 6673676 (N.D. Cal. Dec. 18, 2013),
  *aff'd*, 579 F. App'x 1003 (Fed. Cir. 2014) ........................................................................... 9

*Evans Cooling Sys., Inc. v. Gen. Motors Corp.*,
  125 F.3d 1448 (Fed. Cir. 1997) .......................................................................................... 12

*In re Montgomery*,
  677 F.3d 1375 (Fed. Cir. 2012) .......................................................................................... 12

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
  522 F.3d 1299 (Fed. Cir. 2008) ....................................................................................... 5, 9

*Univ. of Rochester v. G.D. Searle & Co., Inc.*,
  358 F.3d 916 (Fed. Cir. 2004) .......................................................................................... 5, 8

*Upsher-Smith Labs., Inc. v. Pamlab, L.L.C.*,
  412 F.3d 1319 (Fed. Cir. 2005) .......................................................................................... 11

*Vanmoor v. Wal-Mart Stores, Inc.*,
  201 F.3d 1363 (Fed. Cir. 2000) .......................................................................................... 12

**STATUTES**

35 U.S.C.
  § 102 ...................................................................................................................................... 1
  § 102(b) ..................................................................................................................... 5, 11, 12
  § 112 .............................................................................................................................. 1, 5, 8

**OTHER AUTHORITIES**

Manual of Patent Examining Procedure § 201.08 (9th ed. Rev. Nov. 2015) .................................. 4

**NOTICE OF MOTION**

PLEASE TAKE NOTICE that on January 5, 2017 at 9:00 a.m., in Courtroom 3 of the United States District Court for the Northern District of California, 280 South First Street, San Jose, California, defendant Genentech shall and hereby does move for summary judgment of invalidity of asserted claims 1, 2, and 8 of U.S. Patent No. 8,080,534 (the "'534 patent") under 35 U.S.C. § 112 for lack of adequate written description and under 35 U.S.C. § 102 because the asserted claims are not entitled to their claimed priority date and are thus anticipated by the earlier public use and disclosure of the allegedly infringing activities.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

The asserted claims of the '534 patent are invalid as a matter of law because the '534 patent's specification fails to provide adequate written description support for them. The claims recite treating a breast condition by administering *any composition* that affects the activity of certain genes—whether by targeting these genes directly or influencing them indirectly through unrelated intermediaries. Lacking any structural limitations, the claims conceivably cover the use of innumerable compounds. Such "functionally defined" claims are highly vulnerable under the Federal Circuit's written description case law. Here, the specification fails to meet the Federal Circuit's exacting written description standards for claims of such enormous breadth.

The asserted claims are also invalid as a matter of law once the '534 patent is properly accorded a 2010 priority date instead of the claimed date in 2005. The claims recite treating a *breast condition*, but the 2005 application to which Phigenix claims priority focuses on prostate cancer and does not provide adequate written description support for the covered breast condition treatments. Phigenix first added the description of purported breast condition treatments in the 2010 continuation-in-part (CIP) application that led to the '534 patent, so the earliest possible priority date for the asserted claims is 2010. But clinical trials involving the accused method of treatment—administration of Genentech's Kadcyla® to treat breast cancer in a particular target patient population—had been undertaken and published by 2009. These clinical trials anticipate

the asserted claims under Phigenix's theory of infringement.

## II. STATEMENT OF ISSUES TO BE DECIDED

Whether Genentech is entitled to summary judgment that claims 1, 2, and 8 of the '534 patent are invalid because they: (1) fail the written description requirement in view of the patent's specification; and (2) lack written description support in the 2005 claimed priority application, rendering them anticipated by the prior public use of the accused method of treatment.

