1   MICHAEL A. JACOBS (CA SBN 111664)
    MJacobs@mofo.com
2   MATTHEW I. KREEGER (CA SBN 153793)
    MKreeger@mofo.com
3   MATTHEW A. CHIVVIS (CA SBN 251325)
    MChivvis@mofo.com
4   MORRISON & FOERSTER LLP
    425 Market Street
5   San Francisco, California  94105-2482
    Telephone: 415.268.7000
6   Facsimile: 415.268.7522

7   Attorneys for Defendant
    GENENTECH, INC.

8

9                   UNITED STATES DISTRICT COURT

10                 NORTHERN DISTRICT OF CALIFORNIA

11                       SAN JOSE DIVISION

12

13  PHIGENIX, INC.,                         Case No.   C 15-01238 BLF

14                        Plaintiff,        **DEFENDANT GENENTECH,
                                            INC.'S MOTION TO JOIN DR.
15          v.                              CARLTON DONALD UNDER
                                            FED. R. CIV. P. 19**
16  GENENTECH, INC.,
                                            Date:   December 7, 2017
17                        Defendant.        Time:   9:00 a.m.
                                            Ctrm:   Courtroom 3 – 5th Floor
18

19

20

21

22

23

24

25

26

27

28

1  On December 7, 2017, at 9:00 a.m., before the Hon. Beth L. Freeman, in Courtroom 3,

2  5th Floor, of the above-entitled Court located at 280 South 1st Street, San Jose, California,

3  Genentech, Inc. will, and hereby does, move to join Dr. Carlton Donald pursuant to Federal Rule

4  of Civil Procedure 19 for purposes of adjudicating Genentech's motion for an exceptional case

5  finding under 35 U.S.C. § 285 and award of attorney fees.

6  <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

7  **I.      INTRODUCTION**

8  A finding that this case is exceptional under § 285 and an award to Genentech of attorney

9  fees may be a hollow victory.  Phigenix has not paid its own counsel in more than a year and has

10  no known income.  Its only asset is its intellectual property.  Phigenix is a paper shell that serves

11  as a proxy for Dr. Donald.  He runs the "company" with his wife and makes all the decisions,

12  including the decision to file this lawsuit and Phigenix's other actions against Genentech.  The

13  compensation and deterrence aims of § 285 will not be met unless he is joined to this lawsuit.

14  **II.     LEGAL STANDARD**

15  In evaluating whether Rule 19 joinder is required, "[f]irst, the court must determine

16  whether the absent party is 'necessary.'"  *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir.

17  1999) (citing Fed. R. Civ. P. 19(a)(1)).  According to Rule 19(a)(1):

18
19  A person who is subject to service of process and whose joinder
will not deprive the court of subject-matter jurisdiction must be
joined as a party if:

20  (A) in that person's absence, the court cannot accord complete
relief among existing parties; or

21  (B) that person claims an interest relating to the subject of the
22  action and is so situated that disposing of the action in the person's
absence may: (i) as a practical matter impair or impede the
person's ability to protect the interest; or (ii) leave an existing
23  party subject to a substantial risk of incurring double, multiple, or
otherwise inconsistent obligations because of the interest.

24

25  If the absent party is "necessary," the court then determines whether joinder is "feasible."  *Bowen*,

26  172 F.3d at 688.

27

28

III.   **ARGUMENT**

    A.   **Joining Dr. Donald Is Necessary Under Rule 19(a)(1)(A) to Provide Complete Relief to Genentech**

Awarding fees against Dr. Donald is appropriate "so long as (1) [he] is responsible for conduct that makes the case exceptional, (2) [he] is afforded due process, and (3) it is equitable to do so." *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 843 (E.D. Tex. 2017).  Dr. Donald can be held directly and personally liable for attorney fees under § 285 because he used Phigenix as a shell company to advance this untenable litigation.

