Alana C. Mannigé (CA SBN 313341)
mannige@fr.com
FISH & RICHARDSON P.C.
500 Arguello Street, Suite 500
Redwood City, CA 94063
Telephone: (650) 839-5070 | Facsimile: (650) 839-5071

Attorneys for Plaintiff
PHIGENIX, INC. and THIRD-PARTY DR. CARLTON DONALD

Benjamin K. Thompson (*Pro Hac Vice*)
thompson@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street, NE, 21st Floor
Atlanta, GA 30309
Telephone: (404) 892-5005 | Facsimile: (404) 892-5002

Matthew C. Berntsen (*Pro Hac Vice*)
berntsen@fr.com
FISH & RICHARDSON P.C.
One Marina Park Drive
Boston, MA 02210
Telephone: (617) 542-5070 | Facsimile: (617) 542-5906

Attorneys for Plaintiff
PHIGENIX, INC.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
(SAN JOSE DIVISION)

PHIGENIX, INC.

Plaintiff,

v.

GENENTECH, INC.,

Defendants.

Case No. 5:15-cv-01238-BLF

**PHIGENIX, INC.'S AND THIRD-PARTY DR. CARLTON DONALD'S OPPOSITION TO GENENTECH, INC.'S MOTION TO JOIN THIRD-PARTY DR. CARLTON DONALD UNDER FED. R. CIV. P. 19**

DATE: December 7, 2017
TIME: 9:00 a.m.
CTRM: Courtroom 3 – 5th Floor

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. BACKGROUND ..... 1

III. LEGAL STANDARD ..... 2

IV. ARGUMENT ..... 2

A. Dr. Donald Is Not a Necessary Party Under Rule 19(a)(1)(A) ..... 3

1. The Court Can Accord Complete Relief Without Dr. Donald ..... 3

2. Joining Dr. Donald for Fee Purposes Would Be Improper ..... 3

3. Due Process Considerations Caution Against Joining Dr. Donald at This Late Stage ..... 8

B. Joining Dr. Donald Is Not Feasible ..... 8

C. Genentech's Joinder Motion It Is Untimely ..... 10

V. CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alto v. Black*,
738 F.3d 1111 (9th Cir. 2013)....................2

*Applied Materials, Inc. v. Multimetrixs*,
LLC, No. C 06-07372 MHP, 2009 WL 1457979 (N.D. Cal. May 26, 2009)....................7

*Colt Studio, Inc. v. Badpuppy Enter*.,
75 F. Supp. 2d 1104 (C.D. Cal. 1999)....................8

*Cygnus Telecommunications Tech., LLC v. Totalaxcess.com, Inc.*,
345 F.3d 1372 (Fed. Cir. 2003)....................10

*Hutchins v. Cardiac Sci., Inc.*,
456 F. Supp. 2d 173 (D. Mass. 2006)....................3

*Intellect Wireless, Inc. v. HTC Corp*.,
No. 09 C 2945, 2015 WL 4466955 (N.D. Ill. July 21, 2015)....................9, 10

*Iris Connex, LLC v. Dell, Inc*.,
235 F. Supp. 3d 826 (E.D. Tex. 2017)....................*passim*

*Makah Indian Tribe v. Verity*,
910 F.2d 555 (9th Cir. 1990)....................2

*McRee v. Goldman*,
No. 11-CV-00991-LHK, 2012 WL 929825 (N.D. Cal. Mar. 19, 2012)....................2, 3

*Mihlon v. Superior Court*,
169 Cal. App. 3d 703 (Ct. App. 1985)....................8

*Nelson v. Adams USA, Inc*.,
529 U.S. 460 (2000)....................8

*O'Connor v. Wells Fargo Bank, Nat. Ass'n*,
No. 1:12-CV-2525-RWS, 2013 WL 2181276 (N.D. Ga. May 20, 2013)....................9

*PlusFive Claims, LLC v. 0713401 B.C. Ltd*.,
No. 10-1561 SC, 2011 WL 902015 (N.D. Cal. Mar. 14, 2011)....................7

*Schwarzenegger v. Fred Martin Motor Co*.,
374 F.3d 797 (9th Cir. 2004)....................8

*Seymour v. Hull Moreland Engineering*,
605 F.2d 1105 (9th Cir.1979)........................................................................................2, 4, 6

*Stryker Corp. v. XL Ins. Am., Inc.*,
No. 1:05-CV-51, 2013 WL 2350364 (W.D. Mich. May 16, 2013) ..........................................10

*Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*,
151 F. Supp. 2d 1192 (C.D. Cal. 2001), *vacated and remanded on other grounds*, 351 F.3d 1139 (Fed. Cir. 2003)...................................................................7, 8

*Vasquez v. Wells Fargo Bank, Nat'l Ass'n*,
77 F. Supp. 3d 911 (N.D. Cal. 2015) ..........................................................................10

## I. INTRODUCTION

Piercing the corporate veil is a drastic remedy that should be taken only reluctantly and cautiously. Genentech's motion to join third-party Dr. Carlton Donald is an improper attempt to pierce the corporate veil and relies heavily on well-worn arguments that this Court has already heard and already rejected. What is new in this motion is Genentech's unsubstantiated claim that Phigenix is a shell corporation used by Dr. Donald to advance this litigation. Not so.

Dr. Donald was an Assistant Professor of Pathology & Laboratory Medicine for years before founding Phigenix. (Ex. C, Donald Decl. ¶ 2.) Dr. Donald has published numerous scientific articles and has presented his research at medical research forums across the US and internationally. (*Id.*) He has received numerous awards and accolades for his cutting-edge research from several organizations, including the American Association for Cancer Research, the American Society for Microbiology, and the American Urological Association. (*Id.*)

## II. BACKGROUND

When Dr. Donald founded Phigenix in 2007, Phigenix's goal was to do research and development both independently and via partnerships. (Ex. C, Donald Decl. ¶ 4.) However, having been a professor, Dr. Donald took a basic tenant that he learned from the academic world – "publish or perish" – and applied it to the start-up world, believing that a successful start-up must "patent or perish." But this strategy was not merely Dr. Donald's; it was consistently approved by Phigenix's board of directors during the company's formative years. Consequently, Phigenix's early years focused significantly on research and protecting that research via patents, resulting in the patent that ultimately led to this lawsuit. Being a small start-up, Phigenix did not have the resources to successfully enforce the patents protecting its existing research while simultaneously continuing its research and development efforts. (*Id.*) Realizing that successful litigation could provide the resources necessary to continue its research, Phigenix filed this suit. (*Id.*) Genentech is aware of Phigenix's research and development goals because Dr. Donald has testified that Phigenix plans to "start validation of our diagnostic tests, as well as some pre clinical studies" and that Phigenix has been "communicating with a local clinical research facility to try to obtain space there to start some of our studies." (Ex. A, Donald Dep. Tr. (Aug. 4, 2015) at 14:15–15:3.)

Phigenix currently has over one hundred shareholders and has gone through multiple rounds of fundraising. (Ex. C, Donald Decl. ¶ 3.) Phigenix's board of directors (which has five seats) completely controls Phigenix's decisions. (*Id.*) Dr. Donald holds one out of the five seats; each seat has an equal vote, and decisions are made by a majority vote. (*Id.*) The board of directors, by majority vote, made the decision to file this lawsuit in this case. (*Id.*) Phigenix is no shell corporation.

Genentech's assertion that Phigenix is a "shell corporation used by Dr. Donald" is categorically wrong, and Genentech's attempt to join Dr. Donald to this lawsuit so that it can pierce the corporate veil should be rejected.

## III. LEGAL STANDARD

A person must be joined if "in that person's absence, the court cannot accord complete relief among existing parties," they are "subject to service of process," and "joinder will not deprive the court of subject-matter jurisdiction." Fed. R. Civ. P. 19(a)(1)(A). An analysis under Rule 19(a) is "is a practical one and fact specific…." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Only if a party is necessary does the court "proceed to the second Rule 19 inquiry: whether joinder is feasible…." *Alto v. Black*, 738 F.3d 1111, 1126 (9th Cir. 2013).

Piercing the corporate veil is a "drastic remedy" that should be taken "only reluctantly and cautiously." *McRee v. Goldman*, No. 11-CV-00991-LHK, 2012 WL 929825, at *4 (N.D. Cal. Mar. 19, 2012) (citing *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007)). To pierce the corporate veil, Genentech would need to show "that there is such a unity of interest and ownership between the corporation and [Dr. Donald] that the two no longer exist as separate entities" and "that failure to disregard the corporation would result in fraud or injustice." *Seymour v. Hull Moreland Engineering*, 605 F.2d 1105, 1111 (9th Cir.1979).

