MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MATTHEW I. KREEGER (CA SBN 153793)
MKreeger@mofo.com
MATTHEW A. CHIVVIS (CA SBN 251325)
MChivvis@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
GENENTECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIGENIX, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>GENENTECH, INC.,<br><br>          Defendant. | Case No.    C 15-01238 BLF<br><br>**GENENTECH'S REPLY IN SUPPORT OF ITS MOTION TO JOIN DR. CARLTON DONALD UNDER FED. R. CIV. P. 19**<br><br>Date:      December 7, 2017<br>Time:     9:00 am<br>Ctrm:     Courtroom 3 – 5th Floor |

## I. INTRODUCTION

The opposition filed by Phigenix and Carlton Donald ("Respondents") confirms that Dr. Donald should be joined as a necessary party. While Respondents insist "Phigenix is no shell corporation," they make no showing of assets beyond the Donald patents. Respondents' opposition also reinforces Dr. Donald's central role in this litigation and its exceptionality. They concede that Dr. Donald concocted Phigenix's indirect PAX2 inhibition theory. Dr. Donald admits that he personally loaned Phigenix money to finance this suit. Respondents' due process argument fails because Genentech filed this motion with its motion for attorney fees.

Respondents do not criticize *Iris Connex* or adequately distinguish it. As in that case, an award against Phigenix alone would be meaningless. Because Dr. Donald was behind Phigenix's exceptional conduct and due process concerns are satisfied, he should be held jointly and severally liable for any attorney fees award against Phigenix.

Finally, joinder is feasible. Dr. Donald did far more than direct a single demand letter to California; rather, he sought a "partnership" in communications with Genentech spanning several months and then pursued this litigation after it was transferred here, purposefully availing himself of this forum.

## II. ARGUMENT

### A. Dr. Donald is a Necessary Party

***Phigenix was and is a shell.*** There is no dispute that Phigenix has no income or resources. (Opp'n (ECF No. 415) at 1.) Respondents admit that even when it filed suit, "Phigenix did not have the resources to successfully enforce the patents protecting its existing research"; they hoped that "litigation could provide the resources necessary." (*Id.*) As in *Iris Connex v. Dell, Inc.*, from the start Phigenix was a financially "empty shell company and, as a consequence, had no capacity to pay such fees even if the case were ultimately declared to be exceptional." 235 F. Supp. 3d 826, 832 (E.D. Tex. 2017).

With Phigenix unable to pay, any award of attorney fees would be meaningless. Dr. Donald is necessary for Genentech to obtain "consummate rather than partial or hollow relief." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004).

Respondents' attempt to cast Genentech's "entire argument" as founded on Andrews Kurth's withdrawal as Phigenix counsel misses the mark. (Opp'n at 3.) Respondents do not dispute that Phigenix stopped paying its counsel over a year ago and do not contend it can cover that debt.[1]

**Dr. Donald has control.** Respondents do not challenge that Dr. Donald controls over 50% of Phigenix's shares. (Mot. (ECF No. 398) at 2.) Respondents' references to other board members cannot overcome the control Dr. Donald exerts as majority shareholder and CEO. Donald provides no evidence (e.g., board minutes) to support or corroborate his claim that there were votes over initiating the lawsuit and IPRs. At all points in this litigation, he has held himself out as the client, including by his appearance at the *Markman* hearing in this case. (ECF No. 228 (*Markman* Hearing Tr.) at 3:14.)

**Dr. Donald was behind the exceptional litigation conduct**. Respondents' brief confirms that Dr. Donald was the driving force behind this case. Respondents concede that he directly financed the litigation against Genentech when he "provided a loan to Phigenix in 2013." (Opp'n at 6 (citing Mannigé Decl. Ex. C, (ECF No. 415-4, "Donald Decl.") ¶ 7).) They cannot disavow his personal involvement in Phigenix's litigation fundraising. (Reply Chivvis Decl. Ex. 1 (2016 Donald Dep. Tr.) at 79:1-10; 180:6-9; 180:25-181:2.) Nor can they deny that he sent "partnership" letters pressuring Genentech to take a license to Phigenix's portfolio in 2013 or that he drafted a diagram explaining "his understanding of the scientific process" on which Phigenix relied. (Opp'n at 6-7; Donald Decl. ¶ 8.) The diagram is attached to a letter that Dr. Donald himself wrote offering GNE "patent protection," and illustrates how Kadcyla allegedly meets the key limitation of Phigenix's patent claims. (EFC No. 37-5; '534 patent (ECF No. 1-1) at Claim 1.) The "indirect" inhibition supposedly shown in this diagram mirrors Phigenix's infringement theory in this litigation. (*See* ECF. Nos. 174-5 (Am. Inf. Contentions).)

