**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PHIGENIX, INC., <br><br>         Plaintiff, <br><br>    v. <br><br> GENENTECH, INC., <br><br>         Defendant. | Case No. 15-cv-01238-BLF <br><br> **ORDER (1) GRANTING IN PART AND DENYING IN PART WITHOUT PREJUDICE DEFENDANT'S MOTION FOR AN EXCEPTIONAL CASE FINDING AND AWARD OF ATTORNEYS' FEES; AND (2) GRANTING DEFENDANT'S MOTION TO JOIN DR. CARLTON DONALD** <br><br> [Re: ECF 398, 400] |

Before the Court are two motions filed by Defendant Genentech, Inc. ("Genentech"). The first is a motion for an exceptional case finding and award of attorneys' fees. Mot. for Attorneys' Fees, ECF 400. The second is a motion to join Dr. Carlton D. Donald under Federal Rule of Civil Procedure 19. Mot. for Joinder, ECF 398. As to the first motion, the Court requested that the motion be limited to seeking a determination of exceptional case status, deferring the issue of the proper amount of fees to a later motion. Having considered the briefing and oral argument, as well as the governing law, the Court GRANTS IN PART and DENIES IN PART without prejudice Genentech's Motion for Attorneys' Fees and GRANTS Genentech's Motion for Joinder.

## I. BACKGROUND

Plaintiff Phigenix, Inc. ("Phigenix") is a pharmaceutical and biomedical research company founded in 2007 by Dr. Carlton D. Donald, who is a named inventor on numerous issued patents and pending patent applications, including U.S. Patent No. 8,080,534 ("the '534 patent"). First Am. Compl. ("FAC") ¶¶ 1, 9, ECF 21. The '534 patent is titled "Targeting PAX2 for the Treatment of Breast Cancer." Ex. A to FAC ("the '534 patent"), ECF 21-1. Phigenix brought this

action against Genentech alleging infringement of the '534 patent based on Kadcyla, a drug targeting a type of metastatic breast cancer. *See generally* FAC.

### A.    Genentech and Kadcyla

In 1998, Genentech obtained FDA approval of Herceptin (trastuzumab)[1] for the treatment of HER2+ breast cancer. Weiner Expert Report in Supp. of Mot. for Summ. J. ¶¶ 39, 120, ECF 349-1. At that time, Herceptin also received approval as a "first-line treatment in combination with the taxane paclitaxel." *Id.* ¶ 120. According to Genentech, it then began working on a next-generation treatment: conjugates of Herceptin (trastuzumab) and the maytansinoid DM1, which were disclosed in a Genentech patent application that published in 2001 ("the '244 application," ECF 37-6). Mot. for Attorneys' Fees 2. Those conjugates work with the precise molecule that eventually would be approved as Kadcyla. *Id.*

### B.    Phigenix Contacts Genentech

In 2013, the FDA approved Kadcyla. Ex. 3 to Kreeger Decl. in Supp. of Mot. for Summ. J. ("Kadcyla Label"), ECF 348-3. The approved indication was for patients previously treated with Herceptin and a taxane. *Id.* at 1. Thereafter, in June 2013, Phigenix sent multiple letters written by Dr. Donald to Genentech about securing "patent protection" for Kadcyla by offering to negotiate a license for Phigenix's patent portfolio. Exs. A and B to Schwartz Decl. in Supp. of Mot. to Dismiss, ECF 37-4, 37-5. Dr. Donald included a diagram hypothesizing that trastuzumab-DM1 conjugates affect a signal pathway resulting in the inhibition of PAX2 in breast cancer cells. Dr. Donald asserted that this infringed Phigenix's patent. *See* Ex. B to Schwartz Decl. in Supp. of Mot. to Dismiss; Ex. 3 to Ackerman Decl. in Opp'n to Mot for Sanctions, ECF 215-3.

In September 2013, Genentech declined the offer and stated that its '244 application discloses "trastuzumab-DM1 conjugates . . . for the treatment of breast cancer" and was published more than four years before the priority date of the earliest-filed application in Phigenix's patent portfolio. Ex. C to Schwartz Decl. in Supp. of Mot. to Dismiss, ECF No. 37-7. In November 2013, Genentech sent an email letter to Phigenix stating that if Phigenix's patent claims cover

---

[1] Herceptin is the tradename for the trastuzumab antibody. Second Summ. J. Order 5 n.1, ECF 391.

"direct or indirect inhibition of PAX2 for the treatment of cancer," they would be inherently anticipated by the '244 application. Ex. F to Schwartz Decl. in Supp. of Mot. to Dismiss, ECF 37-9.

### C. This Litigation

On January 31, 2014, Phigenix initiated its suit against Genentech in the United States District Court for the Northern District of Georgia. ECF 1. The Northern District of Georgia granted Genentech's motion to transfer the action to this District. ECF 66.

In June 2014, Genentech told Phigenix that the complaint warrants Rule 11 sanctions; Phigenix disagreed. Opp'n to Mot. for Sanctions, ECF 214. On May 10, 2016, Genentech filed its motion for sanctions under Rule 11. Mot. for Sanctions, ECF 198. The parties submitted supplemental briefing after Phigenix provided results on its testing of Kadcyla. On October 31, 2016, this Court found that Phigenix had "properly relied on scientific, peer-reviewed articles to formulate its infringement theory" and that Genentech had not demonstrated how Phigenix's complaint was "baseless." Sanctions Order, ECF 290. The parties' briefing on Phigenix's test results did not compel a different conclusion. *Id.* at 7. In declining to take a deep dive into the scientific articles submitted, the Court noted that weighing the value of different experimental studies without the aid of experts would not assist the Court in deciding the the sanctions motion. *Id.* Furthermore, the Court found that Genentech had not shown that the '244 application inherently anticipates the '534 patent for the purpose of the sanctions motion. *Id.* at 11. Nevertheless, the Court recognized the "potentially significant weaknesses in Phigenix's theory of infringement." *Id.* As such, this Court allowed Genentech to request Rule 11 sanctions or extraordinary case fees under § 285 in the event that Genentech obtained judgment in its favor. *Id.* at 11–12.

On September 22, 2016, Genentech filed its first motion for summary judgment. First Mot. for Summ. J., ECF 257. The parties disputed whether the '534 patent was entitled to the October 14, 2005 priority date. The '534 patent is a continuation-in-part of U.S. Application No. 12/090,191 (the "'191 application"), which is a national stage entry of WO 2007/047512 (the "PCT application"). Exs. 2, 3 to Chivvis Decl. in Supp. of First Mot. for Summ J., ECF 258-2,

258-3. The PCT application claims priority to U.S. Provisional Application No. 60/726,921, filed on October 14, 2005 (the "2005 provisional application"). Exs. 3, 4 to Chivvis Decl., ECF 258-3, 258-4. On February 24, 2017, the Court found that no reasonable trier of fact would find adequate written description support in the 2005 provisional application for the asserted claims. First. Summ. J. Order 12–19, ECF 327. As such, Phigenix lost the 2005 priority date for the asserted '534 patent.

