MICHAEL A. JACOBS (CA SBN 111664)
MJacobs@mofo.com
MATTHEW I. KREEGER (CA SBN 153793)
MKreeger@mofo.com
MATTHEW A. CHIVVIS (CA SBN 251325)
MChivvis@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

Attorneys for Defendant
GENENTECH, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PHIGENIX, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>GENENTECH, INC.,<br><br>        Defendant,<br><br>   v.<br><br>CARLTON DONALD,<br><br>        Third Party Defendant. | Case No. C 15-01238 BLF<br><br>**GENENTECH, INC.'S MOTION FOR AWARD OF ATTORNEY FEES AGAINST DR. DONALD AND DETERMINATION OF FEE AMOUNT**<br><br>Date: March 21, 2019<br>Time: 9:00 AM<br>Ctrm: Courtroom 3 – 5th Floor |

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | RELEVANT FACTUAL AND PROCEDURAL BACKGROUND | 1 |
| III. | LEGAL STANDARD | 2 |
| IV. | ARGUMENT | 3 |
| | A. The Court Should Hold Dr. Donald Jointly and Severally Liable for Fees Because He Was Responsible for the Exceptional Conduct | 3 |
| | B. Alternatively, the Court Should Hold Dr. Donald Jointly and Severally Liable for Fees Because He Is Phigenix's Alter Ego | 5 |
| | C. The Court Has Afforded Dr. Donald Due Process | 8 |
| | D. The Court Should Order That the Fees Genentech Requests Are Reasonable | 8 |
| V. | CONCLUSION | 10 |

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*AlphaCap Ventures LLC v. Gutride Safier LLP*,
  Case No. 2017-2414, slip op (Fed. Cir. 2018) ........................................................................4

*Alzheimer's Inst. of Am. v. Eli Lilly & Co.*,
  No. 10-cv-00482-EDL, 2016 U.S. Dist. LEXIS 189427 (N.D. Cal. Apr. 14,
  2016) ......................................................................................................................................10

*Bell v. Clackamas Cnty.*,
  341 F.3d 858 (9th Cir. 2003)..................................................................................................10

*D.O.C.C., Inc. v. Spintech, Inc.*,
  93 Civ. 4679 (RPP), 1994 U.S. Dist. LEXIS 21528 (S.D.N.Y. Aug. 15, 1994)........................3

*Hughes v. Novi Am., Inc.*,
  724 F.2d 122 (Fed. Cir. 1984)..................................................................................................5

*Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc. (U.S.A.)*,
  No. CV 08-7587 R JWJX, 2009 U.S. Dist. Lexis 132872 (C.D. Cal. Dec. 14,
  2009) ......................................................................................................................................10

*Iris Connex, LLC v. Dell, Inc.*,
  235 F. Supp. 3d 826 (E.D. Tex. 2017)..........................................................................2, 3, 7, 8

*Kilopass Tech. Inc. v. Sidense Corp.*,
  82 F. Supp. 3d 1154 (N.D. Cal. 2015) ..................................................................................2, 9

*Larocca v. LMR Partners, Inc.*,
  B271298, 2018 Cal. App. Unpub. LEXIS 1191 (Cal. Ct. App. Feb. 23, 2018) .......................6

*Lumen View Tech. LLC v. Findthebest.com, Inc.*,
  811 F.3d 479 (Fed. Cir. 2016)...............................................................................................3, 8

*Mach. Corp. of Am. v. Gullfiber AB*,
  774 F.2d 467 (Fed. Cir. 1985)..........................................................................................2, 3, 5

*Nelson v. Adams USA, Inc.*,
  529 U.S. 460 (2000).................................................................................................................8

*Ohio Cellular Prods. Corp. v. Adams USA, Inc.*,
  175 F.3d 1343 (Fed. Cir. 1999)........................................................................................3, 5, 6

*In re OptumInsight, Inc.*,
  No. 2017-116, 2017 U.S. App. LEXIS 13483 (Fed. Cir. July 20, 2017)..................................4

*Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*,
  806 F.2d 1565 (Fed. Cir. 1986)......................................................................................2, 6

*Pac. Mar. Freight, Inc. v. Foster*,
  No. 10-cv-0578-BTM-BLM, 2010 U.S. Dist. LEXIS 87205, 2010 WL
  3339432 (S.D. Cal. Aug. 24, 2010)...................................................................................6