## III. STATEMENT OF RELEVANT FACTS

1. Phigenix sued Genentech for infringement of the '534 patent, alleging that administration of Genentech's pioneering immunoconjugate Kadcyla infringes the asserted claims when, pursuant to its label, it is administered to patients with breast cancer that have been previously treated with Herceptin® and a taxane. (Am. Compl. (ECF No. 21) ¶ 12; Declaration of Matthew A. Chivvis in Support of Genentech's Motion for Summary Judgment of Invalidity ("Chivvis Decl."), filed herewith, Ex. 1 at 3-4; Proposed Am. Infringement Contentions (ECF No. 250-2) at 3-4.)

2. PAX2 is a transcription factor that influences the expression of other genes. ('534 patent (ECF No. 21-1), 6:22-23.) The '534 patent purports to disclose the "discovery" that, unlike normal, non-cancerous cells that show little expression of PAX2, certain cancerous and precancerous prostate cells display levels of PAX2 expression that are high enough to inhibit DEFB1 expression. (*Id.*, 33:57-60, 36:32-48, 42:54-56.) DEFB1, the '534 patent asserts, kills prostate cancer cells through an innate immunity mechanism. (*Id.*) The patentee proposes that inhibiting PAX2 increases DEFB1 expression, causing prostate cancer cell death. The '534 patent further speculates that this phenomenon also occurs in breast cancer cells and hence that breast conditions may be treated through the same mechanisms. (*See id.*, 53:61-55:10.)

3. Asserted claims 1 and 2 of the '534 patent recite treating a breast condition by administering a composition that inhibits PAX2 and/or enhances expression of DEFB1. Asserted claim 8 recites treating breast cancer or mammary intraepithelial neoplasia (MIN) by enhancing DEFB1 expression. (*See id.*, 1:31-36 (discussion of intraepithelial neoplasia).) Phigenix

contends that administration of Kadcyla to patients that have been previously treated with Herceptin and a taxane has the claimed effects on PAX2 and DEFB1.  (Am. Compl. ¶ 12; Chivvis Decl. Ex. 1 at 3-4; Proposed Am. Infringement Contentions at 3-4.)

4. The asserted claims are not limited to any particular PAX2 inhibitor or DEFB1 expression enhancer, or even to a category of inhibitors or enhancers.  (*See* ECF No. 234 at 4-6.) Claim 1 recites treating a breast condition by administering any composition that inhibits PAX2 expression or activity, expresses DEFB1, or does both.  ('534 patent, claim 1.)  Claim 2, which depends from claim 1, adds that the breast condition is cancer or a precancerous condition, MIN. (*Id.*, claim 2.)  Claim 8 covers a method of treating breast cancer or MIN by enhancing expression of DEFB1 in the affected breast tissue by any means.  (*Id.*, claim 8.)

5. The '534 patent's specification provides several examples of one type of PAX2 inhibitor:  "short interfering" RNAs, or "siRNAs."  The specification discloses experiments using particular siRNAs in prostate cancer (not breast) cell lines.  (*See, e.g., id.*, 10:29-11:18.)  The '534 patent includes separate claims directed to the administration siRNAs specifically to influence PAX2 and DEFB1 expression in a subject.  (*Id.*, claims 3, 21.)  Phigenix has not asserted these claims against Genentech.

6. The specification also contains some limited experimental data concerning four other potential PAX2 inhibitors:  losartan, two structurally unrelated MEK1/MEK2 inhibitors, and an AMPK activator.  (*See, e.g., id.*, 40:11-43:6 (describing MAPK/MEK and AMPK signal pathways).)  Although the patentee never demonstrates that any of these compounds kills cancer cells, the '534 patent asserts that the data "implicate" these drugs as "potential suppressors of PAX2 expression" due to their roles in signal pathways the patentee asserts are upstream from PAX2.  (*Id.*, 43:65-67.)