    ***Dr. Donald is responsible for the conduct that makes this case exceptional.***  He is Phigenix's president and CEO and owns a controlling interest in the company.  (Declaration of Matthew A. Chivvis, filed herewith ("Chivvis Decl."), Ex. 1 at 237:15-22 ("Q. . . . is there a single shareholder with more than 50 percent ownership?  A.  Yes.  Q.  Is that you?  A.  Yes.").)  His wife is the only other employee.  (*See* ECF No. 199-1 at 11:16-22.)  He is the sole named inventor on the patents in Phigenix's portfolio.  (ECF No. 37-4.)  And these patents are Phigenix's only real asset.  Phigenix makes no products.  (ECF No. 199-1 at 14:1-15:22.)  It does no research in the breast cancer field or in-house research of any kind.  (*Id.* ("Q.  As of today, has Phigenix done any in-house research work?  A.  We have not.").)  Nor has it partnered with any organization seeking to develop a means of targeting PAX2 to treat breast cancer using the patent.[1]  (Chivvis Decl. Ex. 1 at 234:4-235:23.)

    As in *Iris Connex*, moreover, Dr. Donald "conceived and then carried out each step leading up to the filing of this meritless lawsuit."  *Iris Connex*, 235 F. Supp. 3d at 852.  In 2010, Dr. Donald assigned the '534 patent application to Phigenix, (ECF No. 137-11), and then targeted Genentech.  On June 10 and again on June 17, 2013, about four months after Kadcyla received FDA approval, he wrote to Genentech about "patent protection" it supposedly needed for

---

[1] On remand in *Octane Fitness*, the Federal Circuit affirmed the district court's finding that "non-commercialization of [the patent] is relevant to whether awarding fees . . . is necessary to deter [patentee] from future attempts to extract royalties to which it is not entitled." *ICON Health & Fitness, Inc. v. Octane Fitness, LLC*, No. 2016-1047 et al., 2017 WL 3668968, at *2 (Fed. Cir. Aug. 25, 2017).  Thus, Phigenix's status as a non-practicing entity is relevant to the analysis under § 285 as well.

Kadcyla.  (ECF No. 37-4; ECF No. 37-5.)  With his letters, he attached a diagram explaining its infringement theory involving Kadcyla's alleged "indirect" inhibition of PAX2.  (ECF No. 37-5 at 3.)  Dr. Donald confirmed at his deposition that he personally "prepared this diagram."  (Chivvis Decl. Ex. 2 at 118:17-119:13.)  He also contributed his own funds to fuel the lawsuit.  (*Id.* Ex. 1 at 180:25-181:4.)

*Joinder would afford Dr. Donald due process.*  Dr. Donald should not be permitted to escape the consequences of an exceptional case finding and award of fees by hiding behind a shell corporation.  *Iris Connex*, 235 F. Supp. 3d at 860 ("[O]ne cannot abuse the judicial process through the creation of shell entities to facilitate the assertion of otherwise meritless claims as part of a scheme to avoid the risks that Section 285 creates.").  In light of his role, he should be formally joined as a party to this case under Rule 19 so that he may be held jointly and severally liable for any fee award against Phigenix.  Joinder will allow Dr. Donald "a full opportunity to respond, to contest liability for any sanction or fee award, and to otherwise receive due process."  *Iris Connex*, 235 F. Supp. 3d at 839-40 (analyzing personal liability of non-party founders of shell company after joining for purposes of § 285 motion to comport with due process); *see also Applied Materials, Inc. v. Multimetrixs, LLC*, No. C 06-07372 MHP, 2009 WL 1457979, at *5 (N.D. Cal. May 26, 2009) (granting accused infringer leave to amend its complaint to personally name three principals of the patentee, which filed for bankruptcy, to satisfy due process concerns before determining if principals were liable for § 285 fees).