## IV. ARGUMENT

As a preliminary matter, the Court need not consider Genentech's motion to join Dr. Donald if Genentech's Motion for Attorneys' Fees (Dkt. No. 400) is denied, as Genentech's arguments all assume an award of fees. As even Genentech appears to admit, awarding fees against Dr. Donald would only be appropriate if "[he] is responsible for conduct that makes the

case exceptional." (Mot. at 2. (quoting *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826 (E.D. Tex. 2017)).) A denial of Genentech's bid for attorneys' fees renders the instant motion moot.

**A. Dr. Donald Is Not a Necessary Party Under Rule 19(a)(1)(A)**

Even if attorneys' fees are awarded, joinder is still not proper.

**1. The Court Can Accord Complete Relief Without Dr. Donald**

To establish that Dr. Donald is a necessary party under Rule 19(a)(1)(A),[1] Genentech is required to show that "in [Dr. Donald's absence], the court cannot accord complete relief among existing parties...." Fed. R. Civ. P. 19(a)(1)(A). Genentech's entire argument for why the Court cannot afford complete relief without Dr. Donald is founded on the withdrawal of Phigenix's previous counsel due to a fee dispute. (Dkt. No. 346.) From this, Genentech urges the Court to join it in inferring first that Phigenix is insolvent, and second that joining Dr. Donald will somehow allow the Court to accord complete relief.

Genentech has failed to provide any evidence to support its suggested inferences. As to Genentech's factual assumptions, Phigenix has a billing dispute with Andrews Kurth Kenyon related to original and renegotiated terms of their contractual relationship. (Ex. C, Donald Decl. ¶ 5.) Since that dispute, Phigenix has retained new counsel. (*Id.* ¶ 6.) In short, Genentech has failed to provide *__any__* evidence showing that complete relief cannot be achieved without Dr. Donald. Genentech's mere speculation is not enough. *See, e.g.*, *Hutchins v. Cardiac Sci., Inc.*, 456 F. Supp. 2d 173, 191 (D. Mass. 2006) ("[A]n unsubstantiated or speculative risk will not satisfy the Rule 19(a) criteria….").

Genentech's claim that complete relief can be afforded without Dr. Donald fails.

**2. Joining Dr. Donald for Fee Purposes Would Be Improper**

Genentech asks to join Dr. Donald to improperly pierce the corporate veil. This is a "drastic remedy" that should be taken "only reluctantly and cautiously." *McRee*, 2012 WL 929825, at *4. To pierce the corporate veil, Genentech would need to show "that there is such a unity of interest and ownership between the corporation and [Dr. Donald] that the two no longer

[1] Genentech does not assert that Dr. Donald is a necessary party under Rule 19(a)(1)(B).

exist as separate entities" and "that failure to disregard the corporation would result in fraud or injustice." *Seymour*, 605 F.2d at 1111.

Genentech argues that Dr. Donald should be joined and held liable for attorneys' fees because "he used Phigenix as a shell company…." (Mot. at 2.) Phigenix has over one hundred shareholders, a board of directors, and has gone through multiple rounds of fundraising. (Ex. C, Donald Decl. ¶ 3.) Phigenix is a start-up, not a shell company. And more importantly, Dr. Donald has shown nothing but respect for the corporate form throughout this litigation.

Genentech's own case law cuts against them. In a recent decision from the Eastern District of Texas, Judge Gilstrap painstakingly enumerated each and every detail that justified piercing the corporate veil under the facts before him. *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826 (E.D. Tex. 2017). There, the plaintiff Iris Connex was an "empty shell company" formed two months before filing suit. *Id.* at 851–53. Its sole asset was the asserted patent, which was acquired after the formation of the shell company. *Id.* Iris Connex was formed by an intellectual property lawyer "for the sole purpose of enforcing its lone asset." *Id.* at 840. It did not have a bank account until seven months after its formation and five months after filing the lawsuit, at which point the total balance was $100. *Id.* Iris Connex had no furniture, had no sign on its door, paid no rent, and had no other function beyond enforcing its lone patent. *Id.* It also paid no cash for its patent; instead, the assignor would receive 50% of all profits derived from monetizing the patent. *Id.* To make matters worse, Iris Connex effectively had to file suit, since the assignor reserved the right to reacquire its patent unless Iris Connex produced and paid at least $500,000 to the assignor within 24 months of the assignment. *Id.* And these facts only set the stage for the story that unfolded in *Iris Connex*.