Dr. Donald's attempt to downplay his involvement through the ex post facto statement that he worked only on "scientific aspects (like the diagram)" is not credible, and the relevant declaration paragraph should be stricken. (Donald Decl. ¶ 8.) Phigenix has refused to produce

---

[1] *Hutchins v. Cardiac Science, Inc.* is inapposite; it concerns Rule 19(a)(2)(ii), which is not at issue here. 456 F. Supp. 2d 173, 191 (D. Mass. 2006).

internal pre-suit documents and instructed Dr. Donald not to answer deposition questions on his role in establishing a basis for this lawsuit. (*See* Reply Chivvis Decl. Exs. 1 (2016 Donald Dep. Tr.) at 211:8-212:8 and 2 (Oct. 17, 2017 Email from Phigenix counsel).)

Nor can Respondents escape the holding of *Iris Connex*. They argue that the case required piercing the corporate veil, even though the decision expressly states the opposite. *Iris Connex*, 235 F. Supp. 3d at 846. Respondents' claim that Dr. Donald "has been open . . . about his role as Founder and CEO of Phigenix" (Opp'n at 5) provides no basis for deviating from *Iris Connex* in light of the many other parallels to this case.

### B. Due Process Favors Joining Dr. Donald and Genentech's Motion is Timely

Respondents' position that this motion is untimely (Opp'n at 10) fails because Genentech seeks to join Dr. Donald only to determine his joint and several liability for attorney fees. Genentech's motion for joinder, filed on the same day as its exceptional case motion (ECF No. 400), distinguishes this case from *Nelson* and *Ulead*. In *Nelson*, the defendant filed its joinder motion after the court awarded attorney fees. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 462, 464 (2000). The decision there was "not meant to shield the individual from liability." *Applied Materials, Inc. v. Multimetrixs, LLC*, No. C 06-07372 MHP, 2009 WL 1457979, at *5 (N.D. Cal. May 26, 2009). Rather, all the non-party "won was the due process right" to "contest on the merits his personal liability for the fees that were originally imposed solely on the company." *Id. Ulead* is even further afield because, there, defendant attempted to hold a non-party liable for fees without even adding him. *Ulead Sys., Inc. v. Lex Comput. & Mgmt. Corp.*, 151 F. Supp. 2d 1192, 1208 (C.D. Cal. 2001), *vacated & remanded*, 351 F.3d 1139 (Fed. Cir. 2003).

As for timeliness, Respondents cite no case in which a motion to join a party was denied as untimely when filed with the fees motion. (*See* Opp'n at 10 (citing *O'Connor v. Wells Fargo Bank Nat'l Ass'n*, No. 1:12-CV-2525-RWS, 2013 WL 2181276, at *2 (N.D. Ga. May 20, 2013) (denying plaintiffs' motion to add party to complaint after dismissal); *Vasquez v. Wells Fargo Bank Nat'l Ass'n*, 77 F. Supp. 3d 911, 921 (N.D. Cal. 2015) (addressing plaintiff's motion to join defendant to complaint)).) In fact, one of Respondents' cited cases, *Stryker Corp. v. XL Insurance America, Inc.,* suggests just the opposite: "it is possible to add parties after the entry of

final judgment." No. 4:04-cv-157, 2013 WL 2350364, at *2 (W.D. Mich. May 16, 2013).

### C. Joinder is Feasible As Venue and Jurisdiction Are Sound

Respondents concede that venue would remain intact if Dr. Donald is joined, but claim that there are "questions" about subject matter jurisdiction. (Opp'n at 10.) The cases they cite do not support them. Respondents' quote from *Cygnus Telecommunications Technology, LLC v. Totalaxcess.com, Inc.* mischaracterizes its holding. (*Id.*) The Federal Circuit actually concluded subject matter jurisdiction existed in that case. *Cygnus*, 345 F.3d 1372, 1375 (Fed. Cir. 2003). Respondents cite *Intellect Wireless, Inc. v. HTC Corp.*, but it only addressed supplemental jurisdiction for a veil piercing claim. And there, the defendant did not file its motion until "nearly three years" after judgment. No. 09 C 2956, 2015 WL 4466955, at *1 (N.D. Ill. July 21, 2015).