The Court further addressed Genentech's argument that the asserted claims are anticipated by the use of Kadcyla in clinical trials, which were made public in 2007. *See id.* at 23. Phigenix asserted that there was a factual dispute as to whether the public use necessarily met the claim limitations. *Id.* The Court agreed that there was a genuine issue of material fact as to whether Kadcyla's public use in 2007 anticipated the asserted claims. *Id.* at 24. The Court noted that one of the documents submitted by Genentech states that "[i]n addition to Trastuzumab, all patients with objective responses had previously been treated with paclitaxel, docetaxel, and/or vinorelbine." *Id.* (citing Ex. C to Girish Decl., ECF 259-3; Ex. G to Girish Decl. 27, ECF 259-7). While paclitaxel and docetaxel are taxanes, vinorelbine is not. *Id.* Given the disjunctive in the list of "paclitaxel, docetaxel, and/or vinorelbine," the Court found that it was possible that the patients of the clinical trials received vinorelbine but not either of the two taxanes. *Id.* On this basis, the Court ruled that there was enough evidence for the trier of fact to find that the public use and the asserted infringing methods are not identical. *Id.*

Thereafter, Genentech filed a second motion for summary judgment of non-infringement and invalidity on June 9, 2017. Second Mot. for Summ. J., ECF 347. During a May 23, 2017 deposition, Phigenix's expert Dr. Richard Pestell testified that his infringement opinion was limited to patients who had previously been treated with Herceptin and a taxane and *nothing else*. *Id.* at 5 (citing Ex. 2 to Kreeger Decl. at 51:5–12, 53:20–25, 53:14–19, ECF 348-2). According to Genentech, only in an email dated May 31, 2017, did Phigenix restrict its infringement theory to apply to patients who had previously received trastuzumab and a taxane "and nothing else." Second Mot. for Summ. J. 10.

On August 18, 2017, the Court granted in part Genentech's second motion for summary

judgment. Second Summ. J. Order, ECF 391. The Court noted that "Phigenix only narrowed its infringement theory in response to the Court's [first] summary judgment order finding that the '534 patent was not entitled to an earlier priority date." *Id.* at 16. But Phigenix neither moved to amend its infringement contentions nor notify Genentech of the new infringement theory. *Id.* As such, the Court sustained Genentech's objection and struck Dr. Pestell's infringement opinion. *Id.* Without evidence of infringement, summary judgment of no infringement was granted. *Id.* In addition, the Court granted summary judgment of no induced infringement for lack of specific intent due to the absence of evidence of Genentech's intent to induce infringement as to the narrow patient subpopulation who previously received "trastuzumab and a taxane and nothing else" under Phigenix's newly disclosed infringement theory. *Id.* at 9–14. Accordingly, the Court entered judgment in favor of Genentech and against Phigenix. Judgment, ECF 396.

Genentech then filed its Motion for Attorneys' Fees and Motion for Joinder of Dr. Carlton.

## II. MOTION FOR ATTORNEYS' FEES

### A. Legal Standard

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 35 U.S.C. § 285. In *Octane Fitness*, the Supreme Court explained that an exceptional case "is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." *Octane Fitness*, 134 S. Ct. at 1756; *see also Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324 (Fed. Cir. 2011) ("[W]e are mindful that the district court has lived with the case and the lawyers for an extended period."). In considering the totality of the circumstances, the Supreme Court suggested that district courts could consider 'nonexclusive' factors it previously set forth concerning a similar provision in the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance

considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6 (citing *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 (1994)). A movant must establish its entitlement to attorneys' fees under § 285 by a preponderance of the evidence. *Id*. at 1758.

### B. The Parties' Contentions

The parties do not dispute that Genentech is the "prevailing party" under the meaning of 35 U.S.C. § 285. Thus, the burden is on Genentech to establish that this case is "exceptional" such that this Court may award fees under § 285.

Genentech raises several arguments why this case is exceptional. First, Genentech asserts that Phigenix failed to conduct pre-suit testing to verify that Kadcyla affects PAX2 (or DEFB1) in breast cancer cells as the asserted claims require. Mot. for Attorneys' Fees 5.

Second, in Genentech's view, Phigenix proceeded with a meritless infringement claim after Genentech informed Phigenix that its '244 application published in 2001 anticipated Phigenix's '534 patent. *Id.* at 5–6. Genentech also argues that Phigenix's theory of indirect infringement raised invalidity issues but Phigenix pressed forward. *Id.* at 5. According to Genentech, the foreseeable results of Phigenix's position were that (1) Phigenix would lose the 2005 priority date for the '534 patent and (2) Genentech's Kadcyla-related clinical trials would be deemed prior art. *Id.* at 6–7.

Moreover, Genentech asserts that Phigenix markedly changed the nature of its infringement theory during litigation. Mot. for Attorneys' Fees 7. As mentioned above, Phigenix's expert Dr. Pestell revealed for the first time on May 23, 2017, after more than three years of litigation, that Phigenix's infringement theory was now limited to patients who had only received "trastuzumab and a taxane *and nothing else*." *Id.* (emphasis in original). Genentech claims that even Phigenix's late-disclosed infringement theory had no chance of success. *Id.* at 8. Genentech further argues that Phigenix's conduct "is all the more egregious in view of the Court's repeated warnings to Phigenix of the evident weakness in its case" and that Phigenix had no tenable theory. *Id.* at 8–9. As another point, Genentech contends that the infringement claim lacked reliable support because Phigenix's testing on Kadcyla "lacked proper controls, did not distinguish true results from background noise, and failed to establish causation." *Id.* at 9.

Third, Genentech argues that Phigenix pursued an aggressive litigation strategy while minimizing its own exposure. Mot. for Attorneys' Fees 10. Genentech contends that Phigenix not only filed this action but also "sought leverage by filing for *inter partes* review of [Genentech's] key patents protecting Kadcyla." *Id.* According to Genentech, while it was incurring litigation expenses on multiple proceedings, Phigenix did not pay its own counsel for over a year. *Id.* On August 4, 2017, the Court granted Phigenix's former counsel's motion to withdraw due to the failure to pay legal fees. ECF 384.

Phigenix counters that there is no *per se* requirement that a plaintiff must conduct pre-suit testing. Opp'n to Mot. for Attorney's Fees 5, ECF 416. On this point, Phigenix claims that Genentech incorrectly faults Phigenix for not conducting pre-suit testing on Kadcyla which can only be obtained with a prescription. *Id.* Phigenix argues that it properly relied on scientific, peer-reviewed articles to formulate its infringement theory. *Id.* at 6.

Phigenix also responds that the fact that the Court found Phigenix did not have sufficient evidence of Genentech's specific intent to induce infringement alone fails to render this case exceptional. Opp'n to Mot. for Attorneys' Fees 6. Furthermore, Phigenix argues that Genentech has not invalidated the '534 patent based on anticipation. *Id.* at 6–7.

Regarding the change in its infringement theory, Phigenix contends that the "striking of an expert report is not itself grounds for attorneys' fees." *Id.* at 7. In Phigenix's view, the Court already imposed a sufficient sanction by striking Dr. Pestell's expert report. *Id.* at 8.

As a final point, Phigenix disagrees with Genentech's position that Phigenix's filing of *inter partes* review petitions challenging Kadcyla-related patents makes this case exceptional. Opp'n to Mot. for Attorneys' Fees 8. Phigenix points out that "[o]ver 80 percent of IPR filings are associated with co-pending federal court litigation." *Id.* (citation omitted) (alteration in original). In addition, Phigenix argues that its financial relationship with prior counsel has no bearing on the issue presented in this motion. *Id.* at 9. Phigenix contends that plaintiffs frequently bring patent suits without paying counsel on an hourly basis, for example, through a contingent fee arrangement. *Id.*

## C.    Discussion

As a preliminary issue, the Court notes that Genentech seeks an award of attorneys' fees against both Phigenix and Dr. Donald.  Mot. for Attorneys' Fees 1, 10.  While Genentech simultaneously filed a motion to join Dr. Donald, he has not been joined in this action and therefore did not have an opportunity to respond to the instant motion.  His lack of opportunity to defend himself against an imposition of attorneys' fees implicates due process concerns.  *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 471–72 (2000).  The Court therefore denies without prejudice Genentech's request for attorneys' fees against Dr. Donald.  Genentech may reassert this argument in its subsequent fees motion.