*In re Schwarzkopf*,
  626 F.3d 1032 (9th Cir. 2010)...........................................................................................6

*SUFI Network Servs., Inc. v. United States*,
  785 F.3d 585 (Fed. Cir. 2015)............................................................................................3

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  745 F.3d 513 (Fed. Cir. 2014)............................................................................................9

*View Eng'g, Inc. v. Robotic Vision Sys., Inc.*,
  208 F.3d 981 (Fed. Cir. 2000).........................................................................................10

*Wechsler v. Macke Int'l Trade, Inc.*,
  486 F.3d 1286 (Fed. Cir. 2007)..........................................................................................6

**Statutes**

35 U.S.C. § 285 ............................................................................................................... *passim*

On March 21, 2019, at 9AM, before the Hon. Beth L. Freeman, in Courtroom 3, 5th Floor, of the above-entitled Court located at 280 South 1st Street, San Jose, California, Genentech, Inc. will, and hereby does, move for the Court to hold that Dr. Carlton Donald is jointly and severally liable for its fee award against Phigenix, Inc. pursuant to 35 U.S.C. § 285 and for a determination of the amount of fees for which Phigenix and Dr. Donald are liable. The fees that Genentech seeks are described in the declaration of Matthew A. Chivvis, submitted with this motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

In its order on Genentech's motion for an exceptional case finding and award of attorney fees, the Court held that Genentech "is entitled to reasonable attorneys' fees accrued since the issuance of the First Summary Judgment Order on February 24, 2017." (ECF No. 442 at 13.) The Court also joined Dr. Donald to the case pursuant to Rule 19, finding that Genentech would be "unable to obtain meaningful relief if Dr. Donald is not joined." (*Id.* at 20, 27.) Phigenix and Dr. Donald should be held jointly and severally liable for the Court's award of attorney fees, which should be in the amount of $2,267,004.72.

### II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

Genentech provided a detailed factual background in its initial Motion for an Exceptional Case Finding and Award of Attorney Fees. (ECF No. 400.) Briefly, Phigenix filed this lawsuit against Genentech more than four years ago. (ECF No. 1.) Genentech informed Phigenix that the complaint warranted Rule 11 sanctions, and eventually filed a motion on that basis. (ECF No. 198.) The Court denied the sanctions motion but noted the "potentially significant weaknesses in Phigenix's theory of infringement." (ECF No. 290.) Genentech filed a first motion for summary judgement on written description grounds. (ECF No. 257.) The Court granted partial summary judgment, finding that the asserted patent was not entitled to Phigenix's claimed priority date. (ECF No. 327.)

Despite losing this priority date, Dr. Donald—as CEO, majority shareholder, and sole Phigenix representative—had Phigenix press forward with the case. To avoid the prior art, Phigenix secretly changed its infringement theory, a fact that Genentech first learned at the

deposition of Phigenix's technical expert. Genentech never intended, however, for patients to be treated in the manner that Phigenix's expert described. (ECF No. 347.) Genentech thus asked for, and received, summary judgment on this basis, and the Court struck Phigenix's untimely expert opinion as well. (ECF No. 395 at 16.) Because Phigenix's untenable position had its roots in the very issue Genentech first raised in Rule 11 proceedings, Genentech then moved for an exceptional case finding and award of attorney fees. (ECF No. 400.) Fearing Phigenix was insolvent, Genentech also moved to join Dr. Donald as a necessary party. (ECF No. 398.)

On August 12, 2018, the Court found this case exceptional as of February 24, 2017, and awarded attorney fees as to Phigenix. (ECF No. 442.) The Court also granted the motion for joinder, finding that "Genentech would be unable to recover a meaningful attorneys' fees award" without Dr. Donald. (*Id.* at 20.) But the Court denied without prejudice Genentech's request to hold Dr. Donald directly liable for fees out of due process concerns. The Court directed Genentech to re-file its motion against Dr. Donald now that he is a party to the case. (*Id.* at 28.)