7. The '534 patent alludes to other broad classes of potential PAX2 inhibitors without any supporting data.  The specification states that PAX2 inhibitors can be any small molecule that interferes with or inhibits binding of PAX2 to affect DEFB1 expression.  (*Id.*, 12:2-5.)  The specification further states that PAX2 inhibitors include any molecule that indirectly affects activity or expression of PAX2 or DEFB1.  (*Id.*, 12:5-14; *see also id.*, 12:14-15 (discussion of

antagonist).) According to the '534 patent, PAX2 inhibitors can even be large biologic molecules—such as antibodies and conjugates that include a biologic molecule linked to another molecule. (*Id.*, 12:45-47, 22:44-54.) Nothing in the claims or the specification implies that PAX2 inhibitors are limited to molecules with any common structural elements.

8. The '534 patent issued from U.S. Application No. 12/708,294 (the "2010 CIP"), filed on February 18, 2010, as a continuation-in-part of U.S. Application No. 12/090,191 (the "'191 application"). (*Id.*, cover at [21]; Chivvis Decl. Ex. 2.) The 2010 CIP claims priority to the '191 application, which in turn claims priority to U.S. Provisional Application No. 60/726,921, filed on October 14, 2005 (the "2005 application"). (Chivvis Decl. Exs. 3, 4, & 5.) The specifications of the 2005 application and '191 application do not differ materially for purposes of this motion. (*Id.* Ex. 6.)

9. A continuation-in-part is an application that adds subject matter not disclosed in the parent patent application. *See* Manual of Patent Examining Procedure § 201.08 (9th ed. Rev. Nov. 2015) ("A continuation-in-part is an application filed during the lifetime of an earlier nonprovisional application, repeating some substantial portion or all of the earlier nonprovisional application *and adding matter not disclosed* in the said earlier application.") (emphasis added).

10. Here, the new matter in the 2010 CIP that is absent in the 2005 application (and the '191 application) largely concerns the treatment of breast conditions. (Chivvis Decl. Ex. 7.) The 2005 application does not use the broad term "breast condition." The only specific breast condition the 2005 application even mentions is "breast cancer" and that term appears exactly once, in a laundry list of potential treatment targets. (*Id.* Ex. 4 at 7-8; *see id.* Ex. 8 at 3:25-26, 4:6-10.) In contrast, the '534 patent contains substantial new description—although prophetic and bereft of data—directed to breast cancer *and other* breast conditions. This new description first appeared in the 2010 CIP. (*See id.* Ex. 6; *see also* Ex. 9 at Responses to RFA Nos. 220, 221, 228.)

11. Prior to 2010, Kadcyla was used in clinical trials to treat breast cancer in patients that had been pre-treated with Herceptin and a taxane—the very patient population that Phigenix identifies in its infringement contentions. (Declaration of Sandhya Girish, Ph.D. ("Girish Decl.")

¶¶ 2-14, filed herewith.) The use of Kadcyla in these trials was publicly reported in numerous journals and symposia as well as on clinicaltrials.gov from June 2007 through January 2009—more than a year before the 2010 CIP's February 18, 2010 filing date. (*Id.* Exs. A-I.)

## IV. LEGAL STANDARD

Section 112 of the Patent Act requires that a patent include "a written description of the invention . . . ." 35 U.S.C. § 112. "[T]he purpose of the written description requirement is to ensure that the scope of the right to exclude, as set forth in the claims, does not overreach the scope of the inventor's contribution to the field of art as described in the patent specification." *Univ. of Rochester v. G.D. Searle & Co., Inc.*, 358 F.3d 916, 920 (Fed. Cir. 2004); *accord Ariad Pharms., Inc. v. Eli Lilly & Co.*, 598 F.3d 1336, 1353-54 (Fed. Cir. 2010) (en banc); *AbbVie Deutschland GmbH & Co. v. Jansen Biotech, Inc*, 759 F.3d 1285, 1299 (Fed. Cir. 2014). The written description requirement is met only if "the disclosure of the application relied upon reasonably conveys to those skilled in the art that the inventor had possession of the claimed subject matter as of the filing date." *Ariad*, 598 F.3d at 1351.