*It is equitable to join Dr. Donald.*  Absent joinder, Dr. Donald may use Phigenix to escape responsibility for the substantial costs Genentech incurred while fending off this meritless and wasteful litigation.  "In conducting the Rule 19(a)(1) analysis, the court asks whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties."  *Cuevas v. Joint Benefit Tr.*, No. 13-CV-00045-JST, 2013 WL 3578496, at *2 (N.D. Cal. July 12, 2013) (quoting *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004).  This factor "is concerned with consummate rather than partial or hollow relief as to those already parties . . . ."  *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005) (internal quotation & citation omitted).  Phigenix has not paid its "fees and

1  costs [in] this matter *in over a year*." (ECF No. 346 at 1 (emphasis added).)  As its former

2  counsel confirmed, Phigenix's outstanding payments are "substantial."  (*Id.* at 2; *see also* ECF

3  No. 346-2 ¶¶ 4-7.)  Genentech's relief against Phigenix will be meaningless if Phigenix lacks

4  liquid assets.  And it would not serve the deterrent effect intended by § 285.  Through Phigenix,

5  Dr. Donald launched multiple proceedings in different fora in furtherance of his mission of

6  extracting a settlement from Genentech.  Phigenix not only filed this lawsuit, it also challenged

7  key patents protecting Kadcyla at the Patent Office.  Both challenges were rejected.  (*See* ECF

8  No. 198 at 5; *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1170 (Fed. Cir. 2017).)  In the

9  absence of any personal liability, there would be little to stop Dr. Donald from continuing to

10  litigate meritless claims against Genentech through new shell companies.

11  **B.    Joining Dr. Donald Is Feasible Under Rule 19**

12  Joining Dr. Donald is not only "necessary" but also "feasible" because subject matter

13  jurisdiction, venue, and personal jurisdiction will be preserved.  *Peabody*, 400 F.3d at 779.

14  Joinder would not affect subject matter jurisdiction here because this Court has exclusive subject

15  matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. § 1331.  And as a

16  result of Genentech's transfer motion, it is clear that the Northern District of California is and

17  remains the proper venue for this dispute.  (*See* ECF No. 66 at 13-27.)

18  Dr. Donald also has sufficient minimum contacts with the forum such that the Court can

19  exercise specific personal jurisdiction over him.  "[B]ecause California's long-arm statute is

20  coextensive with the limits of due process, the two [statutory and constitutional] inquiries

21  collapse into a single inquiry: whether jurisdiction comports with due process."  *Dainippon*

22  *Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998) (citing *Fireman's Fund Ins.*

23  *Co. v. National Bank of Coops.*, 103 F.3d 888, 893 (9th Cir. 1997)).  The Ninth Circuit applies a

24  three-prong test to determine whether exercise of specific jurisdiction over an out-of-state

25  defendant comports with the minimum contacts required by due process:

26  (1) The non-resident defendant must purposefully direct his activities or
consummate some transaction with the forum or resident thereof; or
27  perform some act by which he purposefully avails himself of the
privilege of conducting activities in the forum, thereby invoking the
28  benefits and protections of its laws;

1    (2) the claim must be one which arises out of or relates to the
     defendant's forum-related activities; and

2

3    (3) the exercise of jurisdiction must comport with fair play and
     substantial justice, i.e., it must be reasonable.

4    *Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, 664 F. Supp. 2d 1103, 1109 (D. Haw. 2008)

5    (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801-02 (9th Cir. 2004));

6    *see also Winstron Corp. v. Phillip M. Adams & Assocs.*, LLC, No. C–10–4458 EMC,

7    2011 WL 1654466, at *3 (N.D. Cal. Apr. 28, 2011) (noting the Federal Circuit and Ninth Circuit

8    both "apply the same three-part test when applying the minimum contacts standard set forth by

9    the Supreme Court").  If Genentech shows the first two prongs are met, the burden shifts to

10   Dr. Donald "to 'present a compelling case' that the exercise of jurisdiction would not be

11   reasonable."  *Kukui*, 664 F. Supp. 2d at 1109 (quoting *Schwarzenegger*, 374 F.3d at 802).

12   ***Dr. Donald has purposefully availed himself of the privilege of conducting activities in***

13   ***this forum***.  Through his company, Phigenix, Dr. Donald pressed forward with this suit for the

14   past three years.  He directed license offers to Genentech personnel at its headquarters in South

15   San Francisco, and engaged in telephonic licensing discussions with them.  (ECF No. 37-4; ECF

16   No. 37-5; *cf., Dainippon*, 142 F.3d at 1270 ("We have held that sending infringement letters,

17   without more activity in a forum state, is not sufficient to satisfy the requirements of due

18   process." (quoting *Genetic Implant Sys., Inc. v. Core-Vent Corp.*, 123 F.3d 1455, 1458 (Fed. Cir.