As it turned out, 100 percent of Iris Connex was owned by Q Patents, a holding company personally owned by an intellectual property lawyer named Mr. Yates. *Id.* at 833-34, 860. However, this was not disclosed on Iris Connex's corporate disclosure form. *Id.* Judge Gilstrap found that Mr. Yates' behavior was "part of a pattern of setting up empty shell companies" and that he "intentionally obscured his own presence, and failed to disclose any other intermediary empty shell, all while carefully keeping the pathway open for any money to flow directly to him."

*Id*. at 851, 862. Mr. Yates' decision to hide his presence is ultimately why the court joined him as a party to the lawsuit. *Id.* at 861. Mr. Yates attacked the procedural basis for the court joining him to the lawsuit, but his argument failed only because Iris Connex's untruthful corporate disclosure form "deprived [defendants] from pleading an alter ego theory of recovery or a direct liability theory against Mr. Yates early in the case" and "[defendants] did not learn that Mr. Yates was the real party in interest until *after* the Court ordered post-judgment discovery." *Id.* at 861 (emphasis in original). That is not the case here. Since the very beginning, Dr. Donald has been open with Genentech and the Court about his role as Founder and CEO of Phigenix. (Dkt. No. 21 ("Complaint") ¶ 1; Dkt. No. 40 ¶ 1.) And, importantly, Dr. Donald has not used Phigenix as his alter ego.

Not only did Mr. Yates obscure his presence, but he also was behind the conduct that made the Iris Connex case exceptional for attorneys' fees purposes. As an intellectual property lawyer, Mr. Yates was responsible for pre-suit diligence and helped to establish Iris Connex's infringement theories. *Id.* at 842. Despite Mr. Yates' background as an intellectual property attorney, Iris Connex pursued an objectively baseless and "nonsensical" claim construction theory from the very start. *See id.* at 846–47. And despite Mr. Yates' legal background, he admitted to making numerous mistakes, including "disclosure errors, assignment issues, misuse use of form documents, conflicting sworn testimony, and a failure to properly communicate…." *Id.* at 851–52. When the Court started to catch on to Mr. Yates' involvement in the case, Iris Connex attempted to file for bankruptcy in order to avoid liability. *Id.* at 838–39. To the court, this spoke volumes. *Id.* at 862.

The facts of this case stand in stark contrast to the story revealed in *Iris Connex*. Dr. Donald is not an intellectual property attorney and has no background in the law. (*See* Ex. C, Donald Decl. ¶ 2.) Dr. Donald did not identify patents to assert; instead, Dr. Donald is the named inventor of the patent-in-suit. And while Iris Connex obscured the fact that Mr. Yates was the real party in interest, Dr. Donald does not control Phigenix and has been fully disclosed as its Founder and CEO since at least its original complaint. (Complaint ¶ 1.) And unlike in *Iris Connex*,

Phigenix was not formed mere months prior to filing suit – it was founded years prior to that. (Ex. C, Donald Decl. ¶ 2.)

Genentech tries to analogize this case to *Iris Connex* by arguing that Dr. Donald "enjoys significant if not complete control over decisions made on behalf of Phigenix." (Mot. at 6.) Genentech is wrong. Phigenix's board of directors (which has five seats) completely controls Phigenix's decisions—not Dr. Donald. (Ex. C, Donald Decl. ¶ 3.) Dr. Donald holds but one out of the five seats on the board of directors; each seat has an equal vote in making decisions, and decisions are made by a majority vote. (*Id*.) The decision to file suit in this case was made by a majority vote of the board of directors. (*Id*.)

Genentech provides a laundry list of facts taken out of context to supports its alter ego theory. For example, Genentech states that Dr. Donald "contributed his own funds to fuel the lawsuit." (Mot. at 3.) In fact, Dr. Donald provided a *loan* to Phigenix in 2013 and he was paid back that money within a year. (Ex. C, Donald Decl. ¶ 7.) Dr. Donald never wrote a personal check to a law firm to fund this lawsuit. (*Id.*) Genentech also observes that Phigenix's only employee is Dr. Donald's wife. (Mot. at 6.) Despite being irrelevant, this is also misleading. Dr. Donald's wife, who has a management background, is *currently* Phigenix's only employee (besides Dr. Donald himself), but Phigenix has had part-time help in the past. (Ex. C, Donald Decl. ¶ 4; *see also* Ex. A at 12:3–8.) None of Genentech's allegations show "such a unity of interest and ownership between the corporation and [Dr. Donald] that the two no longer exist as separate entities," which Genentech is required to show in order to pierce the corporate veil. *Seymour*, 605 F.2d at 1111.