As for personal jurisdiction, Respondents do not dispute that Genentech's attorney fees claim "arises out" of Dr. Donald's litigation activities in this forum. There can be no question that he purposefully directed his activities at Northern California and availed himself of the privilege of conducting business here. Dr. Donald not only sent licensing offers, but also engaged in telephonic licensing discussions with Genentech in South San Francisco. Far from a one-off demand letter, Dr. Donald pursued a relationship with Genentech from July until late November 2013, and stated that Phigenix was open to "all options for partnering with Genentech." (ECF No. 37-5 at 2; *see also* ECF Nos. 37-7 (recounting parties' discussions on July 22, 2013), 37-8, 37-9.) Moreover, Donald eventually pursued suit in California. Thus, while "sending infringement letters, without more" was not sufficient in *Dainippon Screen Manufacturing Co. v. CFMT, Inc.*, 142 F.3d 1266 (Fed. Cir. 1998), here declaratory judgment jurisdiction is not at issue. And, in any case, Dr. Donald did more than merely send letters. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354-58 (Fed. Cir. 2017) (patentee availed itself of forum by enforcing patents there such that jurisdiction was "reasonable and fair").

Respondents' position that Dr. Donald's actions in the Northern District have been in "an official capacity" (Opp'n at 9) ignores Genentech's authorities—*Keeton*, *Calder*, *Rimes*, *Blinglet*, and *Kukui*—which confirm that one's "status as employee[] does not somehow insulate them from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). Thus, "the proper inquiry is to

look specifically at the minimum contacts of the individual regardless of whether that individual was acting within his or her official capacity." *Kukui Gardens Corp. v. Holco Capital Grp., Inc.*, 664 F. Supp. 2d 1103, 1110 (D. Haw. 2008) (citing *Calder*, 465 U.S. at 789-90).

Respondents' reliance on *Colt Studio, Inc. v. Badpuppy Enterprise*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999) is also misplaced. Based on *Calder*, courts in this circuit do not follow *Colt. See, e.g., PLS-Pac. Laser Sys. v. TLZ Inc.*, No. C-06-04585 RMW, 2007 WL 2022020, at *6 n.4 (N.D. Cal. July 9, 2007) ("[T]he court cannot agree with the broad proposition that the acts of corporate officers and directors in their official capacities are irrelevant to the question of minimum contacts."); *Slaughter v. Van Cleve*, No. CV-07-6599 CAS (FFMx), 2007 WL 4357567, at *8 n.3 (C.D. Cal. Dec. 10, 2007); *Kaiya Eve Couture, LLC v. My Trendy Girl, Inc.*, No. CV 07-6294-VBF(SSx), 2008 WL 11342463, at *2 n.1 (C.D. Cal. Apr. 16, 2008). Respondents' related position that there is nothing "unusual" about a CEO attending hearings in this district or participating in intellectual property enforcement is beside the point. (Opp'n at 9.) Under *Calder* and its progeny, Dr. Donald's CEO status is irrelevant to the jurisdictional inquiry. He came to this district to pursue Phigenix's litigation business. Nothing more is necessary.

Respondents' position that Dr. Donald did not purposefully avail himself of this forum because the case was transferred here is also without merit. The continued maintenance of the lawsuit after transfer contributes to its exceptionality. After transfer, Genentech repeatedly advised Phigenix, and hence Dr. Donald, of the weakness of the case and even served and then filed a Rule 11 motion. (*See* ECF No. 198 at 9.) Rather than heed those warnings, Respondents pressed Dr. Donald's indirect inhibition theory and litigated here for nearly three years. Respondents cite no case holding that specific jurisdiction over a non-party for attorney fees must be based on contacts before the plaintiff's infringement claim accrued.

### III.  CONCLUSION

Respondents' opposition reinforces that Dr. Donald was behind this meritless litigation, that he is receiving due process, and that an award against Phigenix without him is hollow. The time has come to hold Dr. Donald accountable for his role in imposing an expensive lawsuit on Genentech that had no sound theory of infringement from the start and throughout.

Dated: October 25, 2017          MORRISON & FOERSTER LLP

By:    */s/ Michael A. Jacobs*
            MICHAEL A. JACOBS

Attorneys for Defendant
GENENTECH, INC.