The Court now turns to the merits of the instant motion, and looks to the "totality of the circumstances" to determine whether this case is "exceptional."  *Octane Fitness*, 134 S. Ct. at 1756.  Phigenix's conduct need not be "independently sanctionable" to justify an award of fees. *Id.*  In other words, this Court "may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees."  *Id.* at 1757.

While some of Phigenix's conduct standing alone would not be independently sanctionable, the Court concludes that taken as a whole, there came a point in this case when Phigenix's continued prosecution of the case became "exceptional."  The futility of Phigenix's case was clearly exposed after the Court ruled that the '534 patent was not entitled to the 2005 priority date as set forth in the First Summary Judgment Order.  Yet, Phigenix stubbornly proceeded with an untenable case.  *Octane Fitness*, 134 S. Ct. at 1756.  The Court addresses the parties' arguments in detail below.

As a first issue, Genentech asserts that this case is "exceptional" on the grounds that Phigenix failed to conduct pre-suit testing to confirm that Kadcyla affects PAX2 (or DEFB1) in breast cancer cells.  Mot. for Attorneys' Fees 5.  However, there is no bright-line requirement for obtaining and testing an infringing product before filing a patent lawsuit.  *See Intamin Ltd. v. Magnetar Techs., Corp.*, 483 F.3d 1328, 1338 (Fed. Cir. 2007).  Here, Phigenix points out that Kadcyla can be obtained only with a prescription.  As such, pre-suit testing would not have been a

simple matter. Genentech argues that Phigenix could have asked for a sample of Kadcyla from Genentech. Reply in Supp. of Mot. for Attorneys' Fees 2, ECF 424. Although that would have been the preferred course of conduct, especially considering that the parties had been in discussions about Phigenix's infringement theory and licensing offer for some time, Phigenix initially resorted to evaluating other evidence found in peer reviewed publications. Considering the early stage of the litigation and Phigenix's plausible reliance on published studies, the Court finds that Genentech has not shown that Phigenix's failure to ask for a sample and conduct a test before filing this suit is a sufficient basis for exceptional case determination. In fact, the record shows that before initiating this suit Phigenix's prior counsel informed Genentech that "numerous . . . recent studies and publications" support Phigenix's infringement theory. *See* Ex. 3 to Ackerman Decl. in Opp'n to Mot for Sanctions. Under those circumstances, the Court concludes that the fact that Phigenix failed to conduct pre-suit testing *by itself* does not warrant a finding of an "exceptional" case.

That said, the Court notes that the parties' communications prior to the filing of this suit squarely put Phigenix on notice about issues concerning potential anticipation of the '534 patent by prior art. *See, e.g.*, Ex. F to Schwartz Decl. in Supp. of Mot. to Dismiss (Genentech informing Phigenix that the '534 patent would be anticipated by the '244 application under Phigenix's theory of infringement). As such, Phigenix was informed about the potential weakness in its case even before the filing of this suit.

In fact, the weakness of Phigenix's case was a recurring theme throughout the course of the litigation. For instance, Phigenix relied on a scientific article written by Dr. Sarah Walker to support its infringement theory, but Genentech submitted Dr. Walker's own testimony debunking Phigenix's interpretation of her findings. *See* Hearing Tr. for Motion for Sanctions at 21:22–22:2, ECF 245; Walker Decl. in Supp. of Mot. for Sanctions, ECF 201. The Court noted to Phigenix the concerns raised by its infringement theory due to the "tremendous leap of faith" it took. Hearing Tr. for Motion for Sanctions at 21:17–21. In denying Genentech's motion for sanctions, the Court further recognized that "Genentech has presented strong argument and evidence supporting potentially significant weaknesses in Phigenix's theory of infringement." Sanctions Order 11.

Thus, although Rule 11 sanctions were not ordered at that early stage, it was a close call and the Court gave Phigenix the benefit of the doubt on what was even then a very weak showing by Phigenix.

The Court next turns to Genentech's argument that this case is exceptional because Phigenix proceeded with a meritless infringement claim. In particular, Genentech emphasizes that it repeatedly explained to Phigenix that the '244 application anticipates the '534 patent under Phigenix's infringement theory. Mot. for Attorneys' Fees 6. While Genentech raised a serious problem regarding the validity of the '534 patent, this factor alone does not make this case exceptional because there had been no finding that the '244 application anticipates the '534 patent.

Genentech further argues that it was foreseeable that Phigenix would lose the 2005 priority date for the '534 patent and that Genentech's Kadcyla-related clinical trials would become prior art. Mot. for Attorneys' Fees 6–7. Indeed, the Court's ruling that the '534 patent was not entitled to the 2005 priority date (First Summ. J. Order. 12–19) confirmed Genentech's warning to Phigenix and suggests that Phigenix failed to properly investigate Genentech's evidence and arguments before moving forward. Nevertheless, the Court does not find that Phigenix's position with respect to the 2005 priority date was frivolous. Moreover, Genentech has not shown that it was foreseeable that Genentech's clinical trials would be deemed prior art when the parties briefed Genentech's first motion for summary judgment given that they disputed whether the '191 application (the '534 patent's parent application) provided written description support for the asserted claims. *See* First Summ. J. Order 11. The Court made no determination on that issue because neither party submitted adequate briefing. *Id.* Accordingly, Genentech has not established that Phigenix's conduct up to the Court's ruling on the first motion for summary judgment made this case exceptional.

The Court finds that the tipping point was after it ruled on the first summary judgment motion. Considering the significant deficits in Phigenix's infringement theory throughout this case, Phigenix's conduct after the Court issued the February 24, 2017 First Summary Judgment Order makes this case an action "that stands out from others." *Octane Fitness,* 134 S.Ct. at 1756. Phigenix's behavior in the face of losing the 2005 priority date reflects its unreasonable

1    determination to forge ahead with prolonged litigation when it had no tenable theory of

2    infringement.

3          Then, in a stunning change of course, during a May 23, 2017 deposition, Phigenix's expert

4    Dr. Pestell revealed for the first time that Phigenix's infringement theory was limited to patients

5    who only received "trastuzumab and a taxane and nothing else."  Second Mot for Summ. J. 5

6    (citing Ex. 2 to Kreeger Decl. at 51:5–12, 53:20–25, 53:14–19).  The Court found that Phigenix

7    narrowed its infringement theory in response to the Court's first summary judgment order finding

8    that the '534 patent was not entitled to the 2005 priority date.  Second Summ. J. Order 16.  Despite

9    the fact that it "transformed the nature of [its] infringement theory," Phigenix chose not to amend

10   its infringement contentions or notify Genentech of the change in theory.  *Id.*  Instead, the new

11   theory was divulged only by responses to questions posed by Genentech's counsel during a

12   deposition, after the close of fact discovery.  *Id.*  Phigenix provides no good reason why it failed to

13   disclose the new theory earlier.  Those circumstances evince that Phigenix unreasonably

14   manipulated its theories to postpone defeat.  Such gamesmanship supports the conclusion that

15   Genentech is entitled to some portion of its attorneys' fees.  *See Kilopass Tech. Inc. v. Sidense*

16   *Corp.*, No. C 10-02066 SI, 2014 WL 3956703, at *14 (N.D. Cal. Aug. 12, 2014) (finding the case

17   to be exceptional where the plaintiff litigated the action in an unreasonable manner "by failing to

18   conduct an adequate pre-filing investigation, shifting its theories of infringement late in the

19   litigation and without following the proper procedures for amendment of contentions, and

20   engaging in conduct that at times amounted to gamesmanship").  Phigenix's maneuver is

21   particularly egregious as it is apparent that the late disclosed new theory was proffered to avoid

22   anticipation of the '534 patent which Phigenix was repeatedly warned about throughout the

23   litigation.