### III. LEGAL STANDARD

A court may hold an individual jointly and severally liable for a § 285 award against a corporation where the individual is responsible for conduct that makes the case exceptional. *Mach. Corp. of Am. v. Gullfiber AB*, 774 F.2d 467, 475 (Fed. Cir. 1985); *see Iris Connex, LLC v. Dell, Inc.*, 235 F. Supp. 3d 826, 843-44 (E.D. Tex. 2017) (citing *Ohio Cellular Prods. Corp. v. Adams USA, Inc.*, 175 F.3d 1343, 1350 (Fed. Cir. 1999)). Alternatively, a court may hold an individual jointly and severally liable for the acts of a corporation where the individual is the corporation's alter ego. *See Orthokinetics, Inc. v. Safety Travel Chairs, Inc.*, 806 F.2d 1565, 1578-79 (Fed. Cir. 1986).

A court should award full attorney fees for the period of exceptionality. *Kilopass Tech. Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1166 (N.D. Cal. 2015) ("[T]here is nothing in the legislative history or applicable case law to suggest that—once a determination that a case is 'exceptional' has been made—courts should balk at awarding full fees. To the contrary, § 285 is a means to 'make whole a party injured by an egregious abuse of the judicial process.'"). Such an award is typically calculated "by multiplying a reasonable hourly rate by the reasonable number

of hours required to litigate a comparable case," i.e., the lodestar method. *Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479, 483 (Fed. Cir. 2016) (internal quotations and citations omitted). A rate is reasonable if it is "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *SUFI Network Servs., Inc. v. United States*, 785 F.3d 585, 594 (Fed. Cir. 2015) (citation omitted).

## IV. ARGUMENT

The Court should hold Dr. Donald jointly and severally liable for its fee award against Phigenix. He is not only responsible for the conduct on which the Court based its exceptional case finding, but also the alter ego of Phigenix—an unfunded, paper shell company. Either basis supports the award of fees against Dr. Donald individually. And he cannot escape liability on procedural grounds. The Court has afforded Dr. Donald ample process.

Since February 24, 2017, Genentech has incurred $2,559,601.67 fees defending this action. Genentech requests $2,267,004.72 of these fees, representing a discount of $292,596.95. These fees are reasonable, and the Court should award them.

### A. The Court Should Hold Dr. Donald Jointly and Severally Liable for Fees Because He Was Responsible for the Exceptional Conduct

Dr. Donald's conduct warrants direct liability for fees here because "his conduct supports a finding that the case is exceptional." *Mach. Corp. of Am.*, 774 F.2d at 475; *see also Ohio Cellular Prods. Corp.*, 175 F.3d at 1350 (finding third party owner of plaintiff corporation liable for fees where the conduct "giving rise to the claim for attorney fees is indeed the very same conduct that forms the basis for naming [him] as a third-party defendant"), *judgment rev'd on other grounds*, 529 U.S. 460 (2000); *Iris Connex*, 235 F. Supp. 3d at 844 (assessing fees against third party where the third party was "responsible for the predicate acts rendering the case exceptional"); *D.O.C.C., Inc. v. Spintech, Inc.*, 93 Civ. 4679 (RPP), 1994 U.S. Dist. LEXIS 21528, at *50-51 (S.D.N.Y. Aug. 15, 1994) (finding that "active participation" in litigation by corporate officer supported award of fees against him).

***Dr. Donald acted as the driving force behind Phigenix's litigation strategy from the start.*** As the Court found, Dr. Donald exercised direct "control over this litigation"; "[h]e alone

GENENTECH'S MOTION FOR ATTORNEY FEES
CASE NO. C 15-01238 BLF
sf-3940691

3

holds more than 50% ownership of Phigenix"; and his "wife is the only other employee of Phigenix." (ECF No. 442 at 20-21; *see* ECF No. 399-1 at 237:15-22; ECF No. 199-1 at 11:16-22.) In addition, Dr. Donald developed Phigenix's infringement theories and directly communicated them to Genentech. (ECF No. 442 at 2; *see* ECF No. 37-4; ECF No. 37-5; 399-2 at 118:17-119:13.) He raised money to fund the litigation and contributed his own. (ECF No. 442 at 24; ECF No. 399-1 at 180:25-181:4; ECF No. 425-2 at 79:1-10, 180:6-9, 180:25-181:2.) And he personally attended court hearings and depositions in this lawsuit, holding himself out as Phigenix's sole representative. (ECF No. 442 at 24; *see, e.g.*, ECF No. 228 at 3:14.)