"[A]lthough compliance with the written description requirement is a question of fact . . . a patent can be held invalid for failure to meet the written description requirement[] based solely on the language of the patent specification." *Univ. of Rochester*, 358 F.3d at 927; *accord Centocor Ortho Biotech, Inc. v. Abbott Labs.*, 636 F.3d 1341, 1347 (Fed. Cir. 2011). Thus, courts frequently decide on summary judgment whether claims have adequate written description support. *See, e.g., Carnegie Mellon Univ. v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1128 (Fed. Cir. 2008) (affirming summary judgment of invalidity for lack of written description); *Univ. of Rochester*, 358 F.3d at 920 (Fed. Cir. 2004) (same).

A patent is entitled to the benefit of the filing date of an earlier application "only if the disclosure of the earlier application provides support for the claims of the later application, as required by 35 U.S.C. § 112." *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1306 (Fed. Cir. 2008).

Section 102(b) of the Patent Act provides that a patent is invalid where the invention was in "public use" more than one year before the date of the patent application. 35 U.S.C. § 102(b).

## V. ARGUMENT

### A. The Asserted Claims are Invalid Because They Lack Written Description Support in the '534 Patent's Specification

The asserted claims fail the written description requirement because the '534 patent's specification does not show possession of the claimed subject matter. As noted above, claims 1 and 2 recite methods of treating a breast condition that employ *any composition* that inhibits PAX2 or expresses DEFB1. ('534 patent, claims 1, 2.) Claim 8 similarly encompasses the use of any composition for enhancing DEFB1 expression. (*Id.*, claim 8.) These "functionally defined" claims are unbounded structurally and are limited only by the effect—the desired outcome—on PAX2 and/or DEFB1. In its *Markman* ruling, this Court confirmed that the claimed effect may even be indirect and still infringe. (ECF No. 234 at 4-6.)

Phigenix's claims founder upon the shoals of *Ariad* and *AbbVie*. The Federal Circuit's *en banc* written description decision in *Ariad*, which is on all fours with this case, addressed claims that were similarly unbounded. The claims there encompassed the use of all compounds that could achieve the desired result of reducing binding of a transcription factor (NF-[K]B). *Ariad*, 598 F.3d at 1340-41. A Federal Circuit panel reversed a jury finding of sufficient written description, explaining that while the specification described only one class of inhibitor molecules, the claims were "far broader." *Id.* at 1357-58. After taking the case *en banc* to reaffirm the vitality of the written description requirement, the full Federal Circuit adopted the panel's invalidity analysis. *Id.* at 1354. The *en banc* court reasoned that claims generically reciting a problem to be solved while claiming all solutions to it impermissibly "cover any compound later actually invented and determined to fall within the claim's functional boundaries—leaving it to the pharmaceutical industry to complete an unfinished invention." *Id.* at 1353.

Like the claims found invalid in *Ariad*, Phigenix's claims encompass the use of all compositions that effect a desired result: inhibition of a transcription factor (PAX2) or enhanced expression of its target (DEFB1), whether directly or indirectly. The claims place no limits on what these compositions might be, and the specification confirms there are none—other than the

general desire to develop treatment methods that use them.

In *AbbVie*, the Federal Circuit admonished that functionally defined "genus" claims, like those at issue here, are inherently vulnerable in highly unpredictable fields where structure-function correlations are difficult to establish or where it is difficult to predict what is covered by the functionally claimed genus. Such claims require disclosure of sufficiently representative species falling within the scope of the genus or structural features common to the members of the genus, so that one of skill in the art can "visualize or recognize" the members of the genus. *AbbVie*, 759 F.3d at 1299, 1301; *accord Ariad*, 598 F.3d at 1350.