19   1997))).)  He partially funded the lawsuit against Genentech, (Chivvis Decl. Ex. 1 at 180:25-

20   181:4), which has proceeded in the Northern District of California since 2015.  He attended Court

21   hearings for this suit in the Northern District of California as well.  (*See, e.g.*, ECF No. 228 at

22   3:11-14.)

23   ***Genentech's claim against Dr. Donald arises out of his activities in this forum.***

24   Dr. Donald's potential for liability for § 285 attorney fees directly arises out of Phigenix's

25   meritless patent infringement assertion against Genentech in the present action.  (*See supra*.)

26   The corporate form poses no barrier to this Court's exercise of jurisdiction over Dr. Donald for

27   actions he took in his official capacity as CEO of Phigenix.  *See Keeton v. Hustler Magazine*,

28

*Inc.*, 465 U.S. 770, 781 n.13 (1984) ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity"); *Calder v. Jones*, 465 U.S. 783, 789-90 (1984) ("Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there.  On the other hand, their status as employees does not somehow insulate them from jurisdiction.  Each defendant's contacts with the forum State must be assessed individually.").[2]  "Instead, the proper inquiry is to look specifically at the minimum contacts of the individual regardless of whether that individual was acting within his or her official capacity."  *Kukui*, 664 F. Supp. 2d at 1110 (citing *Calder*, 465 U.S. at 789-90); *see also Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010) ("[A]s long as [an individual defendant] has had sufficient contacts with California, whether in an official or personal capacity, then there is personal jurisdiction.").

> *The exercise of personal jurisdiction over Dr. Donald comports with fair play and substantial justice.*  Dr. Donald enjoys significant if not complete control over decisions made on behalf of Phigenix, never had more than his wife as an employee working for him, personally conducted the negotiations with Genentech, and was the architect of the infringement theory Phigenix asserted against Genentech.  (*See supra.*)  Dr. Donald thus cannot show that the exercise of jurisdiction over him would be unreasonable.  *See Matsunoki Grp., Inc. v. Timberwork Oregon, Inc.*, No. C 08-04078 CW, 2009 WL 1033818, at *4-5 (N.D. Cal. Apr. 16, 2009) (denying motion to dismiss for lack of personal jurisdiction); *see also Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1121 (C.D. Cal. 2009) (collecting cases where employee's individual acts established jurisdiction).[3]

---

[2] District court judges within the Ninth Circuit have questioned the continuing viability of the fiduciary shield doctrine.  *See, e.g., Kukui*, 664 F. Supp. 2d at 1110; *Blinglet, Inc. v. Amber Alert Safety Ctrs., Inc.*, No. C 09-05156 SI, 2010 WL 532388, at *1 n.1 (N.D. Cal. Feb. 6, 2010); *Rimes v. Noteware Dev. LLC*, No. C-09-0281 EMC, 2010 WL 3069250, at *2 (N.D. Cal. Aug. 4, 2010).

[3] Based on the circumstances here, there is evidence to support that Dr. Donald should be subject to personal jurisdiction as Phigenix's alter ego.  *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1069 n.17 (9th Cir. 2000).  Should the Court find it warranted, it may order further discovery on Phigenix's corporate organization and relationship with Dr. Donald.  *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977) ("A court may permit discovery to aid in determining whether it has in personam jurisdiction.").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## IV.     CONCLUSION

Genentech can only obtain meaningful compensation and deterrence under § 285 if this Court holds Dr. Donald jointly and severally liable for any attorney fees the Court awards.  As due process requires the joinder of Dr. Donald to these proceedings in order to award fees against him, Genentech's motion to join Dr. Donald should be granted.

Dated: September 6, 2017                      MORRISON & FOERSTER LLP


                                              By:   /s/ Michael A. Jacobs
                                                     MICHAEL A. JACOBS

                                              Attorneys for Defendant
                                              GENENTECH, INC.