In its attempt to analogize this case to *Iris Connex*, Genentech also argues that Dr. Donald (whose background is in science, not law) somehow "was the architect of [Phigenix'] infringement theory." Genentech argues that Dr. Donald's preparation of a scientific diagram means that he created Phigenix's infringement theory. (Mot. at 3.) But Phigenix had a team of lawyers advising the company leading up to and throughout this litigation, and any legal theories were developed by those lawyers, not Phigenix, and certainly not Dr. Donald. (Ex. C, Donald Decl. ¶ 8.) That, at the request of Genentech's General Counsel (Jeffrey Butler), Dr. Donald created a document to

explain how he thought KADCYLA actually worked (*id*.) does not make him the architect of Phigenix's infringement theory. Dr. Donald has even testified that he created the diagram to explain his understanding of the scientific process (not infringement). (Ex. B, Donald Dep. Tr. (Dec. 2, 2016) at 169:18–170:17.) This case is nothing like *Iris Connex.*

Genentech's only other case on this issue is *Applied Materials, Inc. v. Multimetrixs,* LLC, No. C 06-07372 MHP, 2009 WL 1457979 (N.D. Cal. May 26, 2009). But the *Applied Materials* court did not even pierce the corporate veil: it allowed the plaintiff to amend its complaint and pursue its piercing theory thereafter. *Id.* at *5. Moreover, *Applied Materials* involved allegations of inequitable conduct, which has never been at issue here. Nevertheless, even where courts have found inequitable conduct and linked it to the defendant's President and sole shareholder, they have refused to join the defendant's President to hold him liable for attorneys' fees. *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp*., 151 F. Supp. 2d 1192, 1208 (C.D. Cal. 2001), *vacated and remanded on other grounds*, 351 F.3d 1139 (Fed. Cir. 2003) ("[o]ne-person corporations are authorized by law and should not lightly be labeled sham.") (quoting *Nelson v. Adams USA, Inc*., 529 U.S. 460, 471 (2000)); *see also Iris Connex*, LLC, 235 F. Supp. 3d at 851 (courts "will not ordinarily scrutinize litigants' business decisions, including how they might structure a business"). The *Ulead Systems* court explained its decision not to join the defendant company's President (and sole shareholder) by noting that he would be denied due process if he was added as a party post-judgment. *See id.* Similarly, joining Dr. Donald post-judgment would deny him due process. If the facts of *Ulead Systems* did not justify piercing the corporate veil, then the facts here certainly do not.[2]

---

[2] It is noteworthy that Genentech does not allege any facts that exist in a typical veil piercing case, such as comingling of funds. *See PlusFive Claims, LLC v. 0713401 B.C. Ltd*., No. 10-1561 SC, 2011 WL 902015, at *6 (N.D. Cal. Mar. 14, 2011) ("Among the factors courts consider in determining whether a unity of interest and ownership exist are the comingling of funds between the individual and the entity; individual use of the entity's assets or funds; inadequate capitalization; disregard of corporate formalities; lack of segregation of corporate records; and identical directors and officers.").

### 3. Due Process Considerations Caution Against Joining Dr. Donald at This Late Stage

Finally, Genentech argues that joinder would provide Dr. Donald with due process. (Mot. at 4.) This case is officially closed and final judgment has been entered, and after more than three years of litigation that has passed, and this post-judgment briefing is the very first time that Dr. Donald has been represented in this action. Joining Dr. Donald at this extraordinarily late stage, after all has been said and done and final judgment has been entered, would not constitute due process. *See Nelson*, 529 U.S. at 462; *see also Ulead Sys., Inc.*, 151 F. Supp. 2d at 1208.

### B. Joining Dr. Donald Is Not Feasible

Genentech wrongly asserts that this court has specific personal jurisdiction over Dr. Donald. For there to be personal jurisdiction, three requirements must be met: "(1) [t]he non-resident defendant must ***purposefully direct his activities or consummate some transaction with the forum*** or resident thereof; or perform some act by which he ***purposefully avails*** himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger v. Fred Martin Motor Co*., 374 F.3d 797, 802 (9th Cir. 2004) (emphasis added).

Dr. Donald did not purposefully avail himself of this forum—Phigenix was forced into this forum by Genentech; Dr. Donald came here as Phigenix's corporate representative. Phigenix originally filed its case in the Northern District of Georgia, but the case was transferred to this District on Genentech's transfer motion and over Phigenix's objection. (Dkt. No. 38.) Dr. Donald did not "purposefully direct" his activities to this state, nor did he "purposefully avail" himself of the privilege of conducting activities here.