24         Phigenix argues that *Kilopass* is distinguishable because the plaintiff in that case argued

25   different positions before the district court and the PTO.  Opp'n to Mot. for Attorneys' Fees 8.

26   Not surprisingly, *Kilopass* does not have the same set of facts present here.  The Court, however,

27   takes particular note of *Kilopass*' concern about the effect of litigant's unreasonable manner in

28   shifting theories of infringement which is at issue in this case.  *See* 2014 WL 3956703, at *14.

11

Like Phigenix, the plaintiff in *Kilopass* did not present "any legitimate reason for why it had to change its theory of infringement . . . and without following the proper procedures for seeking amendment of its contentions." *Id.*, at *13. The Court therefore agrees with Genentech's argument that *Kilopass* lends support in finding this case to be exceptional.

The Court is also unpersuaded by Phigenix's argument that striking Dr. Pestell's expert report is a sufficient sanction. In evaluating whether this case is exceptional, the Court may consider "the need in particular circumstances to advance considerations of compensation and deterrence." *Octane Fitness*, 134 S. Ct. at 1756 n.6. By awarding Genentech attorneys' fees, both considerations of compensation and deterrence are advanced, consistent with *Octane Fitness* and § 285. This is particularly true where Phigenix did not pay its prior counsel for one year while imposing enormous burdens on Genentech to litigate this case and manipulated its infringement theories without a good faith disclosure.

Other facts show that Phigenix litigated this action in an unreasonable manner after the First Summary Judgment Order was issued and support a finding that this case "is simply one that stands out from others" *Octane Fitness*, 134 S. Ct. at 1756. First, based on Phigenix's new infringement theory, Phigenix had to show that Genentech intended Kadcyla to be administered to patients who were previously treated with Herceptin and a taxane and nothing else. However, such a treatment would neither comply with the Herceptin label nor the standard of care. Second Summ. J. Order 11. As such, Phigenix's theory defied "common sense." *Id.* at 11–12 (citing *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1365 (Fed. Cir. 2003)).

Second, Genentech raises a valid point regarding Phigenix's *inter partes* review petitions challenging the Kadcyla patents. Phigenix's counterargument that over 80 percent of IPR filings are related to co-pending federal court actions misses the point. As Genentech responds, the majority of such co-pending actions involve IPR petitions filed by parties accused of infringing the asserted patent. *See* Ex. 1 to Chivvis Decl., ECF 424-2. That is not the case here, and Phigenix offers no good reason for challenging the Kadcyla-related patents in the IPR proceedings. In fact, in one of Phigenix's appeals, the Federal Circuit noted that "Phigenix does not contend that it faces risk of infringing the [challenged] patent, that it is an actual or prospective

licensee of the patent, or that it otherwise plans to take any action that would implicate the patent." *Phigenix, Inc. v. Immunogen, Inc.*, 845 F.3d 1168, 1173–74 (Fed. Cir. 2017). While there is no general rule that a party's decision to submit IPR petitions constitutes misconduct, Phigenix's attempt to defeat Kadcyla-related patents while litigating this action supports Genentech's argument that Phigenix attempted to hold the Kadcyla-related patents hostage.

Third, Genentech contends that Phigenix's testing of Kadcyla was meritless and lacked basic scientific controls. Mot. for Attorneys' Fees 9. Determining whether Phigenix's testing would have been admissible is beyond the scope of the instant motion. Nevertheless, the Court recognizes that Dr. Pestell testified during his May 23, 2017 deposition that he would not publish the test results that Genentech challenges as unreliable. Ex. 5 to Kreeger in Supp. of Daubert Motion ("Pestell Dep.") at 131:18–20, ECF 356-5. The Court finds Dr. Pestell's testimony is further evidence that at least by May 2017, after the First Summary Judgment Order issued, Phigenix was aware of the weakness of its infringement theory as reflected in its Kadcyla testing but continued to unreasonably litigate this case.

### D. Conclusion

For the foregoing reasons the Court, exercising its sound discretion and considering the totality of circumstances, finds that this action is an "exceptional" case under 35 U.S.C. § 285. Although not enough standing alone, the Court is persuaded that Phigenix's shoddy pre-suit investigation, its continued aggressive prosecution of the case after the Court determined that the '534 patent did not derive a 2005 priority date from Phigenix's 2005 provisional application, and its undisclosed change in its infringement theory after the ruling on the first summary judgment motion taken together make this case an action "that stands out from others." *Octane Fitness,* 134 S.Ct. at 1756. As such, the Court concludes that Genentech is entitled to reasonable attorneys' fees accrued since the issuance of the First Summary Judgment Order on February 24, 2017, and on this basis, Genentech's Motion for Attorneys' Fees is GRANTED IN PART as to Phigenix.

Genentech's Motion for Attorneys' Fees is DENIED IN PART without prejudice as to Dr. Donald. He did not have an opportunity to defend himself against the liability for the fee

award in the instant motion prior to his joinder, which the Court grants below. Genentech may refile its motion to assess fees against Dr. Donald along with its motion for determination of reasonable fees.

## III. MOTION FOR JOINDER

### A. Legal Standard

Federal Rule of Civil Procedure 19 provides for joinder of required parties. In evaluating joinder under Rule 19, "the court must determine whether the absent party is 'necessary.'" *United States v. Bowen*, 172 F.3d 682, 688 (9th Cir. 1999) (citing Fed. R. Civ. P. 19(a)(1)). Specifically, Rule 19(a)(1) states that:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or
> > >
> > > (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). "If the absent party is 'necessary,' the court then determines whether joinder is 'feasible.'" *Bowen*, 172 F.3d at 688.

### B. The Parties' Contentions

Genentech seeks to join Dr. Donald under Rule 19(a)(1)(A). Mot. for Joinder 2. Genentech argues that joinder of Dr. Donald is necessary because he is responsible for the conduct that makes this case exceptional. *Id.* According to Genentech, Dr. Donald owns the controlling interest in the company, "conceived and then carried out each step leading up to the filing of this meritless lawsuit," and contributed his own funds to fuel the lawsuit. *Id.* at 3–4 (citing *Iris Connex*, 235 F. Supp. 3d 826, 852 (E.D. Tex. 2017)). Genentech contends that joinder would afford Dr. Donald due process because it would allow him a full opportunity to respond. *Id.* at 3.

United States District Court
Northern District of California

Genentech further asserts that joining Dr. Donald would be equitable because otherwise he would "escape responsibility for the substantial costs Genentech incurred while fending off this meritless and wasteful litigation." *Id.* Genentech points out that Phigenix did not pay "substantial" fees to former counsel. *Id.* at 4. On this basis, Genentech claims that relief against Phigenix would be meaningless if Phigenix lacks liquid assets. *Id.*

In addition to being "necessary," Genentech argues that joining Dr. Donald is "feasible" because subject matter jurisdiction, venue, and personal jurisdiction would be preserved. Mot. for Joinder 4. Regarding personal jurisdiction, Genentech contends that Dr. Donald has sufficient minimum contacts with this forum. In particular, Genentech asserts that Dr. Donald "purposefully availed himself" of this forum by directing license offers to Genentech personnel at its headquarters in South San Francisco and partially funding the litigation. *Id.* at 5. Genentech also avers that Dr. Donald's liability arises out of the actions that he took in this forum as the CEO of Phigenix. *Id.* at 5–6. Based on its view that Dr. Donald enjoys "significant if not complete control" over Phigenix and the fact that he conducted negotiations for licensing, Genentech argues that exercising personal jurisdiction over Dr. Donald comports with fair play and substantial justice. *Id.*