Based on these facts, the Court correctly determined that "Dr. Donald's controlling shareholder power and his status as the only person from Phigenix who is involved in this litigation" are relevant to his liability for attorney fees. (ECF No. 442 at 21 (citing *Ohio Cellular*).) He was, and is, the party ultimately responsible for the conduct that the Court found exceptional. Only Dr. Donald could have authorized initiating this case without pre-suit testing in spite of art showing prior development of the accused product. (*Id.* at 8-9.) Only he could have pulled the trigger on *inter partes* review proceedings against Genentech's patents despite no infringement assertion by Genentech. (*Id.* at 12-13.) And only he could have decided to proceed with the case after February 24, 2017, when Phigenix's infringement allegations became untenable. (*Id.* at 11-12.) Dr. Donald cannot blame these client decisions on Phigenix's lawyers. *AlphaCap Ventures LLC v. Gutride Safier LLP*, Case No. 2017-2414, slip op at *16 (Fed. Cir. 2018) ("It is the client's decision whether to capitalize its business, to acquire the patents, to decide whether to practice the patents, [and] whether and who to sue. . . ."). His use of privilege as a shield also bars this defense.[1] *See In re OptumInsight, Inc.*, No. 2017-116, 2017 U.S. App. LEXIS 13483, at *7 (Fed. Cir. July 20, 2017) (unpublished) ("attorney-client privilege cannot be used as both a sword and a shield").

***Federal Circuit precedent confirms that the Court can, and should, hold Dr. Donald***

---

[1] Asserting privilege, Dr. Donald and Phigenix refused to produce documents, and Dr. Donald refused to answer questions, on his role in developing Phigenix's litigation positions. (ECF No. 425-2 at 211:8-212:8; ECF No. 425-3.)

*directly liable for fees for the exceptional conduct in this case.* In *Ohio Cellular*—a decision on which this Court relied in joining Dr. Donald—the Federal Circuit found a third party liable for attorney fees alongside the plaintiff corporation because, as the president and principal shareholder of the plaintiff, he was responsible for the exceptional conduct. 175 F.3d at 1350-51.[2] *Hughes v. Novi Am., Inc.*, too, is in accord. 724 F.2d 122 (Fed. Cir. 1984). There, a trial court found the named inventor and the plaintiff corporation jointly and severally liable for fees because the inventor's conduct was the basis for the award. *Id.* at 124-25. The Federal Circuit affirmed, noting that "the trial court took pains to look at [his] personal conduct during the trial in making the award against him." *Id.* at 126. Even *Machinery Corp.*, which overturned a fee award, demonstrates that the Court can assess fees against Dr. Donald. The Federal Circuit reversed and remanded that case because the trial court used the wrong standard for exceptionality. 774 F.2d at 475. But it held "that an individual may be assessed fees under § 285 if his conduct supports a finding that the case is exceptional" and instructed the trial court to determine whether that was true on remand. *Id.*

Dr. Donald is more than just a majority owner of Phigenix and the named inventor of the patent in suit; he personally directed Phigenix's actions. There is no other Phigenix decision-maker who could have done so. Hence, Dr. Donald cannot dispute that he is responsible for the conduct that the Court found exceptional, from Phigenix's early communications with Genentech to its decision to press ahead with this lawsuit after the Court's February 24, 2017 ruling. This basis, alone, is sufficient to award fees against him.

**B. Alternatively, the Court Should Hold Dr. Donald Jointly and Severally Liable for Fees Because He Is Phigenix's Alter Ego**

As a separate and alternative basis for holding Dr. Donald liable for fees, the Court should find that he is an alter ego of Phigenix. The Court previously decided it need not determine whether Dr. Donald is Phigenix's alter ego for joinder purposes—and under *Ohio Cellular*, that

---

[2] As the Court noted, the Supreme Court reversed *Ohio Cellular* on due process grounds. (ECF No. 442 at 20 n.3.) Here, that is not an issue because joinder "will allow [Dr. Donald] a full opportunity to respond." (*Id.* at 21.) This satisfies due process concerns. *See infra* Section IV.C.

was correct. 175 F.3d at 1349 n.6. Nonetheless, the record here supports a finding of alter ego liability, and the Court can, therefore, award fees against Dr. Donald on that basis as well. *See Orthokinetics, Inc.*, 806 F.2d at 1578-79 (reinstating verdict of individual liability for acts of corporation where veil piercing analysis supported it). Under California law, an individual is liable for acts performed in the name of a corporation as the corporation's alter ego:

> First, where there is such a unity of interest and ownership that the individuality, or separateness, of the said person and corporation has ceased; and, second, where adherence to the fiction of the separate existence of the corporation would . . . sanction a fraud or promote injustice.