The claims Phigenix asserts fail this test. Far from demonstrating a correlation between structure and function, the specification merely lists broad classes of compounds that could potentially inhibit PAX2. The actual experiments in the specification employ only a few siRNA molecules and a handful of other structurally unrelated molecules. The specification asserts, however, that "the inhibitors of PAX2 expression or PAX2 activity can be *any* small molecule that interferes or inhibits binding of PAX2 to the DEFB1 promoter." ('534 patent, 12:2-5 (emphasis added); *see also* 12:50-53 ("Since PAX2 inhibits DEFB-1 expression, inhibitors of PAX2 expression or PAX2 activity are also enhancers of DEFB-1 expression").) The specification then expands this already vast category of compounds to include antagonists not only of PAX2, but also of proteins upstream in signaling pathways from PAX2. Examples include antagonists of upstream proteins such as angiotensin II, angiotensin converting enzyme (ACE), MEK, ERK 1, 2, and STATS, as well as any blocker of the RAS signaling pathway. (*Id*. at 12:5-44.)

The specification proposes that PAX2 inhibitors may further include many classes of vaguely described functional nucleic acids such as "antisense molecules, aptamers, ribozymes and triplex forming molecules, RNAi and external guide sequences." (*Id*., 8:40-53.) The claimed PAX2 inhibitors can also purportedly be large, complex molecules such as polyclonal or monoclonal antibodies. (*Id*., 22:44-54.) According to the specification, PAX2 inhibitors can even be a small molecule "conjugated" to an antibody. (*Id*., 12:45-47.)

The specification identifies no unifying structural theme among these compounds, such

that one of skill in the art can "visualize or recognize" a genus of compounds. *See Ariad*, 598 F.3d at 1350. Disclosure of a handful of supposed inhibitors cannot possibly permit visualization or recognition of all members of a genus that encompasses any small or large molecule that happens to inhibit PAX2, whether through targeted, direct means or indirectly through upstream signaling pathways.[1] This generic disclosure provides no aid in predicting what unidentified compositions would, and would not, be covered by the asserted claims. *See Univ. of Rochester*, 358 F.3d at 926 (disclosure must be "sufficient to distinguish infringing compounds from non-infringing compounds"). The claims are therefore invalid under § 112 as a matter of law. *Ariad*, 598 F.3d at 1350 ("[M]erely drawing a fence around the outer limits of a purported genus is not an adequate substitute for describing a variety of materials constituting the genus and showing that one has invented a genus and not just a species"); *see Univ. of Rochester*, 358 F.3d at 926-27 (summary judgment of invalidity for lack of written description affirmed because specification did not disclose *which* "peptides, polynucleotides, and small organic molecules" have "the desired characteristic of selectively inhibiting PGHS–2").

### B. The Asserted Claims are Anticipated by Public Uses of Kadcyla Because They Lack Written Description Support in the 2005 Priority Application

The claims are anticipated because they are entitled only to the 2010 CIP's filing date for priority. The accused method of treatment—administering Kadcyla to a specified target patient population—was in public use in the same manner as Phigenix has set forth in its infringement contentions more than a year before the CIP's filing date. Thus, the claims are invalid as inherently anticipated.

#### 1. The 2005 application does not describe any methods for treating breast conditions

The claims are not entitled to the priority date of the 2005 application. *See Augustine Med., Inc. v. Gaymar Indus., Inc.*, 181 F.3d 1291, 1302 (Fed. Cir. 1999) ("Subject matter that

---

[1] Reinforcing that the specification does not show possession of all potential upstream inhibitors of PAX2, Phigenix recently acknowledged to the Court the "complexity of the signalling [sic] pathways," asserting that "if you don't have the same initial conditions, you cannot draw conclusions based on intermediate steps" in a pathway. (ECF No. 245 at 25:17-21.)

arises for the first time in [a] CIP application does not receive the benefit of the filing date of the parent application."). Where, as here, a patentee is confronted with "intervening" prior art, the patent holder has the burden "to come forward with evidence to prove entitlement to claim priority to an earlier filing date." *PowerOasis*, 522 F.3d at 1305-06. Phigenix cannot meet this burden.