Additionally, Dr. Donald's actions taken on behalf of Phigenix during this litigation do not subject him to personal jurisdiction because "[f]or jurisdictional purposes, the acts of corporate officers and directors in their official capacities are the acts of the corporation exclusively and are thus not material for purposes of establishing minimum contacts as to the individuals." *Colt*

*Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999); *Mihlon v. Superior Court*, 169 Cal. App. 3d 703, 713 (Ct. App. 1985). Dr. Donald's actions both pre-suit and throughout this litigation have been undertaken in his official capacity and therefore do not establish jurisdiction. While Genentech is correct that Dr. Donald "attended Court hearings for this suit in the Northern District of California" (Mot. at 5), it is not unusual for the CEO of a small company (especially the named inventor in a patent infringement lawsuit) to attend hearings in his official capacity. It is Phigenix's right to enforce its intellectual property and there is nothing improper about Dr. Donald's participation in that process. In fact, as a corporate officer, Dr. Donald has fiduciary duties to Phigenix and his participation in this litigation was necessary to fulfill those fiduciary duties.

But even assuming that the "contacts" with California are ascribed to Dr. Donald individually, Genentech has still failed to show ***purposeful*** availment because Dr. Donald's only interactions with California have been a result of this lawsuit being transferred here over Phigenix's objections. Dr. Donald's actions during the course of this litigation cannot subject him to personal jurisdiction because "[t]he proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action. Later events are not considered." 16-108 MOORE'S FEDERAL PRACTICE - CIVIL § 108.42 (2017). Even Genentech's own briefing appears to admit that Dr. Donald's pre-suit correspondence with Genentech is not enough to establish minimum contacts. (Mot. at 5 ("We have held that sending infringement letters, without more activity in a forum state, is not sufficient to satisfy the requirements of due process.") (quoting *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998)).)

Genentech has not made a showing of minimum contacts, nor can it, because Dr. Donald's "contacts" with this forum arise out of this lawsuit being transferred here over Phigenix's objections.[3]

---

[3] Genentech's suggestion that the Court may reopen discovery to establish jurisdiction based on Genentech's speculative alter ego theory of liability is not appropriate for a post-judgment proceeding. *Intellect Wireless, Inc. v. HTC Corp.*, No. 09 C 2945, 2015 WL 4466955, at *1

**C. Genentech's Joinder Motion It Is Untimely**

The time for joinder of additional parties in this case has passed because a final judgment was entered on August 23, 2017. (Dkt. No. 396.) *See O'Connor v. Wells Fargo Bank, Nat. Ass'n*, No. 1:12-CV-2525-RWS, 2013 WL 2181276, at *2 (N.D. Ga. May 20, 2013) (denying motion for joinder made after a final judgment as untimely); *see also Vasquez v. Wells Fargo Bank, Nat'l Ass'n*, 77 F. Supp. 3d 911, 921 (N.D. Cal. 2015); *Stryker Corp. v. XL Ins. Am., Inc*., No. 1:05-CV-51, 2013 WL 2350364, at *2 (W.D. Mich. May 16, 2013).

Finally, this case is officially closed, which raises serious questions of whether subject matter jurisdiction to join Dr. Carlton Donald exists. *See Intellect Wireless, Inc. v. HTC Corp*., No. 09 C 2945, 2015 WL 4466955, at *1 (N.D. Ill. July 21, 2015) (denying post-judgment request to join owner for attorneys' fees purposes); *see also Cygnus Telecommunications Tech., LLC v. Totalaxcess.com, Inc*., 345 F.3d 1372, 1375 (Fed. Cir. 2003) ("[D]ue process protects those who were not parties to litigation from liability for judgments rendered against others.").

**V. CONCLUSION**

Phigenix is exactly the kind of company that the Patent Act was created to encourage—a company built upon Dr. Donald's relentless pursuit of scientific progress. Joining Dr. Donald to this lawsuit so that Genentech can pierce the corporate veil would work a grave injustice.

For at least the foregoing reasons, the Court should DENY Genentech's motion to join Dr. Carlton Donald.

Dated: October 4, 2017

FISH & RICHARDSON P.C.

By: */s/ Alana C. Mannigé*
Alana C. Mannigé

Attorney for Plaintiff
PHIGENIX, INC. and THIRD-PARTY
DR. CARLTON DONALD

---

(N.D. Ill. July 21, 2015). Nevertheless, if Dr. Donald is ultimately joined and the Court considers Genentech's alter ego theory, Dr. Donald requests an opportunity to brief the issue.