Phigenix raises several arguments in response to Genentech's position that joinder is necessary.[2] First, Phigenix contends that the Court can accord complete relief without Dr. Donald. Opp'n to Mot. for Joinder 3, ECF 415. In particular, Phigenix challenges Genentech's contention that Phigenix is insolvent. *Id.* According to Phigenix, it had a billing dispute with former counsel regarding their contractual relationship and now it has retained new counsel. *Id.* On this basis, Phigenix contends that Genentech fails to show that complete relief cannot be achieved without Dr. Donald. *Id.*

Second, in Phigenix's view, joining Dr. Donald for "fee purposes" would "improperly pierce the corporate veil." Opp'n to Mot. for Joinder 3. Phigenix argues that Genentech incorrectly claims that Phigenix is a "shell company." *Id.* at 4. In support of its position, Phigenix

---

[2] Phigenix and Dr. Donald filed a joint opposition to Genentech's Motion for Joinder. For simplicity, both parties will be referred to as Phigenix in this part of the order.

claims that it has "over one hundred shareholders, a board of directors, and has gone through multiple rounds of fundraising." *Id.* (citing Ex. C to Mannige Decl. ("Donald Decl.") ¶ 3, ECF 415-4)). Phigenix further asserts that *Iris Connex*, the case cited by Genentech, is factually distinguishable from this case. *See id.* at 4–6. In particular, Phigenix contends that Dr. Donald does not have significant control over Phigenix given that Dr. Donald holds only one out of five board of director seats. *Id.* at 6 (citing Donald Decl. ¶ 3). Dr. Donald's declaration states that the decision to file this suit was made by a majority vote of the board of directors. Donald Decl. ¶ 3. Furthermore, Phigenix avers that it had a team of lawyers who developed legal theories and that Dr. Donald did not develop Phigenix's infringement theory. Opp'n to Mot. for Joinder 6 (citing Donald Decl. ¶ 8). According to Phigenix, Dr. Donald created a diagram that he sent to Genentech for licensing discussions to explain his "understanding of the scientific process (not infringement)." *Id.* at 6–7.

Third, Phigenix avers that joining Dr. Donald after issuance of the final judgment would violate due process. *Id.* at 8.

Regarding Genentech's arguments on the "feasibility" of joinder, Phigenix challenges Genentech's assertion that this Court has personal jurisdiction over Dr. Donald. Opp'n to Mot. for Joinder 8. Phigenix argues that it was forced into this forum by Genentech's transfer motion and that Dr. Donald came here as Phigenix's corporate representative. *Id.* On this basis, Phigenix claims that Dr. Donald neither "purposefully direct[ed]" his activities nor "purposefully avail[ed]" himself of this forum. *Id.* In addition, Phigenix contends that Dr. Donald's actions were taken on behalf of Phigenix in his official capacity and thus those activities are not material for purposes of establishing minimum contacts. *Id.* at 8–9.

As a final point, Phigenix argues that Genentech's joinder motion is untimely because a final judgment has already been entered. Opp'n to Mot. for Joinder 10. Phigenix also states that there are serious questions of whether this Court has subject matter jurisdiction to join Dr. Carlton given that the case is "officially closed." *Id.*

### C. Discussion

The Court first addresses Phigenix's last argument that the motion to join Dr. Carlton is

16

untimely. As Genentech argues (Reply in Supp. of Mot. for Joinder 3–4, ECF 425), none of the cases cited by Phigenix concern a request for joinder that accompanied a motion for attorneys' fees under § 285. For example, the court in *O'Connor v. Wells Fargo Bank, Nat. Ass'n* denied the plaintiffs' motion to add a party after their complaint was dismissed in the entirety. No. 1:12-CV-2525-RWS, 2013 WL 2181276, at *2 (N.D. Ga. May 20, 2013). That situation is factually distinguishable from this case where Genentech seeks to join a party in connection with the relief it seeks in its motion for attorneys' fees, which is properly before the Court. To the extent that Phigenix contends that there is a blanket rule that joinder is always untimely after issuance of a final judgment, Phigenix has not shown support for its contention. Thus, the Court rejects that argument.

Moreover, Phigenix's argument that that there are "serious questions" of subject matter jurisdiction is unpersuasive. Phigenix cites *Cygnus Telecommunications Tech., LLC v. Totalaxcess.com, Inc.*, 345 F.3d 1372 (Fed. Cir. 2003) and *Intellect Wireless, Inc. v. HTC Corp.*, No. 09 C 2945, 2015 WL 4466955 (N.D. Ill. July 21, 2015) in support of its argument. Those cases, however, are distinguishable. *Cygnus Telecommunications* concerned whether the district court had subject matter jurisdiction over the question whether a defendant that acquired a patent infringer was subject to a judgment entered in an earlier lawsuit. 345 F.3d at 1374. That issue is not present here. In any case, the Federal Circuit held that subject matter jurisdiction existed. *Id.* at 1376. In *Intellect Wireless*, the court declined to consider adding a new party because personal judgment against the new party was sought "nearly three years after a judgment dismissing the case was entered." 2015 WL 4466955, at *1. To be sure, the court indicated that an "ancillary proceeding seeking to pierce the corporate veil" would be an "inappropriate proceeding on which to base supplemental jurisdiction." *Id.* There the court only addressed supplemental jurisdiction regarding a proceeding on veil piercing. But as discussed below, Genentech does not rely on a veil-piercing theory. In any case, the Court is not persuaded that the aforementioned discussion in *Intellect Wireless* supports Phigenix's position that this Court lacks subject matter jurisdiction. Here, Phigenix does not challenge that the Court has subject matter jurisdiction over this patent infringement action pursuant to 28 U.S.C. § 1338.

The Court next turns to whether joinder of Dr. Donald is necessary and feasible under Rule 19(a)(1).

### i. Whether Joinder of Dr. Donald is Necessary

Genentech begins its arguments by stating that awarding fees against Dr. Donald is appropriate "so long as (1) [he] is responsible for conduct that makes the case exceptional, (2) [he] is afforded due process, and (3) it is equitable to do so." Mot. for Joinder 2 (citing *Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 843 (E.D. Tex. 2017)) (alteration in original). But the standard Genentech cites relates to whether a new party can be *liable* for attorneys' fees under § 285 as opposed to whether that party must be joined. *See Iris Connex*, 235 F. Supp. 3d at 843. In *Iris Connex*, the court already had joined the new parties subject to the § 285 motion. *Iris Connex, LLC v. Dell, Inc.*, 15-cv-1915-JRG, Dkt. 74 (E.D. Tex. Dec. 6, 2016). Because the issue present in the instant motion is limited to joinder, the Court only determines whether it is proper to join Dr. Donald in this action. Once he is joined, Dr. Donald should be given an opportunity to defend himself from being liable for an attorneys' fees award. In fact, Genentech recognizes that "[j]oinder will allow Dr. Donald 'a full opportunity to respond, to contest liability for any sanction or fee award, and to otherwise receive due process.'" Mot. for Joinder 3 (citing *Iris Connex*, 235 F. Supp. 3d at 839–40).

"Under Rule 19(a)(1), a party is deemed 'necessary' if complete relief cannot be granted in its absence." *Disabled Rights Action Comm. v. Las Vegas Events, Inc.*, 375 F.3d 861, 879 (9th Cir. 2004). "This factor is concerned with consummate rather than partial or hollow relief as to those [who are] already parties." *Id.* (citation omitted). In conducting an analysis, a court inquires "whether the absence of the party would preclude the district court from fashioning meaningful relief as between the parties." *Id.* Genentech recognizes this standard in its motion. Mot. for Joinder 3.