*In re Schwarzkopf*, 626 F.3d 1032, 1038 (9th Cir. 2010) (internal citations omitted).[3] Both circumstances are present here.

**Dr. Donald cannot dispute that he has a unity of interest with Phigenix.** Dr. Donald's conduct satisfies the nonexclusive factors that courts often use to assess unity of interest, including: "commingling of funds," "failure to maintain minutes or adequate corporate records," "domination and control," "the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual," and "the failure to adequately capitalize a corporation." *Pac. Mar. Freight, Inc. v. Foster*, No. 10-cv-0578-BTM-BLM, 2010 U.S. Dist. LEXIS 87205, *17, 2010 WL 3339432 (S.D. Cal. Aug. 24, 2010) (citing *Associated Vendors, Inc. v. Oakland Meat Co.*, 210 Cal. App. 2d 825, 838-40 (1962)) (factors relating to alter ego involving two corporate entities omitted).

- Dr. Donald "commingled funds" with Phigenix, purportedly loaning his own money to Phigenix to advance the litigation and then paying himself back with Phigenix assets. (ECF No. 399-1 at 180:25-181:4; ECF No. 415-4 ¶ 7.) In the joinder briefing, Dr. Donald provided no corroborating documentation for this loan. *See Larocca v. LMR Partners, Inc.*, B271298, 2018 Cal. App. Unpub. LEXIS 1191, at *22, 27 (Cal. Ct. App. Feb. 23, 2018) (commingling demonstrated where "loans were made without adequate documentation . . .") (Unpublished).

- He exerted "domination and control" over Phigenix. During the relevant time, he was not only the CEO of Phigenix in charge of running the company and

---

[3] California law governs this question. *Wechsler v. Macke Int'l Trade, Inc.*, 486 F.3d 1286, 1295 (Fed. Cir. 2007) ("Since the alter ego issue is not unique to patent law, we apply the law of the regional circuit."); *see In re Schwarzkopf*, 626 F.3d at 1037 ("In determining whether alter ego liability applies, we apply the law of the forum state.").

interacting with counsel, but also the majority shareholder. (ECF No. 199-1 at 11:6-15; ECF No. 399-1 at 237:15-22 ("Q. . . . is there a single shareholder with more than 50 percent ownership? A. Yes. Q. Is that you? A. Yes.").) His wife was the only other employee and there is no evidence in the record to demonstrate that she had any decision-making role. (ECF No. 199-1 at 11:16-22.)

- Phigenix does not appear to have "maintain[ed] minutes or adequate corporate records." Dr. Donald provided no evidence of such in opposition to joinder. (ECF No. 442 at 21.)

- Dr. Donald used Phigenix as "a mere shell, instrumentality or conduit" for the "single venture" of exploiting patents that he assigned to the company. He is the assignor and sole named inventor of the patents in Phigenix's portfolio. (ECF No. 137-11; ECF No. 37-4.) Phigenix has made no products and conducted no in-house research. (ECF No. 199-1 at 14:1-15:22.) Nor has it partnered with another company. (ECF No. 399-1 at 234:4-235:23.) As of the date this lawsuit was filed, Dr. Donald's patents were Phigenix's only real asset and Phigenix's sole purpose became exploiting them as a potential revenue stream. (ECF No. 415-4 ¶ 4 ("Phigenix did not have the resources to successfully enforce [its patents] while simultaneously continuing its research and development efforts").)

- Phigenix is not "adequately capitalize[d]." In the briefing on joinder, Genentech asserted that Phigenix "lacks liquid assets." (ECF No. 398 at 4.) Genentech directed the Court to evidence submitted by Phigenix's former counsel that the company failed to pay fees and costs "for over a year," resulting in "substantial" outstanding payments. (ECF No. 346 at 1-2; ECF No. 346-2 ¶¶ 4-7.) In response, Phigenix failed to "provide any evidence of cash on hand, revenue, or current fundraising." (ECF No. 442 at 19.)