The claims are all methods for treating "breast conditions," which includes both breast cancer and MIN, but the 2005 application has no disclosure of MIN and inadequate disclosure of breast cancer treatments.[2] The 2005 application is focused on the treatment of prostate cancer. The only disclosure relating to any "breast condition" is the sole mention of "breast cancer" listed among more than 50 other generically identified cancers and other non-cancerous diseases of "uncontrolled cellular proliferation." (Chivvis Decl. Ex. 4 at 7-8.) Nowhere does the 2005 application even mention MIN. The disclosure of breast cancer in a list of other cancers, without supporting data or experiments, fails to establish possession of treatments for the full genus of breast conditions as a matter of law. "[A] patent is not a hunting license." *Ariad*, 598 F.3d at 1353 (quoting *Brenner v. Manson*, 383 U.S. 519, 536 (1966)); s*ee CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-CV-6635-LHK, 2013 WL 6673676, at *12 (N.D. Cal. Dec. 18, 2013), *aff'd*, 579 F. App'x 1003 (Fed. Cir. 2014) ("Even the subsection in the specification discussing inflammation does not explain why the inventor believed that olive-derived compositions were likely to treat any (much less all) [of] the claimed conditions. Instead, that subsection largely discusses inflammation and its various causes generically and abstractly.").

New matter in the 2010 CIP highlights the absence of written description support for the asserted claims in the 2005 application. Phigenix acknowledges that the claims in the 2010 CIP are directed to new matter. (*See, e.g.*, Chivvis Decl. Ex. 9 at Response to RFA No. 221.) This new disclosure in the 2010 CIP identifies breast cancer and MIN as among the breast conditions that purportedly overexpress PAX2 and could be treated by administering a PAX2 inhibitor to a breast tissue, and proposes experiments to test whether inhibiting PAX2 in breast cancer cell lines

---

[2] As discussed *supra*, the '534 patent is a CIP of the '191 application, and the '191 application does not differ materially from the 2005 application.

would have a treatment effect.  (*Id*. Ex.7, 1:56-57, 2:21-26, 5:6-19, 53:58-55:10 & Table 2.)  Such description is entirely absent from the 2005 application, which does not (1) use the term "breast condition" or discuss the treatment of MIN; (2) disclose the administration of a composition to breast tissue or enhancing DEFB1 expression in breast tissue as the asserted claims require; or (3) disclose breast cancer cell lines, let alone describe experiments that could show PAX2 inhibition has a treatment effect in breast cancer cells.  All of these concepts were added as new matter in the 2010 CIP.  (*Id*.)  Thus, the asserted claims are not entitled to the benefit of the earlier 2005 application filing date because they are based on the newly added description.  *See Augustine*, 181 F.3d at 1302.

The Federal Circuit's *Centocor* decision supports summary judgment here.  Like Phigenix, the plaintiff in *Centocor* attempted to rely on the priority date from an earlier application "[t]o ensnare the [defendant] with later-filed claims."  636 F.3d at 1348.  The later-filed claims were directed to antibodies with human variable regions and fully human antibodies, even though the "overwhelming majority" of the earlier application described a mouse antibody and a chimeric antibody with mouse variable regions.  *Id*. at 1349-50 ("[O]nly a few sentences sprinkled throughout [the earlier application] mention[ed] human antibodies or human variable regions at all.").  The Federal Circuit found that the asserted claims lacked written description support in the earlier application as a matter of law.  *Id*. at 1351.