As mentioned, Phigenix argues that this Court can afford complete relief without joining Dr. Donald. Opp'n to Mot. for Joinder 3. The Court disagrees. There is no evidence in the record that establishes that Phigenix currently has income or liquid assets. In fact, Dr. Donald's own declaration shows that Phigenix lacks sufficient financial resources. *See* Donald Decl. ¶ 4

("Realizing that successful litigation would provide the resources necessary to continue its research, Phigenix filed this suit."). While Dr. Donald declares that Phigenix has gone through multiple rounds of fundraising (Donald Decl. ¶ 3), he also testified that most of the funds were for the litigation (Ex. 1 to Chivvis Decl. in Supp. of Reply at 180:25–181:2, ECF 425-2). Tellingly, Phigenix does not provide any evidence of cash on hand, revenue, or current fundraising. Moreover, Genentech provides evidence that Phigenix has not paid its fees and costs to its former counsel for over a year. Ackerman Decl. in Supp. of Mot. to Withdraw ¶ 5, ECF 346-2. According to former counsel, Phigenix was obligated to pay a fixed percentage of the legal fees and pay all costs but it did not do so. *Id.* ¶ 3. While Phigenix asserts that it had a billing dispute (Donald Decl. ¶ 5), there is no evidence that Phigenix was able to pay the disputed fees or the dispute was resolved in its favor. The fact that Phigenix hired new counsel without more does not evince its ability to pay for the attorneys' fees award.

Phigenix also contends that Genentech improperly attempts to pierce the corporate veil in the joinder motion. Opp'n to Mot. for Joinder 3–7. However, Genentech asserts that it does not rely on piercing the corporate veil to join Dr. Donald. *See* Reply in Supp. of Mot. for Joinder 3 (arguing that *Iris Connex* did not require piercing the corporate veil); Hearing Tr. 40:8–9, ECF 441 (Genentech arguing that "this [case] is not about piercing the corporate veil in the conventional business law sense").

It is well established that an individual officer of a corporation may be joined in his or her sole capacity based on that individual's conduct. *Iris Connex*, 235 F. Supp. 3d at 843–44, 846. Such a joinder is not based on piercing the corporate veil (or alter ego) theory. As an example, *Iris Connex* cites *Ohio Cellular Products Corp. v. Adams USA, Inc.*, 175 F.3d 1343 (Fed. Cir. 1999). In *Ohio Cellular*, the Federal Circuit affirmed the district court's decision to join Mr. Nelson who was the president and shareholder of the plaintiff corporation (i.e., the patent exclusive licensee) in his individual capacity for the purpose of subjecting him to attorneys' fees. 175 F.3d at 1344–45, 1349–50. The court held that "[i]t is important to note that Defendants were

1    not required to 'pierce the corporate veil' in order to add Nelson as a party." *Id.* at 1349 n.6.[3]

2    Therefore, Genentech need not rely on a veil-piercing theory to join Dr. Donald.

3         Distinguishing *Iris Connex*, Phigenix asserts that Genentech has not "pierce[d] the

4    corporate veil." Opp'n to Mot. for Joinder 3–7.  However, as mentioned above, Genentech does

5    not (and need not) rely on a veil-piercing theory.  *See* Reply in Supp. of Mot. for Joinder 3.  Thus,

6    to the extent that Phigenix argues that Genentech cannot pierce the corporate veil, the Court finds

7    that argument to be irrelevant.

8         To be sure, *Iris Connex* involved facts that are not present in this case.  For instance, unlike

9    Phigenix, the plaintiff Iris Connex was formed less than two months before it filed the patent

10   infringement suit and did not open a bank account for seven months.  *Iris Connex*, 235 F. Supp. 3d

11   at 837, 840.  Iris Connex was wholly owned by Q Patents, a holding company owned by an

12   intellectual property lawyer named Mr. Yates.  *Id.* at 833–34.  Mr. Yates intentionally did not

13   disclose the true corporate structure of Q Patents and Iris Connex to his attorneys who then failed

14   to file a correct corporate disclosure statement.  *Id.* at 837, 860–61.  Many of the extreme facts in

15   *Iris Connex* do not exist here.  That said, the egregiousness of Mr. Yates' conduct primarily

16   pertained to the issue of whether *Iris Connex* qualified as an "exceptional" case rather than the

17   issue of joinder.  As to exceptionality, that issue requires a case-by-case analysis under the totality

18   of circumstances, *Octane Fitness*, 134 S. Ct. at 1756, and the Court has already ruled that this

19   action is an exceptional case in the earlier portion of this order.

20        Regarding the issue of joinder, the Court agrees with Genentech's argument that it would

21   be unable to obtain meaningful relief if Dr. Donald is not joined.  As previously discussed, the

22   Court finds that Phigenix lacks financial resources and Genentech would be unable to recover a

23   meaningful attorneys' fees award.  Phigenix's inability to pay the award would result in a "partial

24   or hollow relief."  *Disabled Rights*, 375 F.3d at 879.

25        Moreover, the evidence supports Genentech's position that Dr. Donald had control over

26

27   _____
     [3] The Supreme Court reversed *Ohio Cellular* on other grounds. The district court erred by adding
     Nelson and simultaneously amending the judgment to impose liability for attorney's fees without
28   giving him an opportunity to challenge that imposition.  *Nelson v. Adams USA, Inc.*, 529 U.S. 460,
     471–72, (2000).

1  this litigation.  He alone holds more than 50% ownership of Phigenix.  Ex. 1 to Chivvis Decl. in

2  Supp. of Mot. for Joinder at 237:15-22, ECF 399-1.  Dr. Donald's wife is the only other employee

3  of Phigenix.  Ex. A to Jacobs Decl. in Supp. of Mot. for Sanctions ("Donald Dep.") at 11:16–22,

4  ECF 199-1.

5       To counter the evidence, Phigenix submits that Dr. Donald holds only one out of five

6  board of director seats.[4]  Donald Decl. ¶ 3.  According to Dr. Donald, the board of directors

7  decided to file this lawsuit by a majority vote.  *Id.*  However, Phigenix provides no evidence such

8  as board minutes to corroborate Dr. Donald's claim.  Nor does the record reflect that any other

9  individual from Phigenix directed this litigation.  Given Dr. Donald's controlling shareholder

10  power and his status as the only person from Phigenix who is involved in this litigation, the Court

11  finds that Dr. Donald's activities may potentially subject him to liability for attorneys' fees and

12  that he should be joined in this action.  *See Ohio Cellular*, 175 F.3d at 1349 n.6 (holding that a

13  party's status as the president and sole shareholder is relevant for the purpose of determining

14  whether the party should be added to the case).

15       As a final point, Phigenix cites several cases which concern due process rights.  Opp'n to

16  Mot. for Joinder 7–8 (citing *Nelson v. Adams USA, Inc.*, 529 U.S. 460 (2000); *Applied Materials,*

17  *Inc. v. Multimetrixs, LLC*, No. C 06-07372 MHP, 2009 WL 1457979 (N.D. Cal. May 26, 2009);

18  *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 151 F. Supp. 2d 1192 (C.D. Cal. 2001), *vacated*

19  *and remanded on other grounds*, 351 F.3d 1139 (Fed. Cir. 2003)).  But those cases, as Genentech

20  argues, do not preclude joinder of Dr. Donald.

21       In *Nelson*, the Supreme Court held that the district court erred by adding Mr. Nelson and

22  then imposing liability for attorneys' fees without affording an opportunity to defend himself from

23  liability.  529 U.S. at 471–72.  The Supreme Court made clear that its decision held only that

24  Nelson had the "right to contest on the merits his personal liability for fees originally sought and

25  awarded solely against the original plaintiff."  *Id.* at 472.  Unlike *Nelson*, here, joinder would

26  afford Dr. Donald due process because it will allow him a full opportunity to respond.