***Inequity would result if the Court does not hold Dr. Donald liable for its fee award against Phigenix.*** As the Court explained: "There is no evidence in the record that establishes that Phigenix currently has income or liquid assets. In fact Dr. Donald's own declaration shows that Phigenix lacks sufficient financial resources." (ECF No. 442 at 18-19 (citing ECF No. 415-4 ¶ 4); *id.* at 20 (finding "Phigenix lacks financial resources").) Phigenix was not even able to pay its former counsel. (ECF No. 346-2 ¶¶ 4-7.) Hence, the Court correctly found that "Genentech would be unable to recover a meaningful attorneys' fees award" without Dr. Donald, resulting in "partial or hollow relief." (ECF No. 442 at 20.) Moreover, the equities favor holding Dr. Donald liable for fees because he is no innocent bystander. Rather, he is the individual who "had control over this litigation" from the outset. (ECF No. 442 at 20-21.) Dr. Donald should not be permitted to exit this lawsuit without any actual risk. That would be an inequitable result, inconsistent with the deterrent effect intended by § 285. *See Iris Connex*, 235 F. Supp. 3d at 845 ("[F]ee shifting in patent cases has always focused on the equities, especially the overarching

issues of fairness and substantial justice.").

C. **The Court Has Afforded Dr. Donald Due Process**

Dr. Donald has no basis to argue that he has received insufficient process for the Court to award fees against him. In *Nelson*—a case on which Dr. Donald previously relied to oppose joinder—the Supreme Court overturned a fee award against an individual because the court joined him after final judgment and provided him no opportunity to contest the award. *Nelson v. Adams USA, Inc.*, 529 U.S. 460, 463 (2000). That has not happened here. First, Dr. Donald was given the opportunity to respond to Genentech's motion to join him, and he took that opportunity. (ECF No. 415.) Second, the Court asked Genentech to re-file its fees motion so that Dr. Donald, now joined, may respond directly to it. (ECF No. 442 at 21, 28.) In so doing, the Court properly distinguished *Nelson*. (*Id.* at 21 ("Unlike *Nelson*, here, joinder would afford Dr. Donald due process . . . .").) The Court gave Dr. Donald an "opportunity to respond and contest his personal liability for the award after he was made a party and before the entry of judgment against him." *Nelson*, 529 U.S. at 463. Nothing more is required. *Iris Connex*, 235 F. Supp. 3d at 854 n.11.

D. **The Court Should Order That the Fees Genentech Requests Are Reasonable**

In its exceptional case order, the Court held that "Genentech is entitled to reasonable attorneys' fees accrued since the issuance of the First Summary Judgment Order on February 24, 2017." (ECF No. 442 at 10.) These fees are significant because the stakes for Genentech in this case were high and the technology complicated. Phigenix's damages expert estimated Genentech's exposure at more than $100 million. (ECF No. 354-3 at ¶ 117.) Phigenix also sought injunctive relief, which could have affected all sales of Kadcyla. (ECF No. 21 at 11.)

Genentech sets forth its reasonable fees in the declaration of Matthew A. Chivvis, which includes the chart of tasks the Court requested. (Chivvis Decl., Ex. A.) From February 24, 2017 to the present, Genentech's legal expenses for this lawsuit have totaled $2,559,601.67. (*Id.* ¶ 4.) But Genentech seeks an award of only $2,267,004.72, representing a discount of $292,596.95. (*Id.*) Genentech used a lodestar approach to calculate this total. *See Lumen View Tech.*, 811 F.3d at 483 (approving of the use of the lodestar method to calculate reasonable fees under § 285).

1  This amount is reasonable and the Court should award it.[4]

2  ***The fee categories Genentech requests are reasonable.*** Following the Court's February 24, 2017 order, Dr. Donald and Phigenix caused Genentech to incur substantial fees for attorney work that should not have been necessary. Genentech's counsel assisted its experts in preparing their reports, prepared for and defended them at their depositions, and took the depositions of Phigenix's experts. (Chivvis Decl. ¶ 6.) Eight experts submitted a total of fifteen reports in the case, and additional experts provided background information. (*Id.*) Based in part on the deposition testimony, Genentech's counsel prepared a motion for summary judgment and a motion to strike the testimony of Phigenix's experts. (*Id.* ¶ 7.) Each required a careful review of the factual record and case law. (*Id.*) Genentech's counsel also prepared its motion for fees, motion for joinder, and this motion, in addition to various miscellaneous tasks. (*Id.*) In addition, they responded to and appeared for the motion to withdraw that Phigenix's prior counsel brought. (*Id.*) Genentech's total fees for the litigation during this period were $2,559,601.67. (*Id.* ¶ 4.)