The 2005 application similarly fails to establish possession of the claimed subject matter.  The single reference to "breast cancer" does not convey that Phigenix had possession of the claimed breast condition treatments in 2005.  The addition of MIN as a covered condition in the asserted claims indisputably demonstrates that they are directed to a class of diseases that is even broader than breast cancer.  Yet the only cells used in the 2005 application experiments are prostate cells, and the only results purport to show treatment of prostate cancers.  (Chivvis Decl. Ex. 4 at 49-60.)  There is no basis in the 2005 application to conclude that these experiments support the treatment of "any disease where uncontrolled cellular proliferation occurs," including all breast cancers, let alone all breast conditions.  (*Id*. at 7.)  "[A] 'mere wish or plan' for obtaining the claimed invention is not adequate written description."  *Centocor*, 636 F.3d at 1348

1  (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1566 (Fed. Cir. 1997));

2  *Ariad*, 598 F.3d at 1353 ("Requiring a written description of the invention limits patent protection

3  to those who actually perform the difficult work of 'invention'—that is, conceive of the complete

4  and final invention with all its claimed limitations—and disclose the fruits of that effort to the

5  public."). As in *Centocor,* Phigenix should not be permitted to ensnare administration of Kadcyla

6  through such overreach, while at the same time avoiding intervening prior art.

7      The written description in the 2005 application cannot support the asserted claims, and

8  this Court should find that the asserted claims are entitled to a priority date no earlier than the

9  February 18, 2010 filing date of the 2010 CIP that issued as the '534 patent.

    **2.  Publicly disclosed uses of Kadcyla as a breast cancer treatment inherently anticipate the asserted claims of the '534 patent**

12      Because the asserted claims are entitled to a priority date no earlier than the '534 patent's

13  2010 filing date, they are anticipated by Genentech's own earlier public uses of the accused

14  product. Well before 2010, Kadcyla was administered to treat breast conditions in the exact

15  patient population that Phigenix identifies in its infringement contentions. Genentech began

16  clinical trials of Kadcyla in breast cancer patients that had previously received Herceptin and a

17  taxane at least as early as 2007. (Girish Decl. Ex. A; *see also id*. Ex. G at GENE-00856313

18  (describing the Beeram et al. Phase I trial where "patients had prior treatment with trastuzumab

19  and other tub[u]lin-binding cytotoxic agents such as paclitaxel").) These trials were made public

20  in numerous journals and symposia and posts on clinicaltrials.gov from June 2007 through

21  January 2009—more than one year before February 18, 2010. (*Id*. ¶¶ 2-14, Exs. A to I.)

22      The administration of Kadcyla in these trials thus qualifies as prior art public use of the

23  claimed invention under the absolute bar of 35 U.S.C § 102(b). The axiom "[t]hat which

24  infringes, if later, would anticipate, if earlier" is black-letter patent law. *Upsher-Smith Labs.,*

25  *Inc. v. Pamlab, L.L.C.*, 412 F.3d 1319, 1322 (Fed. Cir. 2005) (collecting cases). Assuming

26  Phigenix's infringement theory for purposes of this motion, the asserted claims are inherently

anticipated.[3] *In re Montgomery*, 677 F.3d 1375, 1382 (Fed. Cir. 2012) (clinical trial found to render unpatentable claims directed to same method of treatment based on doctrine of inherent anticipation); *see Augustine*, 181 F.3d at 1302-03 (summary judgment of invalidity under § 102(b) affirmed based on finding that claims were unsupported by priority application).

## VI. CONCLUSION

In the '534 patent, Phigenix sought overly broad claims that are not supported by the patent itself and are not supported by the 2005 application to which Phigenix claims priority. Lacking such support, Phigenix's claims are invalid as a matter of law. The Court should grant Genentech's motion for summary judgment of invalidity.

Dated: September 22, 2016                MORRISON & FOERSTER LLP

By:  /s/ Michael A. Jacobs
       MICHAEL A. JACOBS

Attorneys for Defendant
GENENTECH, INC.

---

[3] Genentech may assume Phigenix's infringement theory for purposes of establishing inherent anticipation without prejudice to disproving it in other contexts. *See Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000); *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997).