27

28  _____

[4] One of the directors is Dr. Donald's wife.  Ex. A to Mannige Decl. at 12:18–21, ECF 415-2.

21

Likewise *Applied Materials* and *Ulead* do not compel a conclusion that joining Dr. Donald would violate his due process rights. In both cases, the court denied imposing liability on a new party who was not added to the action. *See Applied Materials*, 2009 WL 1457979, at *5; *Ulead*, 151 F. Supp. 2d at 1208. That is not the case here.

For the foregoing reasons, the Court is unpersuaded by Phigenix's argument that it is improper to join Dr. Donald. The Court concludes that it is "necessary" to join Dr. Donald to afford Genentech relief.

The Court next turns to the second prong of the Rule 19(a) analysis.

### ii. Whether Joinder of Dr. Donald is Feasible

To join a party under Rule 19(a), a court must determine whether joinder of the new party is "feasible." *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005). "Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Id.* Phigenix challenges Genentech's assertion that this Court has specific personal jurisdiction over Dr. Donald. Opp'n to Mot. for Joinder 8.

Federal Circuit law governs the issue of personal jurisdiction where the case concerns a matter unique to patent law. *See Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348–49 (Fed. Cir. 2002). Because the instant motion intimately relates to relief for an "exceptional" case award under § 285, the Court looks to Federal Circuit precedent. Because both Ninth Circuit and the Federal Circuit apply the same three-part test when applying the Supreme Court's minimum contacts standard, courts within this circuit have cited both circuits' precedent in determining personal jurisdiction. *Wistron Corp. v. Phillip M. Adams & Assocs.*, LLC, No. C-10-4458 EMC, 2011 WL 1654466, at *3 (N.D. Cal. Apr. 28, 2011). In fact, both parties cite to Ninth Circuit authority. Moreover, when the "determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted," the party asserting jurisdiction bears only a *prima facie* burden. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Courts engage in a two-step inquiry to analyze personal jurisdiction: (1) whether the state's

long-arm statute extends to a defendant;[5] and (2) whether the assertion of personal jurisdiction violates due process. *Deprenyl Animal Health*, 297 F.3d at 1348. "[B]ecause California's long-arm statute is coextensive with the limits of due process, the two inquiries collapse into a single inquiry: whether jurisdiction comports with due process." *Dainippon Screen Mfg. Co. v. CFMT, Inc.*, 142 F.3d 1266, 1270 (Fed. Cir. 1998).

The three factors for assessing whether the exercise of specific personal jurisdiction comports with due process are: "1) whether the defendant 'purposefully directed' its activities at residents of the forum; 2) whether the claim 'arises out of or relates to' the defendant's activities in the forum; 3) whether the exercise of jurisdiction is 'reasonable and fair.'" *Deprenyl Animal Health*, 297 F.3d at 1351; *see also Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801–02 (9th Cir. 2004)). As to the third factor (also called the "fair play and substantial justice" prong), the burden of proof is on the defendant (in this case, on Dr. Donald) to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362–63 (Fed. Cir. 2006). The "minimum contacts" analysis focuses on "the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citation omitted). "[T]he relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Id.* (emphasis in original). The "plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State." *Id.* at 286.

The Court now addresses the three factors below.

### a. Purposeful Availment

Genentech points to several facts and asserts that Dr. Donald purposefully availed himself of this forum. Mot. for Joinder 5. The Court agrees. First of all, Dr. Donald personally sent multiple licensing offers to Genentech personnel located in South San Francisco. *See Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1354 (Fed. Cir. 2017) (holding that the

---

[5] Here, the "defendant" is Dr. Donald from whom Genentech seeks attorneys' fees.

1    patentee's multiple notice letters sent to the accused infringer located in California supported a

2    showing that the minimum contacts requirement is satisfied).  At least one of Dr. Donald's

3    licensing letters was physically sent to California by overnight mail.  *See* Ex. A to Schwartz Decl.

4    in Supp. of Mot. to Dismiss; *Walden*, 571 U.S. at 285 ("[P]hysical entry into the State—either by

5    the defendant in person or through an agent, goods, *mail*, or some other means—is certainly a

6    relevant contact." (emphasis added)).  To be sure, "sending infringement letters, without more

7    activity in a forum state, is not sufficient."  *Dainippon Screen*, 142 F.3d at 1270.  But here, Dr.

8    Donald did not merely send a demand letter to Genentech.  He further pursued a contractual

9    relationship with Genentech and engaged in telephonic licensing discussions with Genentech's

10   personnel in South San Francisco.  The fact that it does not appear that Dr. Donald physically

11   visited Genentech in California during the licensing negotiations does not defeat the minimum

12   contact analysis.  *Walden*, 571 U.S. at 285 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462,

13   476, (1985)) (holding that physical presence in the forum is not a perquisite to jurisdiction).

14        Moreover, Dr. Donald partially funded[6] and pressed forwarded with this lawsuit, which

15   was transferred to this District.  In fact, this action has been litigated here since 2015.  ECF 67.

16   He also personally attended hearings for this suit in California.  ECF 228 at 3:11–14; *see also* Mot.

17   for Joinder 5; Opp'n to Mot. for Joinder 9.  In Phigenix's view, the litigation activities in this

18   forum do not matter because the case was filed in the Northern District of Georgia but then

19   transferred to this District over Phigenix's objection.  Opp'n to Mot. for Joinder 8–9.  The Court

20   disagrees.  When Dr. Donald as CEO of Phigenix (the sole employee other than his wife, Donald

21   Dep. at 11:16–22) filed suit in the Northern District of Georgia, it was entirely foreseeable that the

22   action would be transferred to this District where Genentech is headquartered.  As such, the

23   transfer of the lawsuit to this jurisdiction was not "solely . . . the result of random, fortuitous, or

24   attenuated contacts or the unilateral activity of another party or a third person."  *Burger King*, 471

25   U.S. at 105.  By filing suit, Dr. Donald exposed himself to the possibility of the need to litigate

26   this infringement action in California where Genentech is located, and the fact that he had to do so

27

28   _____

     [6] Dr. Donald states that he loaned funds to Phigenix.  Donald Decl. ¶ 7.

should come as no surprise.

Phigenix further argues that Dr. Donald's actions taken on behalf of Phigenix do not subject him to personal jurisdiction because "the acts of corporate officers and directors in their official capacities . . . are . . . not material for purposes of establishing minimum contacts as to the individuals." Opp'n to Mot. for Joinder 8 (citing *Colt Studio, Inc. v. Badpuppy Enter.*, 75 F. Supp. 2d 1104, 1111 (C.D. Cal. 1999)). However, such a broad proposition has been rejected by numerous courts. *See, e.g.*, *PLS-Pac. Laser Sys. v. TLZ Inc.*, No. C-06-04585 RMW, 2007 WL 2022020, at *6 (N.D. Cal. July 9, 2007). As the Supreme Court has held, one's "status as [an] employee[] does not somehow insulate [him] from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790, (1984). The Court therefore rejects Phigenix's argument that there is no personal jurisdiction over Dr. Donald because he acted "pre-suit and throughout this litigation" under his official capacity.