The law supports Genentech seeking all of its fees from February 24, 2017 to the present. *Kilopass Tech.*, 82 F.Supp.3d at 1166. Nonetheless, to avoid any dispute about the reasonableness of its fees, Genentech has placed its own limitations on the request. Genentech has limited the fees it seeks for attorneys who participated in district court proceedings to lead attorneys and those who billed more than 500 hours. (Chivvis Decl. ¶ 9.) Genentech also seeks fees for four attorneys on its appellate team. *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 516-17 (Fed. Cir. 2014) ("a case should be viewed as an inclusive whole rather than as a piecemeal process when analyzing fee-shifting under § 285") (internal citations and quotations omitted); *see also Kilopass Tech.*, 82 F.Supp.3d at 1172-73 (awarding attorney fees for appeals). Because the appeal involves less work than the district court proceedings, Genentech identified these four attorneys as core members of the appellate team based on their contributions, rather than using the 500-hour limitation. (Chivvis Decl. ¶ 9.) Genentech also seeks no fees for the

---

[4] Although they formed part of the basis for the Court's exceptional case finding, Genentech is not seeking fees for defending against Phigenix's *inter partes* reviews, or the related appeal, because those proceedings concluded before February 24, 2017.

time its paralegals spent, though it could. *Alzheimer's Inst. of Am. v. Eli Lilly & Co.*, No. 10-cv-00482-EDL, 2016 U.S. Dist. LEXIS 189427, *16 (N.D. Cal. Apr. 14, 2016) ("reasonable attorneys' fees may include paralegal services"). Nor does Genentech request recompense for expert disbursements. The limitations Genentech has self-imposed result in a discount of $292,596.95 and support a finding that Genentech's fee request is reasonable.

***The rates for Genentech's attorneys are reasonable.*** Genentech retained highly qualified intellectual property specialists for this important matter.[5] (Chivvis Decl. ¶ 2.) Their rates are reasonable because they are in line with intellectual property attorneys in the relevant community. *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003) ("A court awarding attorney fees must look to the prevailing market rates in the relevant community."); *see View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d 981, 987-88 (Fed. Cir. 2000). In patent cases, a court may "rely on the American Intellectual Property Law Association ("AIPLA") economic survey" to determining whether rates reflect those prevailing in the community for similar services by lawyers of comparable qualifications. *Int'l Intellectual Mgmt. Corp. v. Lee Yunn Enters., Inc. (U.S.A.)*, No. CV 08-7587 R JWJX, 2009 U.S. Dist. Lexis 132872, at *8 (C.D. Cal. Dec. 14, 2009) (collecting cases). The weighted average of the rates of Genentech's attorneys falls below 2017 AIPLA survey's third quartile for both partners and associates within the Northern District, which is the relevant community here. (Chivvis Decl. ¶¶ 90-93.) Given the high stakes and complicated technology in this case, rates within this quartile are reasonable. *Alzheimer's Inst.*, 2016 U.S. Dist. LEXIS 189427, *10 (third-quartile rates reasonable in complicated biotechnology case).

### V. CONCLUSION

The Court should hold Dr. Donald jointly and severally liable for the fees it awarded against his unfunded, paper shell company, Phigenix, because he alone is responsible for the company's actions. The Court should also determine that $2,267,004.72 is a reasonable measure of these fees. This number falls well below the legal expenses Genentech actually incurred defending this action. (*See* ECF No. 400-1 ¶ 3.)

---

[5] The accompanying declaration of Matthew A. Chivvis sets forth the qualifications of Genentech's attorneys in detail. (Chivvis Decl. ¶¶ 9-46.)

| | |
|---|---|
| Dated: October 26, 2018 | MORRISON & FOERSTER LLP<br><br>By:   */s/ Michael A. Jacobs*<br>     MICHAEL A. JACOBS<br><br>Attorneys for Defendant<br>GENENTECH, INC. |