Phigenix also contends that Dr. Donald's actions during the course of this litigation cannot subject him to jurisdiction on the grounds that the "proper focus in the specific jurisdiction analysis is on those contacts leading up to and surrounding the accrual of the cause of action." Opp'n to Mot. for Joinder 9 (quoting 16-108 Moore's Federal Practice – Civil § 108.42 (2017)). However, Moore's Federal Practice does not help Phigenix's contention. As Genentech argues (Reply in Supp. of Mot. for Joinder 4), Phigenix overlooks the fact that Genentech's relief for attorneys' fees relates to Dr. Donald's litigation conduct in this forum. Thus, consistent with the proposition cited from Moore's Federal Practice, it is proper to consider Dr. Donald's litigation activities in this forum that lead to the Court's finding that this suit is an "exceptional" case. In other words, Phigenix provides no support for the proposition that a court must assess specific jurisdiction over a non-party for an attorneys' fees award based only on contacts made before the plaintiff's infringement claim accrued.

As discussed in relation to Genentech's Motion for Attorneys' Fees, the continued litigation of this suit—particularly after the issuance of the First Summary Judgment Order— contributes to the finding of an "exceptional" case. By pointing to the litigation activities in this forum and Dr. Donald's pre-suit licensing activities directed to Genentech in California, the Court

finds that Genentech has made a *prima facie* showing that Dr. Donald purposefully availed himself of this forum.

**b. Whether the Claim Arises out of or Relates to Activities in this Forum**

Genentech argues that Dr. Donald's liability for attorneys' fees under § 285 "directly arises" out of this patent infringement action litigated in this forum. Mot. for Joinder 5. Genentech contends that the "corporate form poses no barrier" for this Court to exercise personal jurisdiction over Dr. Donald. *Id.* at 5–6 (collecting cases).

Phigenix's counterargument is that the acts of corporate officers that were conducted in their official capacities do not matter for purposes of establishing minimum contacts with respect to those individuals. Opp'n to Mot. for Joinder 8. The Court addressed this argument above. Phigenix's position contradicts the holdings of numerous courts. *See, e.g.*, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 (1984) ("[W]e today reject the suggestion that employees who act in their official capacity are somehow shielded from suit in their individual capacity.").

Phigenix also contends that it has a "right to enforce its intellectual property and there is nothing improper about Dr. Donald's participation in that process." Opp'n to Mot. for Joinder 9. Whether it was *proper* for Dr. Donald to participate in this litigation is irrelevant to the determination of jurisdiction. The minimum contacts analysis only inquires whether Dr. Donald had contacts with this forum not the lawfulness of his activities.

Based on the same evidence discussed for the first factor, the Court finds that Genentech's request for attorneys' fees is related to Dr. Donald's pre-suit conduct in this forum and litigation activities in this Court.

**c. Fair Play and Substantial Justice**

The third factor in the minimum contacts analysis concerns whether exercising jurisdiction would be unreasonable. As the party potentially subject to jurisdiction, Dr. Donald has the burden to "present[] a compelling case that other considerations render the exercise of jurisdiction so unreasonable as to violate 'fair play and substantial justice.'" *Deprenyl Animal Health*, 297 F.3d at 1351 (citation omitted); *see also Schwarzenegger*, 374 F.3d at 802.

In addressing whether joinder of Dr. Donald is feasible, Phigenix does not directly address

26

the "fair play and substantial justice" factor. Phigenix fails to show that this Court's exercise of personal jurisdiction over Dr. Donald would be "so unreasonable." *Deprenyl Animal Health*, 297 F.3d at 1351. On the other hand, Genentech points to numerous factors that establish that exercising jurisdiction would be reasonable. Genentech asserts that Dr. Donald has significant if not complete control over decisions made on behalf of Phigenix. Mot. for Joinder 6. Indeed, Dr. Donald owns more than 50% of Phigenix. Ex. 1 to Chivvis Decl. in Supp. of Mot. for Joinder at 237:15-22. While Phigenix may have had part-time administrative help in the past, Dr. Donald's wife is the only other employee of Phigenix. Donald Dep. at 11:16–22. The evidence shows that Dr. Donald personally negotiated licensing with Genentech and also partially funded this litigation. There is no evidence that any other individual from Phigenix has been directly involved in this matter. Given Dr. Donald's control over Phigenix and his direct participation in this litigation, the Court finds that exercising jurisdiction over him would not violate fair play and substantial justice.

### d. Conclusion

Accordingly, the Court concludes that Genentech has satisfied the first two factors of the specific personal jurisdiction analysis and Phigenix has failed to make a "compelling case" that the exercise of jurisdiction would be unreasonable under the third factor. *Deprenyl Animal Health*, 297 F.3d at 1351; *Schwarzenegger*, 374 F.3d at 801. Accordingly, the Court may exercise specific personal jurisdiction over Dr. Donald and finds that joinder is feasible.

The parties' dispute whether Dr. Donald is subject to personal jurisdiction under an alter ego theory and whether reopening discovery would be proper. *Compare* Mot. for Joinder 6 n.3 *with* Opp'n to Mot. for Joinder 9 n.3. The Court need not address the issue of alter ego because Genentech has shown that specific personal jurisdiction exists based on a minimum contacts analysis. Moreover, the parties have not adequately briefed the alter ego theory.

## IV. ORDER

For the foregoing reasons, the Court finds that joinder of Dr. Donald is necessary and feasible pursuant to Rule 19(a)(1). The Court GRANTS Genentech's request to join Dr. Donald in this action.

## V. CONCLUSION

IT IS HEREBY ORDERED that:

(1) The Court finds this action to be an "exceptional" case pursuant to 35 U.S.C. § 285.

(2) Genentech's Motion for Attorneys' Fees is GRANTED IN PART as to Phigenix.

(3) Genentech's Motion for Attorneys' Fees is DENIED IN PART without prejudice as to Dr. Donald. Genentech may refile its motion to assess fees against Dr. Donald along with its motion for determination of reasonable fees.

(4) Phigenix shall be liable for Genentech's attorneys' fees accrued since the issuance of the First Summary Judgment Order on February 24, 2017 subject to the Court's determination of reasonable fees.

(5) Genentech's Motion for Joinder is GRANTED.

(6) The parties shall meet and confer on a reasonable and appropriate briefing schedule regarding the amount of fees that should be awarded to Genentech and whether Dr. Donald should be jointly and severally liable for those fees. The parties shall submit a proposed stipulated briefing schedule **on or before August 27, 2018**.

(7) As part of its fees motion, Genentech is requested to provide the Court with a summary of hours expended on the major tasks as set forth on the chart below. The information requested will provide the Court with a clear understanding of the Lodestar amount requested by Genentech and assist the Court in assessing the reasonableness of the hours expended.

| Task | Jacobs | Kreeger | Chivvis | D'Amore | etc. |
|------|--------|---------|---------|---------|------|
| Commencing February 24, 2017 | -- | -- | -- | -- | -- |
| Discovery, including depositions of experts | | | | | |
| Motion to Withdraw as Attorney | | | | | |
| Second Motion for Summary Judgment | | | | | |
| Motion to Strike Testimony of | | | | | |

| | | | | | |
|---|---|---|---|---|---|
| Phigenix's Experts | | | | | |
| Motion to Strike Testimony of Genentech's Experts | | | | | |
| Miscellaneous (describe) | | | | | |
| Motions for Fees, Joinder | | | | | |
| Total Hours | | | | | |

While the Court has suggested the above categories of tasks, Genentech may add or modify categories as necessary to allow the Court to have a full understanding of the hours expended on this action.  The Court is primarily interested in the amount of hours spent per task and per attorney, along with the effective billing rate associated with those hours.

The Court also orders Genentech to produce its full timekeeping records to Phigenix so that Phigenix can evaluate the reasonableness of the fees sought by Genentech.

**IT IS SO ORDERED.**

Dated:  August 13, 2018

_____
BETH LABSON FREEMAN
United States District Judge